## UNITED STATES DISTRICT COURT FOR THE
## DISTRICT OF MASSACHUSETTS

PRESIDENTS' ALLIANCE ON HIGHER
EDUCATION AND IMMIGRATION,
Student Doe 1, Student Doe 2, Student Doe 3,
Student Doe 4, Student Doe 5,

     *Plaintiffs*,

.

PAM BONDI, Attorney General of the United
States; KRISTI NOEM, in her official
capacity as Secretary of Homeland Security;
TODD LYONS, in his official capacity as
Acting Director of U.S. Immigration and
Customs Enforcement; the DEPARTMENT
OF HOMELAND SECURITY,

     *Defendants*,

Case No. _____

Date: April 24, 2025

## COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

## INTRODUCTION

1.      Each year, more than a million international students from across the world study at U.S. colleges and universities. They come from diverse nations, earning degrees in fields ranging from the social sciences and the humanities to STEM. While in school, they may participate in cultural exchange, student associations, and other facets of campus life. They may serve as graduate teaching assistants or join in research. Some may go on to have careers in the United States, contributing to the advancement of knowledge, innovation and entrepreneurship here in long-lasting ways. The National Association of International Educators estimates that international students are adding $43.8 billion to the U.S. economy annually, supporting more than 378,000 jobs.[1]

2.      Many international students (and their families) have made significant financial investments in their education. Faculty, classmates, researchers, and employers rely on international students and expect that they will be able to complete a course of study or post-graduate training. To the extent international students might occasionally depart their programs early, it is usually due to personal financial or medical reasons or in a limited number of circumstances where students have failed to comply with the conditions of their F-1 status. In rare cases, applicable regulations also allow the government to terminate an F-1 student's status.

3.      The SEVIS is a government database operated by U.S. Immigration and Customs Enforcement's (ICE's) Student and Exchange Visitor Program (SEVP) used to monitor and track

---

[1] Erica Stewart, *International Students Contribute Record-breaking Level of Spending and 378,000 Jobs to the U.S. Economy*, NAFSA (Nov. 18, 2024), https://www.nafsa.org/about/about-nafsa/international-students-contribute-record-breaking-level-spending-and-378000-jobs

student status. Operationally, the government relies on an active SEVIS record as the indicator that a student remains in valid status. Termination of a SEVIS record ends a student's ability to work or participate in Optional Practical Training ("OPT") or Curricular Practical Training ("CPT"), and carries a host of other consequences. Students are unable to continue making any progress toward their degrees without, *inter alia*, access to on-campus work, CPT or OPT or in many instances the ability to obtain state identification or drivers licenses. Students are also at risk of arrest, detention, or removal.

4.      Starting in approximately mid-March of this year, the government began abruptly revoking hundreds of student visas and unilaterally terminating students' Student and Exchange Visitor Information Systems (SEVIS) records. The government's mass visa revocations and SEVIS terminations were preceded by highly publicized arrests of students who had engaged in political protest or expressed views that the government disliked. However, officials did not stop there. Over the past month, Defendants have terminated the SEVIS records of over four thousand students.[2] The mass SEVIS terminations have occurred without notice or an opportunity for the students or even the schools to respond and appear instead to be designed to coerce students to prematurely abandon their studies and depart without process In short, these SEVIS terminations have plunged students and institutions into a state of uncertainty, exacerbating the climate of fear on campuses across the country.

---

[2] Alexa Robles-Gil, *International Students in U.S. are Reeling Amid Revoked Visas and Terminated Records*, SCIENCE.ORG (Apr. 15, 2025), https://www.science.org/content/article/international-students-u-s-are-reeling-amid-revoked-visas-and-terminated-records

5.  These unprecedented SEVIS terminations have occurred without statutory or regulatory authorization, and without regard to whether the thousands of affected students were in compliance with the terms of their student status. The consequences of the government's unlawful SEVIS terminations have been devastating to students and institutions alike.

6.  For colleges and universities, terminations have disrupted academic programming and caused significant operational, reputational, and fiscal harm. Schools have lost students, including students who departed the United States out of fear of enforcement action. Administrators have been inundated with urgent inquiries from students while receiving little or no explanation from DHS on why terminations have occurred. The confusion and panic generated by the government's arbitrary terminations has chilled international students' engagement on campuses and will undermine institutions' ability to recruit, enroll, and retain international students in the future for fear of being randomly targeted by ICE, unilaterally terminated from school, arrested, detained, and deported. This is certain to reduce tuition revenue and the academic vitality of campuses across the country.

7.  Intervention by this Court is necessary to stop Defendants' unauthorized SEVIS terminations and to reinstate the illegal terminations that have occurred. Plaintiffs, directly impacted students, and the Presidents' Alliance bring this action under the Administrative Procedure Act (APA), the Fifth Amendment to the U.S. Constitution, and the Declaratory Judgment Act seeking a halt to Defendants' unlawful policy and the restorations of the impacted students' SEVIS records so they may continue along their academic and professional journeys.

## JURISDICTION AND VENUE

8.    This Court has jurisdiction over the present action based on 28 U.S.C. § 1331 (federal question), 28 U.S.C. § 1346(b) (federal defendant), and 28 U.S.C. §§ 2201-2 (authority to issue declaratory judgment when jurisdiction already exists).

9.    Venue is properly with this Court pursuant to 28 U.S.C. § 1391(e) because this is a civil action in which Defendants are employees or officers of the United States, acting in their official capacity; and because some of Plaintiffs reside in this District, represent Member Institutions impacted by the government policy or a substantial part of the events giving rise to Plaintiffs' claims occurred in this District, and there is no real property involved in this action.

## PARTIES

1.    Plaintiff, Student Doe #1 attends the University of Massachusetts – Boston. Student Doe #1 is a current an undergraduate student at the University of Massachusetts – Boston pursuing a Bachelor of Science degree with an anticipated graduation date of May 2025. She resides in Massachusetts. She was actively pursuing job opportunities based on her pending OPT Work Authorization, and had received numerous letters of recommendation from the principal investigators in the lab she works in. She had future plans of pursuing a master's degree and a doctoral degree. On May 4, 2025, she was notified by her school that her SEVIS record was terminated, effective immediately, with no reason given.  On information and belief, ICE may have improperly terminated Student Doe #1's SEVIS record due to an incident that occurred in 2023. Student Doe #1 was assaulted by her roommate, who then cross-charged her in the criminal case. The case was dismissed shortly thereafter, and Student Doe #1 successfully obtained a new

F-1 visa stamp after this incident at the United States consulate and reentered the United States thereafter to continue her studies. She has not had any other interaction with police or court system besides the 2023 case. She pays $19,000 per semester through personal funds (estimate total $152,000).

2.      Plaintiff Student Doe #2 is a graduate student at Boston University (BU) pursuing a Master of Science degree with an anticipated graduation date of May 2025. He previously completed his B.S. in Mechanical Engineering at BU in Fall 2021. He resides in Massachusetts. He is eagerly seeking work opportunities within his STEM field given as he would have three years of available STEM OPT. On Saturday, April 5, at approximately 8 PM, Student Doe #2 received an email from the International Students & Scholars Office at BU stating that his SEVIS record was terminated on April 4, for the following reason: "TERMINATION REASON: OTHERWISE FAILING TO MAINTAIN STATUS – Individual identified in criminal records check and/or has had their visa revoked. SEVIS record has been terminated." Student Doe #2 is extremely concerned that he will not be able to pursue professional opportunities on his STEM OPT following his graduation.

3.      Student Doe #2 had previously accumulated three traffic violations that include driving with no license plate, driving without a license, unregistered motor vehicle and a speeding violation for driving over 55 MPH. These are the only interactions Student Doe #2 has had with the police and therefore on information and belief, ICE may have relied upon these incidents to improperly terminate Student Doe #2's SEVIS record.

4.      Plaintiff Student Doe #3 is a student at Massachusetts Institute of Technology (MIT) pursuing a master's degree in mechanical engineering with an anticipated graduation date

of August 2025. He resides in Massachusetts. On April 8, 2025, the school notified him that they wanted to speak with him urgently. On April 9, 2025, he received an email from the Department of State informing him that his F-1 visa had been revoked. Student Doe #3 had also previously filed an EB-5 Immigrant Petition (based on his investment of at least $800,000) and Adjustment of Status application to Lawful Permanent Resident (LPR) concurrently in April 2025 but has not received a receipt notice for the AOS application indicating any action on the application. His SEVIS termination has left him unable to complete his master's degree at MIT and unable to pursue OPT employment or adjust his status to LPR, an early sign of which may be the failure of United States Citizenship and Immigration Services to issue a receipt in the case.

5.      On January 12, 2025, Student Doe #3 was arrested for shoplifting by concealing merchandise offered for sale by Target. He had gone through the self-checkout line and did not scan all the items in his cart. Target received all the merchandise back and the case was dismissed at the request of Commonwealth of Massachusetts on January 13, 2025.

6.      Plaintiff Student Doe #4 graduated from Boston University in January 2024 from the Master's degree program in Financial Mathematics and was working full-time on his STEM OPT employment authorization document earning $30/hr.  He resides in Boston, Massachusetts. On April 3, 2025, Student Doe #4 received an email from the Managing Director of the International Students & Scholars Office at Boston University notifying him that his SEVIS record was terminated for "Otherwise Failing to Maintain Status – Individual identified in criminal records check and/or has had their VISA revoked." Since his SEVIS record was terminated, Student Doe #5 had to quit his job at Core Value Capital and learned the company has moved on, so he does not have the ability to return to that organization once his student status is restored.

Student Doe #4 needs his F-1 status to be valid to begin searching for new employment and continue expanding his career. Student Doe #4 invested $73,849 per year in his Boston University education.

7.      In 2016, Student Doe #4's application for admission upon entry to the U.S. was denied at Chicago O'Hare Airport and his visa was cancelled without prejudice because he did not register for classes prior to entry. Student Doe #4 departed the U.S. the same day and was able to obtain a new visa in 2022 to continue his Master's degree program at Boston University. He has not had any contact with the police or the criminal justice system at any time.

8.      Plaintiff Student Doe #5 is a student at University of Massachusetts – Dartmouth. Student Doe #5 graduated December 18, 2024 and was working part-time for Constellation Kids on her valid OPT Employment Authorization Document, but had to stop working upon the termination of her SEVIS record. She resides in Massachusetts. Student Doe #5 had received an email from the International Student & Scholar Center (ISSC) at UMass Dartmouth notifying her that her SEVIS record was terminated on April 4, 2025 for "Otherwise Failing to Maintain Status" specifically "Individual identified in criminal records check and/or has had their VISA revoked." She had also been offered a full-time position to begin working with Thom Child & Family Services on April 14, 2025 as a Behavior Technician making $55,000 a year, but could not move forward with the offered position as a result of her SEVIS record termination.

9.      Student Doe #5 is unaware of any criminal activity or visa revocation in her history as she has not experienced either of these since first entering the U.S. on her F-1 visa in 2018/2019. Student Doe #5 believes her SEVIS termination may be due to a speeding ticket she received in 2024 related to driving above the speed limit in a school zone, which has been her only interaction

with the police, other than when they helped her get her car out of a ditch after sliding off the road in the snow.

10.    Plaintiff, the Presidents' Alliance on Higher Education and Immigration (Presidents' Alliance), a sponsored partner project of the National Center for Civic Innovation, is a nonpartisan association of American college and university leaders and their institutions across the United States. The Presidents' Alliance brings together college and university leaders and their institutions around the immigration issues that impact students, campuses, and communities; supports the educational access, success, and post-graduate pathways of immigrant, refugee, and international students at U.S. colleges and universities; and aims to increase policymaker and public understanding of immigration issues impacting higher education and how immigrant-origin and international students contribute to our communities, states, and nation. The Presidents' Alliance represents close to 600 public and private colleges and universities of all sizes and institutional types, including doctoral, master's level, baccalaureate, community college, and special focus institutions, from across the United States. Altogether, members' institutions enroll over five million students and are located in forty-two states, D.C., and Puerto Rico. There are 49 members of the Presidents' Alliance located in the Commonwealth of Massachusetts. The Presidents' Alliance is headquartered in Washington, DC and its fiscal sponsor the National Center for Civic Innovation is located in New York, NY.

11.    Defendant Pam Bondi is the Attorney General of the United States and represents the United States in legal matters generally and gives advice and opinions to the President and to the heads of the executive departments of the Government when so requested.

12.     Defendant Kristi Noem is the Secretary of Homeland Security and has ultimate authority over DHS. In that capacity and through her agents, Defendant Noem has broad authority over the operation and enforcement of immigration laws. Defendant Noem is sued in her official capacity.

13.     Defendant Todd Lyons is the Acting Director of ICE and has authority over the operations of ICE. In that capacity and through his agents, Defendant Lyons has broad authority over the operation and enforcement of the immigration laws. Defendant Lyons is sued in his official capacity. ICE is responsible for the termination of SEVIS records.

14.     Defendant U.S. Department of Homeland Security ("DHS") is a cabinet-level department of the Executive Branch of the federal government and is an "agency" within the meaning of 5 U.S.C. § 551(1). DHS includes various component agencies, including U.S. Immigration Customs and Enforcement ("ICE").

## LEGAL FRAMEWORK

15.     Congress has established a statutory basis for student visas under 8 U.S.C. § 1101(a)(15)(F)(i). Once admitted in F-1 status, a student is granted permission to remain in the United States for the duration of status (D/S) so long as they continue to meet the requirements established by the regulations governing their visa classification in 8 C.F.R. § 214.2(f), such as maintaining a full course of study and avoiding unauthorized employment.

16.     As noted above, SEVIS is a centralized database maintained by the SEVP within ICE used to manage information on nonimmigrant students and exchange visitors and track their compliance with the terms of their status. Designated School Officials (DSOs) at SEVP-certified schools play a crucial role in this system. Under 8 C.F.R. § 214.3(g)(2), DSOs must report specific

events via SEVIS within 21 days, including if a student fails to maintain status such as falling below full-time status or failing to register for classes. A school's compliance with SEVIS reporting requirements is necessary to maintain its SEVP certification and, by extension, its ability to enroll foreign students.

17.     The SEVIS record is not merely a passive tracking tool, but the operational mechanism through which student status is actively managed and validated. Having an active SEVIS record is functionally equivalent to having lawful student status. For example, SEVIS is the system through which SEVP-certified schools issue the Form I-20, "Certificate of Eligibility for Nonimmigrant Student Status," a document central to demonstrating a student is maintaining nonimmigrant status while in the country. An I-20 is necessary for work authorization. While students may work as graduate student instructors or research assistants on campus, OPT and CPT allow foreign nationals in F-1 status to engage in employment off campus during and/or after completing a course of study at a U.S. educational institution. *See* 8 C.F.R. § 214.2(f)(10)(ii). An international student may have work-study, co-operative educational or internship requirements as an "integral part of their degree." 8 C.F.R. § 214.2(f)(10)(i). In these cases, their schools would authorize CPT through their DSOs and notate the student's I-20. *See* 8 C.F.R. § 214.2(f)(10)(i). An I-20 is necessary to participate in OPT or CPT. 8 C.F.R. §§ 214.2(f)(10)(i),(11)(i)-(ii). An I-20 is also necessary for school transfer. 8 C.F.R. § 214.2(f)(8)(ii).

18.     DHS commonly points to the termination of SEVIS status in Immigration Court as evidence that a student is in violation of their student status. *See*, e.g., *In Re: Myoung Sook Park*, AXXX XX2 580, 2017 WL 1330106 (BIA Mar. 8, 2017); *In Re: Enrique Ganesh Doreste Kathiravetpillai*, 2010 WL 2390757 (BIA May 27, 2010). Additionally, when a student seeks

reinstatement of student status after falling out of status, USCIS "will update SEVIS to reflect USCIS's decision." 8 C.F.R. § 214.2(f)(16)(ii).

19.    The general requirements for an F-1 student to maintain his or her status once admitted in that status include the following: (a) the student must be enrolled in an "academic" educational program, a language-training program, or a vocational program; (b) the sponsoring school or university must be approved by the SEVP; (c) the student must be enrolled as a full-time student at the sponsoring institution; (d) the student must be proficient in English or be enrolled in courses leading to English proficiency; (e) the student must have sufficient funds available for self-support during the entire proposed course of study; and (f) the student must maintain a residence abroad which they have no intention of giving up.[3] *See also* 8 C.F.R. § 214.2(f).

20.    DHS regulations distinguish between two separate ways a student's F-1 status may lapse: (1) when a student "fails to maintain status," and (2) less commonly, through an agency-initiated "termination of status." These are the only regulatory pathways by which a student may fall out of lawful F-1 status under the law.

21.    The first category, failure to maintain status, involves circumstances where a student voluntarily or inadvertently falls out of compliance with the F-1 visa requirements, for example by failing to maintain a full course of study, engaging in unauthorized employment, or other violations of their status requirements under 8 C.F.R. § 214.2(f). In addition, 8 C.F.R. §§ 214.1(e)–(g) outlines specific circumstances where certain conduct by any nonimmigrant visa

---

[3] U.S. Citizenship and Immigration Servs., *Students and Employment*, USCIS (Apr. 8, 2025), https://www.uscis.gov/working-in-the-united-states/students-and-exchange-visitors/students-and-employment

holder, such as engaging in unauthorized employment, providing false information to DHS, or being convicted of a crime of violence with a potential sentence of more than a year, "constitutes a failure to maintain status." *Id.*

22.     The second category, termination of status by DHS, can occur only under the limited circumstances set forth in 8 C.F.R. § 214.1(d), which permits DHS to terminate status when: (1) a previously granted waiver under INA § 212(d)(3) or (4) [ 8 U.S.C. § 1182(d)(3) or (4)] is revoked; (2) a private bill to confer lawful permanent residence is introduced in Congress; or (3) DHS publishes a notification in the Federal Register identifying national security, diplomatic, or public safety reasons for termination. DHS cannot otherwise unilaterally terminate nonimmigrant status.[4]

23.     The revocation of a visa does not constitute failure to maintain status and cannot therefore be a basis for SEVIS termination. If a visa is revoked prior to the student's arrival to the United States, then a student may not enter, and the SEVIS record is terminated. However, the SEVIS record may not be terminated as a result of a visa revocation after a student has been admitted into the United States, because the student is permitted to continue the authorized course of study.

24.     ICE's own policy guidance confirms that "[v]isa revocation is not, in itself, a cause for termination of the student's SEVIS record."[5] Rather, if the visa is revoked, the student is

---

[4] *See Jie Fang v. Dir. United States Immigr. & Customs Enf't*, 935 F.3d 172, 185 n. 100 (3d Cir. 2019).

[5] U.S. Immigr. & Customs Enf't, *Policy Guidance 1004-04 – Visa Revocations* (June 7, 2010), https://www.ice.gov/doclib/sevis/pdf/visa_revocations_1004_04.pdf.

permitted to pursue their course of study in school, but upon departure, the SEVIS record is terminated, and the student must obtain a new visa from a consulate or embassy abroad before returning to the United States.[6]

25.    Pursuant to the injunction entered in *Guilford College, et al. v. McAleenan, et al.*, No. 1:18-cv-00891 (M.D.N.C. Oct. 23, 2018), F-1 students do not accrue unlawful presence except in very specific circumstances.[7] For nonimmigrants admitted for duration of status (D/S) as F-1 student are, accrual of unlawful presence begins: (1) "If USCIS finds a nonimmigrant status violation while adjudicating a request for an immigration benefit, unlawful presence will begin to accrue on the day after the request is denied" or (2) "If an immigration judge makes a determination of nonimmigrant status violation in exclusion, deportation, or removal proceedings, unlawful presence begins to accrue the day after the immigration judge's order. It must be emphasized that the accrual of unlawful presence neither begins on the date that a status violation occurs, nor on the day on which removal proceedings are initiated."[8] Nonetheless, USCIS currently claims D/S students may begin to accrue unlawful presence even outside these previously established

---

[6] Guidance Directive 2016-03, 9 FAM 403.11-3 – VISA REVOCATION (Sept. 12, 2016), available at https://www.aila.org/library/dos-guidance-directive-2016-03-on-visa-revocation.

[7] *See* U.S. Citizenship & Immigr. Servs., *Policy Memorandum 602-1060.1: Accrual of Unlawful Presence and F, J, and M Nonimmigrants* (Aug. 9, 2018), https://www.uscis.gov/sites/default/files/document/memos/2018-08-09-PM-602-1060.1-Accrual-of-Unlawful-Presence-and-F-J-and-M-Nonimmigrants.pdf.

[8] U.S. Citizenship & Immigr. Servs., *Adjudicator's Field Manual* ch. 40, January 2014 https://www.uscis.gov/sites/default/files/document/policy-manual-afm/afm40-external.pdf

parameters,[9] which puts the students with terminated SEVIS records at risk of this additional significantly negative consequence. *See* 8 U.S.C. § 1182(a)(9)(B) (establishing three and ten year inadmissibility bars for unlawful presence). Additionally, in general, a terminated SEVIS record can prevent students from being able to adjust status.

26.    The termination of a SEVIS record constitutes final agency action for purposes of APA review.[10] There is no way to challenge Defendants' terminations before the agency. On its website, DHS states that when a SEVIS record is terminated, "Immigration and Customs Enforcement (ICE) agents may investigate to *confirm the departure* of the student."[11]

## FACTUAL ALLEGATIONS

27.    On or about mid-March of this year, DHS began implementing a policy of mass termination of SEVIS records of international students without a lawful basis in statute or regulation. These SEVIS terminations have shaken campuses across the country, including campuses in at least 48 states and D.C.[12] Terminations have impacted undergraduate and graduate students in classes and graduates working pursuant to OPT. A survey by the American Immigration

---

[9] U.S. Citizenship & Immigr. Servs., Unlawful Presence and Inadmissibility, https://www.uscis.gov/laws-and-policy/other-resources/unlawful-presence-and-inadmissibility (last visited Apr. 18, 2025).

[10] *See Fang*, 935 F.3d at 185.

[11] Dep't of Homeland Sec., *Terminate a Student*, Study in the States (last updated Nov. 7, 2024), https://studyinthestates.dhs.gov/sevis-help-hub/student-records/completions-and-terminations/terminate-a-student

[12] Ashley Mowreader, *Where Students Have Had Their Visas Revoked*, Inside Higher Ed (Apr. 8, 2025), https://www.insidehighered.com/news/global/international-students-us/2025/04/07/where-students-have-had-their-visas-revoked

Lawyers Association found that fifty percent of students who have had their SEVIS terminated were students on OPT.[13]

28.    Students did not, and to date have not, received notification from SEVP that their SEVIS status was terminated. Many only discovered the termination of their record after a Designated School Official ("DSO") at their school noticed the change in the SEVIS database and communicated this change to the student. The reasons cited in the SEVIS system, as discovered by the DSOs, have been inconsistent over time and have included: "Otherwise Failing to Maintain Status" with the explanation "[i]ndividual identified in criminal records check and/or has had their visa revoked . . . ." and "Otherwise Failing to Maintain Status" with a narrative citing deportability provisions under INA § 237(a)(1)(C)(i) [8 U.S.C. § 1227(a)(1)(C)] (failure to maintain status) and INA 237(a)(4)(C)(i) [8 U.S.C. § 1227(a)(4)(C)(i)] (foreign policy ground). On or about April 8, 2025, SEVP started updating notations in the system to state "OTHER – Individual identified in criminal records check and/or has had their visa revoked . . .." This code had never been used before in SEVP initiated terminations. Around the same time, SEVP updated its "Termination Reasons" website to include a new "OTHER" category under "SEVP-Only Termination Reasons" described as follows: "[a] SEVIS adjudicator uses this termination reason when no other reasons apply."[14]  Some students and DSOs report that there has been no notation or explanation at all.

---

[13] Am. Immigr. Laws. Ass'n, *Policy Brief: The Scope of Immigration Enforcement Actions Against International Students* (Apr. 17, 2025), https://www.aila.org/library/policy-brief-the-scope-of-immigration-enforcement-actions-against-international-students
[14] *Compare* Dep't of Homeland Sec., Study in the States, *Termination Reasons*, https://studyinthestates.dhs.gov/sevis-help-hub/student-records/completions-and-terminations/termination-reasons (last visited Apr. 18, 2025) *with* Dep't of Homeland Sec., Study in the States, *Termination Reasons*,

None of the reasons cited in the SEVIS terminations by ICE constitutes a lawful basis for SEVIS record termination. *See* 8 C.F.R. §§ 214.1(d)-(g), 214.2 (f).

29.    While the stated reasons for Defendants' SEVIS terminations have been shifting and opaque, there is little doubt that ICE's goal has been to disrupt the studies of thousands of international students and the schools that sponsor them. While not all students have received communications from the Department of State notifying them that their visas have also been revoked,[15] those who have received emails state, *inter alia*:

> On behalf of the United States Department of State, the Bureau of Consular Affairs Visa Office hereby informs you that additional information became available after your visa was issued. As a result, your F-1 visa . . . has been revoked under Section 221(i) of the United States Immigration and Nationality Act, as amended.
>
> The Bureau of Consular Affairs Visa Office has alerted the Department of Homeland Security's Immigration and Customs Enforcement, which manages the Student Exchange Visitor Program and is responsible for removal proceedings. They may notify your designated school official about the revocation of your F-1 visa.
>
> Remaining in the United States without a lawful immigration status can result in fines, detention, and/or deportation. It may also make you ineligible for a future U.S. visa. *Please note that deportation can take place at a time that does not allow the person being deported to secure possessions or conclude affairs in the United States. Persons being deported may be sent to countries other than their countries of origin.*
>
> Given the gravity of this situation, individuals whose visa was revoked may wish to demonstrate their intent to depart the United States using the CBP Home App at https://www.cbp.gov/about/mobile-apps-directory/cbphome (emphasis added).

---

https://web.archive.org/web/20250408211432/https://studyinthestates.dhs.gov/sevis-help-hub/student-records/completions-and-terminations/termination-reasons

[15] On understanding and belief, the Department of State ("DOS") and the Department of Homeland have revealed that they are engaging in so-called "silent" visa revocations whereby the student is not notified of DOS's actions due to enforcement considerations.

30.     Previously, communications from the Department of State (DOS) informing international students of a rare case of visa revocation, DOS generally would not falsely insinuate that their action would end their student status or ability to remain in the United States.[16] Before the recent mass-termination of SEVIS records in apparent coordination with DOS visa revocations, students with revoked visas were able to maintain active SEVIS records, continue their studies, obtain new I-20s when they transferred to a new school, and enroll in CPT or OPT.

31.     Arguments presented by the government before the federal courts considering individual actions or multi-plaintiff cases based upon Defendants' unlawful SEVIS terminations have attempted to downplay the harm caused by the terminations. However, multiple courts in states across the country have nevertheless granted temporary restraining orders halting the termination of students' SEVIS records or restoring those records.[17]

32.     Students whose SEVIS records have been terminated include individuals with no criminal history; students who are survivors of domestic violence or sexual assault and were wrongly charged; students who were arrested for minor offenses but never charged in court; students who were charged with minor offenses but never convicted; and students whose only

---

[16] The visa is an entry document alone.

[17] *See*, *e.g.*, *Arizona Student Doe #2 v. Trump*, No. CV-25-00175-TUC-AMM (D. Ariz. Apr. 15, 2025); *Doe v. DHS*, No. 25-cv-2149 (N.D. Ill. Apr. 15, 2025); *Doe v. Noem*, No. 2:25-cv-01103-DAD-AC (N.D. Cal. Apr. 17, 2025); *Doe v. Noem*, No. 25-cv-03140-JSW (N.D. Cal. Apr. 17, 2025); *Isserdasani v. Noem*, No. 25-cv-283-wmc, 2025 WL 1118626 (W.D. Wis. Apr. 15, 2025); *J. Smith v. Noem*, No. 25-cv-1702 (C.D. Cal. Apr. 14, 2025); *Jin v. Noem*, No. 25-CV-1391 (D. Minn. Apr. 17, 2025); *Liu v. Noem*, No. 25-cv-133-SE (D.N.H. Apr. 10, 2025); *Patel v. Bondi*, No. 1:25-CV-00101 (W.D. Pa. Apr. 17, 2025); *Ratsantiboon v. Noem*, No. 25-cv-01315 (D. Minn. Apr. 15, 2025); *Roe v. Noem*, No. CV-25-40-BU-DLC, 2025 WL 1114694 (D. Mont. Apr. 15, 2025); *Wu v. Lyons*, No. 25-cv-01979 (E.D.N.Y. Apr. 11, 2025); *Yousefi v. Noem*, No. 25-cv-0625 (S.D. Tex. Apr. 13, 2025).

infractions consist of minor offenses such as speeding tickets. These students include a Pennsylvania undergraduate who was issued a speeding ticket for going 70 mph in a 65 mph zone; a Missouri graduate student working on OPT who had tickets for illegal parking, failure to wear a seatbelt, and having expired plates; and a Michigan domestic violence survivor who called the police during a domestic violence incident and was wrongly taken into custody briefly.[18] As discussed above, under the regulations, an F-1 student cannot fall out of student status for a criminal conviction unless they have been convicted specifically of "a crime of violence for which a sentence of more than one year imprisonment may be imposed." *See* 8 C.F.R. § 214.1(g). The terminations in recent weeks do not fall under this regulation.

33.     Individual plaintiffs and their families have been experiencing extreme levels of emotional and psychological stress and anxiety following their SEVIS terminations. In some instances, the SEVIS terminations have resulted in students losing all income and experiencing housing and food insecurity. In other cases, students have been unable to continue their studies after investing often hundreds of thousands of dollars in their educations or face losing professional opportunities.[19] Students are unsure of what will happen next or what the legal ramifications of this illegal action by ICE will be.

34.     Student Doe #1 attends the University of Massachusetts – Boston. Student Doe #1 was actively pursuing job opportunities based on her pending OPT Work Authorization and she

---

[18] Am. Immigr. Laws. Ass'n, *Policy Brief: The Scope of Immigration Enforcement Actions Against International Students* (Apr. 17, 2025), https://www.aila.org/library/policy-brief-the-scope-of-immigration-enforcement-actions-against-international-students

had future plans of pursuing a master's degree and a doctoral degree. She is harmed by being unable to pursue work opportunities or accept any work and will be unable to move into a graduate program unless her SEVIS record is corrected.

35.    Plaintiff Student Doe #2 is a graduate student at Boston University (BU). He is eagerly seeking work opportunities within his STEM field given as he would have three years of available STEM OPT. Student Doe #2 is extremely concerned that he will not be able to pursue professional opportunities on his STEM OPT following his graduation in May 2025.

36.    Plaintiff Student Doe #3 is a student at Massachusetts Institute of Technology (MIT) pursuing a master's degree in mechanical engineering with an anticipated graduation date of August 2025. Student Doe #3 had previously filed an EB-5 Immigrant Petition (based on his investment of at least $800,000) and Adjustment of Status application to Lawful Permanent Resident (LPR) concurrently in April 2025. His SEVIS termination has left him unable to complete his master's degree and unable to pursue OPT employment or adjust his status to LPR. Student Doe #3 pays $60,000 for school per year through personal funds and $1600 per month for living expenses. He is unable to pursue CPT employment due to the SEVIS termination.

37.    Plaintiff Student Doe #4 graduated from Boston University in January 2024 and was working full-time on his STEM OPT employment authorization document earning $30/hr. Since his SEVIS record was terminated, Student Doe #5 had to quit his job at Core Value Capital and learned the company has moved on, so he does not have the ability to return to that organization once his status is reinstated. Student Doe #5 needs his F-1 status to be valid to begin searching for new employment and continue expanding his career.

38.    Plaintiff Student Doe #5 is a student at University of Massachustts – Dartmouth. Student Doe #5 graduated December 18, 2024 and was working part-time for Constellation kids on her valid OPT Employment Authorization Document but had to stop working upon the termination of her SEVIS record. She had also been offered a full-time position to begin working with Thom Child & Family Services on April 14, 2025 as a Behavior Technician making $55,000 a year, but could not move forward with the offered position as a result of her SEVIS record termination.

39.    The President Alliance's member colleges and universities are being severely impacted by DHS's unlawful and sweeping termination of many of their students' SEVIS records.[20] International students, who are integral to the academic and cultural fabric of all the member schools, are inundating DSOs and the international student offices with questions and concerns about these terminations. But DSOs are unable to provide meaningful answers because DHS's terminations defy established regulations and norms (and constitutional muster) and have changed *overnight* without a lawful basis. DSOs, who have long relied on settled regulations and guidance to advise students, are now effectively incapacitated. They do not know what the terminations really mean for their students, other than they cannot provide the usual services such

---

[20] *See*, e.g., Jessica Priest & Ayden Runnels, *More than 250 international students' immigration statuses revoked across Texas universities*, The Texas Tribune, Apr. 9, 2025, https://www.texastribune.org/2025/04/09/texas-universities-international-students-legal-status/ (last visited Apr. 18, 2025); orward Pathway, *The International Student Visa Revocation Crisis in US Universities: Analysis, Impact, Responses, and Future Perspectives on Balancing Academic Freedom and National Security* (Apr. 13, 2025), https://www.forwardpathway.us/the-international-student-visa-revocation-crisis-in-us-universities-analysis-impact-responses-and-future-perspectives-on-balancing-academic-freedom-and-national-security (last visited Apr. 18, 2025).

as endorsing I-20s for CPT, affirming eligibility for OPT, or reducing course loads for eligible students. The confusion is compounded by conflicting messages given by the government in the SEVIS termination database comments and now in response to ongoing SEVIS litigation in federal court where the government responses have been, at best, confusing. Schools in the Plaintiff organization have had students depart their institutions and the United States abruptly in fear of the impact of a SEVIS termination or SEVIS litigation. Given the unlawfulness and, in particular, the arbitrariness of DHS's actions, members are unable to properly advise their international students on how to comply with federal law or ensure their own institutional compliance. These institutions fear even greater government impact in the future, including the possibility of decertification and the future inability to recruit or admit international students if their schools are not perceived as both high quality and safe institutions.[21]

40.    Many students have chosen to depart their schools and the United States in fear of arrest, detention, deportation or other negative personal or legal impacts. Beginning this fall, international students will also be less likely to enroll in U.S. institutions as a result of this policy. Member colleges and universities are and will be significantly financially impacted by the government's current aggressive and unprecedented SEVIS termination policy and as such, the welcoming reputation of United States educational institutions is indelibly tarnished by DHS's actions. International students are a significant and dependable source of tuition revenue: approximately 80% pay full tuition, and they are required to demonstrate their ability to fund their

---

[21] Taylor Romine, Nouran Salahieh, Hanna Park and Andy Rose, "*DHS threatens to revoke Harvard's eligibility to host foreign students amid broader battle over universities' autonomy*," CNN April 18, 2025 https://www.cnn.com/2025/04/16/us/harvard-kristi-noem-international-students/index.html

tuition at the beginning of each academic year. In total, they pay tens of billions of dollars in tuition to American universities and colleges every year. Estimated tuition revenues from international students at just the twenty top-ranked universities with the largest international enrollments would be over $7.3 billion a year.[22]

41.    The termination of SEVIS records and resulting loss of international students also undermines the educational mission of universities. It deprives domestic students of the well-documented cognitive, social, and academic benefits that flow from an international student body.[23] It also affects universities' ability to teach students, given the vital role that international graduate students play at many institutions in academic instruction. Further, it has a significant impact on universities' research capabilities.

42.    Students who are working on research studies are being abruptly pulled away as they can no longer work at the same time when academic research is already under significant pressure from other quarters. International students make up a significant percentage of students in some graduate programs, particularly in STEM. In some of the Members' graduate programs, such as computer and information sciences or electrical engineering, international students make up over 70% of the enrolled students. [24] The disruption of their studies not only threatens the

---

[22] *See* Brief for Am. Ass'n of Univ. Professors et al. as Amici Curiae in Support of Plaintiff's Motion for Preliminary Injunction, Apps. 1–2, *Am. Ass'n of Univ. Professors v. Rubio*, No. 1:25-cv-10685 (D. Mass. filed Apr. 9, 2025), https://www.presidentsalliance.org/wp-content/uploads/2025/04/PA-brief.pdf.

[23] Lilalil Luo & D. Jamieson-Drake, *Examining the Educational Benefits of Interacting with International Students*, 3 J. Int'l Studs. 82 (2013), https://www.ojed.org/index.php/jis/article/view/503.

[24] Nat'l Found. for Am. Pol'y, *International Students in Science and Engineering*, 1 (Aug. 2021), https://tinyurl.com/4ar264r5.

continuity of important academic projects but diminishes the pipeline of future researchers, teachers, and innovators. The average foreign-born STEM professional generates a net benefit to the American economy of $3 million over 20 years, and foreign-born Americans STEM talent collectively accounted for 1.7 percent of U.S. Gross Domestic Product in 2019—over $367 billion.[25]

43.    International students are also key contributors to the innovation of the economy. Their research often leads to patents, start-ups, and university-based research which contributes to local economic ecosystems by creating high-skilled jobs and fostering business formation hubs. Alumni-founded companies contribute to the university's reputation, funding and research contacts and create jobs for future alumni in high-skilled fields. These companies therefore enhance the university's reputation, attract funding, and strengthen academic and industry research collaborations that benefit students and the broader public. A study published by the Presidents' Alliance with partners concluded that eliminating OPT could cost the country $17.2 billion annually.[26]

---

[25] See Stuart Anderson, *Immigrant Entrepreneurs and U.S. Billion Dollar Companies*, 1–3 (Nat'l Found. for Am. Pol'y Jul. 26, 2022) (noting that only 14% of America's billion-dollar companies, as of May 2022, had a majority of native-born founders), https://tinyurl.com/3ae3k4yu; Talent Mobility Fund, *The Return on Investment of TMF's U.S. STEM Track* (Jan. 2025), https://tinyurl.com/2vv9wsub

[26] See Brief for Am. Ass'n of Univ. Professors et al. as Amici Curiae in Support of Plaintiff's Motion for Preliminary Injunction, app. 2, *Am. Ass'n of Univ. Professors v. Rubio*, No. 1:25-cv-10685 (D. Mass. filed Apr. 9, 2025), https://www.presidentsalliance.org/wp-content/uploads/2025/04/PA-brief.pdf; Dominic Berardi et al., *Data Snapshot: The Essential Role of Practical Training in U.S. Higher Education and the Innovation Economy*, 11 (Shorelight 2024), https://tinyurl.com/yktd3r43

44.     Finally, the uncertainty created by the abrupt and voluminous termination of SEVIS records has a profound impact on institutional planning and budgeting. The inability to forecast international student enrollment for the upcoming academic year undermines efforts to responsibly allocate resources at impacted member colleges and universities. These institutions often rely on consistent tuition revenue from international students. A sudden decline or unpredictability in enrollment could lead to significant fiscal shortfalls, program cuts, and staffing reductions, threatening the long-term viability of some institutions.

45.     Plaintiffs do not challenge the revocation of students' visas in this action. If Defendants believe a student is deportable for having a revoked visa, they can initiate removal proceedings and make their case in court. They cannot, however, misuse SEVIS to circumvent the law, strip students of status, and drive them out of the country without process.

## CAUSES OF ACTION

### FIRST CAUSE OF ACTION
**Administrative Procedure Act**
**(Unlawful SEVIS Termination)**

46.     Plaintiffs incorporate the allegations in the paragraphs above as though fully set forth here.

47.     This Court may review and set aside all final agency actions that are "otherwise not in accordance with law . . . in excess of statutory jurisdiction, authority, or limitations, or short of statutory right; . . . [or] without observance of procedure required by law." 5 U.S.C. § 706(2)(A), (C)-(D).

48.     Defendants have adopted and implemented a policy and practice of terminating SEVIS records of students through means not authorized by the statute or regulations. Without

explanation or notice and to the best of Plaintiffs' understanding and belief, DHS has terminated SEVIS records based solely on visa revocations by the Department of State, arrests or minor criminal interaction that do not constitute a regulatory ground for termination, or, in many cases, without any identified basis at all. These terminations fall outside the only lawful means of termination: (i) the criteria set forth in 8 C.F.R. § 214.1(d) or (ii) because the student failed to maintain student status based on the criteria set forth in 8 C.F.R. § 214.1(e)-(g)

49.     Defendants' policy of terminating SEVIS records is not in accordance with law and exceeds the scope of its statutory and regulatory authority.

## SECOND CAUSE OF ACTION
### Administrative Procedure Act
### (Arbitrary and Capricious SEVIS Termination)

50.     Plaintiffs incorporate the allegations in the paragraphs above as though fully set forth here.

51.     This Court may review and set aside all final agency actions that are "arbitrary, capricious, . . . in excess of statutory jurisdiction, authority, or limitations, or short of statutory right; . . . [or] without observance of procedure required by law." 5 U.S.C. § 706(2)(A), (C)-(D).

52.     When an agency changes policy or creates a new procedure that deviates from prior procedures, as they have here in launching a vast program to terminate apparently over 4,000 SEVIS records and having never done so before, they cannot depart from a prior contrary policy *sub silentio* or otherwise disregard rules that are already in place. *FCC v. Fox Television Stations, Inc.* 556 U.S. 502 (2009). If a prior rule or practice has engendered significant reliance issues, the agency must then provide a detailed explanation to uphold the significant deviation of the new policy and practice from the prior practice. *Id.* If a new policy relies on factual findings that

contradict those which underly a previous policy, the agency must provide a detailed explanation. *Id*.

53.     Long standing law requires administrative agencies are also required to adhere to their "own internal operating procedures." *Church of Scientology of Cal. v. United States,* 920 F.2d 1481, 1487 (1990) (*citing United States ex rel. Accardi v. Shaughnessy*, 347 U.S. 260, 268 (1954)). Also known as the "*Accardi* Doctrine." *United States ex rel. Accardi v. Shaughnessy*, 347 U.S. 260, 268 (1954).

54.     Defendants' policy of mass SEVIS terminations represents a sudden and unexplained departure from prior policy and practice. The agency has failed to acknowledge or explain this shift, failed to identify any lawful justification, and has offered shifting and contradictory rationales when they have shared some small modicum of information explaining their diametric turnaround on SEVIS policy.

55.     Defendants' policy of terminating SEVIS records is arbitrary and capricious, violates the "*Accardi* Doctrine" and requires government action without observance of procedure required by law.

### THIRD CAUSE OF ACTION
**Fifth Amendment**
**(Procedural Due Process)**

56.     Plaintiffs incorporate the allegations in the paragraphs above as though fully set forth here.

57.     Procedural due process requires that the government be constrained before it acts in a way that deprives individuals of property interests protected under the Due Process Clause of the Fifth Amendment.

58.    Once a student is lawfully admitted to the United States in F-1 status, and complies with the regulatory requirements of that visa status, the continued registration of that student in SEVIS is governed by specific and mandatory regulations. Because these regulations impose specific constraints on agency action and because SEVIS registration is necessary for a student to remain enrolled as an international student, and moreover to access the menu of related *benefits inherent to F-1 student status*, Plaintiffs have a constitutionally protected property interest in their SEVIS registration. *See ASSE Int'l, Inc. v. Kerry*, 803 F.3d 1059 (9th Cir. 2015) (recognizing protected property interest in participating in exchange visitor program); *Brown v. Holder*, 763 F.3d 1141, 1148 (9th Cir. 2014) (recognizing protected property interest in nondiscretionary application for naturalization).

59.    At the most elemental level, the United States Constitution requires notice and a meaningful opportunity to be heard. *See Choeum v. I.N.S.*, 129 F.3d 29, 38 (1st Cir. 1997) ("At the core of [a noncitizen's] . . . due process rights is the right to notice and the nature of the charges and a meaningful opportunity to be heard."); *Matthews v. Eldridge*, 424 U.S. 319, 322 (1976). No such notice or opportunity to be heard was provided here.

60.    Defendants terminated Plaintiffs' SEVIS record based on improper grounds without prior notice, failure to provide an explanation or information on the specific reasons for terminating any of the students out of SEVIS unilaterally and without providing Plaintiffs with an opportunity to respond to the government's draconian actions. The failure to provide notice of the facts that formed the basis for the SEVIS termination is a violation of due process under the Fifth Amendment.

**FOURTH CAUSE OF ACTION**
**Administrative Procedure Act**
**(Procedural Due Process)**

61.    Plaintiffs incorporates the allegations in the paragraphs above as though fully set forth here.

62.    Under § 706(a) of the APA, final agency action can be set aside if it is "contrary to a constitutional right, power, privilege, or immunity." 5 U.S.C. § 706(2)(B).

63.    Defendants terminated Plaintiffs' SEVIS record based on improper grounds without prior notice or explanation and without providing Plaintiffs an opportunity to respond. The failure to provide notice of the facts that formed the basis for the SEVIS termination is a violation of due process under the Fifth Amendment.

64.    Accordingly, Defendants' action is contrary to a constitutional right and may be set aside under § 706(a) of the APA.

**PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiffs prays that this Court grant the following relief:

(1)    Declare unlawful DHS's current policy of terminating the SEVIS records of F-1 students, including Optional Practical Training participants, where Defendants' student SEVIS termination was neither (i) based on the criteria set forth in 8 C.F.R. § 214.1(d),  (ii) because the student failed to maintain student status based on the criteria set forth in 8 C.F.R. § 214.1(e)-(g), nor (iii) because the student failed to make normal progress toward completing a course of study under 8 C.F.R § 214.2(f)(5)(i).

(2)    Vacate and set aside DHS's current policy of unlawfully terminating

SEVIS records of F-1 students and including Optional Practical Training participants, where Defendants' SEVIS status termination was neither (i) based on the criteria set forth in 8 C.F.R. § 214.1(d), nor (ii) because the student failed to maintain student status based on the criteria set forth in 8 C.F.R. § 214.1(e)-(g) or 8 C.F.R § 214.2(f);

(3)   Enjoin Defendants from terminating SEVIS records for (1) all F-1 students and Optional Practical Training (OPT) participants affiliated with Plaintiff Organization's member institutions; (2) all F-1 students and OPT participants enrolled at the Plaintiff universities and colleges; and (3) all individually named Plaintiffs who are F-1 students or OPT participants; where such terminations were not based on (i) one of the grounds enumerated in 8 C.F.R. § 214.1(d); or (ii) a claimed failure to maintain status under 8 C.F.R. §§ 214.1(e)–(g) or 214.2(f), or from giving any legal effect to or reliance upon such terminations;

(4)   Order Defendants to immediately reactivate the SEVIS records of all individuals identified in Paragraphs (3), such that there is no demonstrated lapse in their SEVIS record within the SEVP and SEVIS systems;

(5)   Grant a stay of Defendants' policy of termination of F-1 SEVIS records and any individual terminations effectuated pursuant to this policy under 5 U.S.C. § 705 and this court's inherent authority pending resolution of this litigation;

(6)   Award costs and reasonable attorney's fees under the Equal Access to Justice Act, 28 U.S.C. § 2412(b); and

(7)      Order any further relief this Court deems just and proper.

DATED: April 24, 2025

Respectfully submitted,

/S/ Khaled Alrabe
Khaled Alrabe**
NY Bar Reg. No. 5542311
Cal. Bar No. 349899
National Immigration Project
1763 Columbia Road NW
Suite 175 #896645
Washington, DC 20009
Phone: (617) 227-9727
Fax: (617) 227-5495
**Motion for pro hac vice forthcoming*

/S/Siring Shebaya
Sirine Shebaya**
DC Bar No. 1019748
National Immigration Project
1763 Columbia Road NW
Suite 175 #896645
Washington, DC 20009
Phone: (617) 227-9727
Fax: (617) 227-5495
**Motion for pro hac vice forthcoming*

/S/ Kerry E. Doyle
Kerry E. Doyle, Esq.
MA Bar No. 565648
Attorney for Plaintiffs
Green & Spiegel, LLC
1524 Delancey Street, Floor 4
Philadelphia, PA 19102
Phone: (215) 395-8959
Fax: (215) 330-5311
kdoyle@gands-us.com

/S/ Stephen J. Antwine
Stephen J. Antwine, Esq.
PA Bar No. 309379

Attorney for Plaintiffs *(Pro Hac Vice Pending)*
Green & Spiegel, LLC
1524 Delancey Street, Suite 4
Philadelphia, Pennsylvania 19101
Phone: (215) 395-8959
Fax: (215) 330-5311
santwine@gands-us.com

## CERTIFICATE OF SERVICE

I hereby certify that on April 24, 2025, I electronically filed the foregoing
**COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF** with the Clerk of the
Court using the CM/ECF system, and that in accordance with Fed. R. Civ. P. 5, all counsel of
record shall be served electronically through such filing.


Respectfully submitted,


*/S/ Kerry E. Doyle*
Kerry E. Doyle, Esq.
MA Bar No. 565648
Attorney for Plaintiffs
Green & Spiegel, LLC
1524 Delancey Street, Floor 4
Philadelphia, PA 19102
Phone: (215) 395-8959
Fax: (215) 330-5311
kdoyle@gands-us.com