**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

|  |  |  |
|---|---|---|
| PRESIDENTS' ALLIANCE ON HIGHER EDUCATION AND IMMIGRATION, *et al.*, | ) ) ) ) ) | |
| *Plaintiffs*, | ) ) | Civil Action No. 1:25-cv-11109-PBS |
| v. | ) ) ) | |
| KRISTI NOEM, *in her official capacity as Secretary of Homeland* Security, et al., | ) ) ) | Leave To File Excess Pages Granted on August 14, 2025 |
| *Defendants*. | ) ) ) | |

<u>**MEMORANDUM IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS**</u>

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES ...............................................................................................i

INTRODUCTION ..........................................................................................................1

BACKGROUND .............................................................................................................2

    I.     Statutory and Regulatory Background.................................................................2

    II.    Factual and Procedural Background ....................................................................5

LEGAL STANDARDS ...................................................................................................7

ARGUMENT...................................................................................................................8

    I.     The Amended Complaint Should Be Dismissed Under Rule 12(b)(1)...................8

        A. Plaintiffs Lack Standing...........................................................................8

           1.  Plaintiffs Have Not Pled a Concrete, Particularized Injury .......................8

           2.  Plaintiffs Cannot Show Traceability...........................................................13

           3.  Plaintiffs' Alleged Injuries are Not Redressable .......................................14

        B. Counts II and III are Moot .......................................................................15

    II.    Count I Should Be Dismissed For Failure To State A Claim................................17

        A. Visa Revocations are Unreviewable by Statute and Discretionary .................17

        B. Plaintiffs Have Not Identified a Policy that Constitutes a Final Agency
           Action.....................................................................................................20

    III.   Count II Fails to State a Claim................................................................................22

    IV.   Count III Fails to State a Claim ..............................................................................24

        A. The Alleged Policy is Not a Reviewable Final Agency Action........................24

        B. The April 26, 2025, Broadcast Message is Unreviewable................................26

    V.    Count IV Fails to State a Claim Because The Broadcast Message is Not a
        Legislative Rule that Required Notice and Comment Rulemaking........................27

VI.    Count V Fails to State A Claim Because It Does Not Challenge A Final
       Agency Action ...................................................................................................29

CONCLUSION...............................................................................................................30

## TABLE OF AUTHORITIES

### CASES

*Already, LLC v. Nike, Inc.*,
  568 U.S. 85, (2013)................................................................................................ 16, 17

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009)........................................................................................................ 8

*Bark v. United States Forest Service*,
  37 F. Supp. 3d 41 (D.D.C. Mar. 28, 2014) ........................................................... 20, 24

*Bell Atl. Corp. v. Twombly*,
  550 U.S. 544 (2007)........................................................................................................ 7

*Bennett v. Spear*,
  520 U.S. 154 (1997)......................................................................................... 21, 26, 30

*Berge v. Sch. Comm. of Gloucester*,
  107 F.4th 33 (1st Cir. 2024)......................................................................................... 16

*Bernardo v. Johnson*,
  814 F.3d 481 (1st Cir. 2016)..................................................................................... 7, 19

*Beshir v. Holder*,
  10 F. Supp. 3d 165 (D.D.C 2014)................................................................................ 30

*Bolante v. Achim*,
  457 F. Supp. 2d 898 (E.D. Wis. 2006)........................................................................ 18

*Bos. Bit Labs, Inc. v. Baker*,
  11 F.4th 3 (1st Cir. 2021)......................................................................................... 7, 17

*Bouarfa v. Mayorkas*,
  604 U.S. 6 (2024)..................................................................................................... 19, 20

*Calcano-Martinez v. INS*,
  232 F.3d 328 (2d Cir. 2000)......................................................................................... 18

*Cebollero-Bertran v. Puerto Rico Aqueduct & Sewer Auth.*,
  4 F.4th 63 (1st Cir. 2021).............................................................................................. 8

*Christensen v. Harris County*,
  529 U.S. 576 (2000)...................................................................................................... 21

*Clapper v. Amnesty Int'l USA*,
  568 U.S. 398 (2013)......................................................................................... 11, 12, 13

*Conservation L. Found., Inc. v. EPA*,
  964 F. Supp. 2d 175 (D. Mass. 2013) ...................................................................... 9

*Ctr. for Auto Safety v. Nat'l Highway Traffic Safety Admin.*,
  452 F.3d 798 (D.C. Cir. 2006)................................................................................ 26

*Dantzler, Inc. v. Empresas Berrios Inventory & Operations, Inc.*,
  958 F.3d 38 (1st Cir. 2020)..................................................................................... 15

*Dep't of Educ. v. California*,
  145 S. Ct. 966 (2025).............................................................................................. 15

*Dep't of State v. Muñoz,*
  602 U.S. 899 (2024)................................................................................................ 19

*Draper v. Healey*,
  827 F.3d 1 (1st Cir. 2016)........................................................................ 11, 13, 28, 29

*Equal Means Equal v. Ferriero*,
  478 F. Supp. 3d 105 (D. Mass. 2020) ............................................................... passim

*FDA v. All. for Hippocratic Med.*,
  602 U.S. 367 (2024)............................................................................................. 9, 10

*Fund for Animals, Inc. v. United States BLM*,
  460 F.3d 13 (2006).................................................................................................. 17

*FW/PBS, Inc. v. City of Dallas*,
  493 U.S. 215 (1990)................................................................................................ 11

*Gonzalez v. Cuccinelli*,
  985 F.3d 357 (4th Cir. 2021) ................................................................................. 20

*Harper v. Werfel*,
  118 F.4th 100 (1st Cir. 2024).............................................................................. 20, 21

*Havens Realty Corp. v. Coleman*,
  455 U.S. 363 (1982)............................................................................................... 9, 11

*Hochendoner v. Genzyme Corp.*,
  823 F.3d 724 (1st Cir. 2016)..................................................................................... 7

*Holistic Candlers and Consumer's Ass'n v. FDA,*
   664 F.3d 940 (D.C. Cir. 2012) ...................................................................................... 21

*Ibrahim v. Dep't of Homeland Sec.,*
   669 F.3d 983 (9th Cir. 2012) ....................................................................................... 18

*James Hurson Assoc. v. Glickman,*
   229 F.3d 277 (D.C. Cir. 2000) ............................................................................... 28, 29

*J-E-M- Broadcasting v. F-C-C,*
   22 F.3d 320 (1994*)* ..................................................................................................... 29

*Lujan v. Defs. of Wildlife,*
   504 U.S. 555 (1992) ............................................................................................ 8, 9, 13

*Make the Rd. N.Y. v. Wolf,*
   962 F.3d 612 (D.C. Cir. 2020) .................................................................................... 19

*Merlonghi v. United States,*
   620 F.3d 50 (1st Cir. 2010) ........................................................................................... 7

*Murphy v. United States,*
   45 F.3d 520 (1st Cir. 1995) ........................................................................................... 7

*N.H. Hosp. Ass'n v. Azar,*
   887 F.3d 62 (1st Cir. 2018) ......................................................................................... 28

*Nat'l Ass'n of Consumer Advocs. v. Uejio,*
   521 F. Supp. 3d 130 (D. Mass. 2021) ......................................................................... 10

*Nat'l Ass'n of Gov't Emps., Inc. v. Yellen,*
   ("NAGE"), 120 F.4th 904 (1st Cir. 2024) ............................................................. 12, 15

*Nat'l Educ. Ass'n et al. v. U.S. Dep't of Educ. et al.,*
   25-cv-091-LM, 2025 WL 1188160 (D. N.H. Apr. 24, 2025) ..................................... 30

*Nat'l Veterans Legal Servs. Program v. United States DOD,*
   990 F.3d 834 (4th Cir. 2021) ...................................................................................... 21

*Norton v. Southern Utah Wilderness Alliance,*
   ("SUWA") 542 U.S. 55 (2004) .................................................................................... 25

*Oryszak v. Sullivan,*
   576 F.3d 522 (D.C. Cir. 2009) .................................................................................... 17

*Perez v. Mortg. Bankers Ass'n,*
    575 U.S. 92 (2015)......................................................................................... 27, 28

*Reliable Automatic Sprinkler Co. v. Consumer Prod. Safety Comm'n,*
    324 F.3d 726 (D.C. Cir. 2003) ...................................................................... 26, 27

*Roe v. Mayorkas,*
    No. 22-cv-10808, 2023 WL 3466327 (D. Mass. 2023) ........................................ 30

*S. California All. of Publicly Owned Treatment Works v. EPA,*
    8 F.4th 831 (9th Cir. 2021) ............................................................................... 27

*Shalala v. Guernsey Memorial Hospital,*
    514 U. S. 87 (1995)........................................................................................... 28

*Sierra Club v. EPA,*
    955 F.3d 56 (D.C. Cir. 2020)............................................................................. 26

*Silva v. Gonzales,*
    463 F.3d 68 (1st Cir. 2006)............................................................................. 3, 5

*Sutliffe v. Epping Sch. Dist.,*
    584 F.3d 314 (1st Cir. 2009).............................................................................. 8

*Syncor Int'l Corp. v. Shalala,*
    127 F.3d 90 (D.C. Cir. 1997).............................................................................. 28

*Taber Partners, I v. Merit Builders, Inc.,*
    987 F.2d 57 (1st Cir. 1993)................................................................................. 7

*Textron Inc. v. Comm'r of Internal Revenue,*
    336 F.3d 26 (1st Cir. 2003)................................................................................ 22

*Trafalgar Cap. Assocs., Inc. v. Cuomo,*
    159 F.3d 21 (1st Cir. 1998)................................................................................ 25

*Trump v. Hawaii,*
    585 U.S. 667 (2018).......................................................................................... 19

*Union of Concerned Scientists v. Wheeler,*
    954 F.3d 11 (1st Cir. 2020)................................................................................ 19

*United Food & Com. Workers Union Loc. 751 v. Brown Grp., Inc.,*
    517 U.S. 544 (1996)............................................................................................ 8

*Uzuegbunam v. Preczewski*,
   592 U.S. 279 (2021) ................................................................................................. 15

*Vertex Tower Assets, LLC v. Town of Wakefield, New Hampshire*,
   771 F. Supp. 3d 80 (D.N.H. 2025) ..................................................................... 15, 16

*Vill. of Bald Head Island v. U.S. Army Corps of Eng'rs*,
   714 F.3d 186 (4th Cir. 2013) ............................................................................. 21, 25

*Whitewater Draw Nat. Res. Conservation Dist. v. Mayorkas*,
   5 F.4th 997 (9th Cir. 2021) ...................................................................................... 26

*Whitmore v. Arkansas*,
   495 U.S. 149, (1990) ................................................................................................ 13

*Yerrapareddypeddireddy v. Albence*,
   No. CV-20-01476-PHX-DWL, 2021 U.S. Dist. LEXIS 221212 (D. Ariz. Nov. 16, 2021) ..... 26

*Yunsong Zhao v. Virginia Polytechnic Inst. & State Univ.*,
   No. 7:18-cv-00189, 2018 WL 5018487 (W.D. Va. Oct. 16, 2018) ......................................... 26

## STATUTES

5 U.S.C. § 551(13) ............................................................................................... 21, 24

5 U.S.C. § 553(b)(A) ............................................................................................. 27, 28

5 U.S.C. § 701(a)(2) ..................................................................................................... 19

5 U.S.C. § 704 ............................................................................................................. 20

5 U.S.C. § 701(a)(1) ............................................................................................... 17, 18

6 U.S.C. § 252(a)(4) ......................................................................................... 4, 22, 25

8 U.S.C. § 1101(a)(15)(F) ............................................................................................. 4

8 U.S.C. § 1201(i) ............................................................................................... passim

8 U.S.C. § 1227 .................................................................................................... 23, 24

8 U.S.C. § 1252(a)(5) ........................................................................................... 18, 25

8 U.S.C. § 1252(b)(9) ........................................................................................... 18, 25

8 U.S.C. § 1372 .................................................................................... 3, 4, 22, 26, 28

8 U.S.C. § 1372(a)(1)........................................................................................ 4, 22

8 U.S.C. § 1372(c) ............................................................................................ 25

8 U.S.C. § 1229a .............................................................................................. 25

Intelligence Reform and Terrorism Prevention Act of 2004 (IRTPA)
    Pub. L. 108-458............................................................................................ 17

## RULES

Federal Rules of Civil Procedure 12(b)(1)...................................................... 1, 7

Federal Rules of Civil Procedure 12(b)(6)...................................................... 1, 7

## REGULATIONS

8 C.F.R. § 214.2 ............................................................................................... 23

8 C.F.R. § 214.1 ............................................................................................... 23

8 C.F.R. § 214.1(a)........................................................................................... 22

8 C.F.R. § 214.1(d) .......................................................................................... 22

8 C.F.R. § 214.1(e)........................................................................................... 23

8 C.F.R. § 214.1(f)............................................................................................ 23

8 C.F.R. § 214.1(g) ........................................................................................... 23

8 C.F.R. § 214.1(h) ........................................................................................... 22

8 C.F.R. § 214.2(f)............................................................................................ 22

8 C.F.R. § 214.2(f)(1)(i).................................................................................... 2

8 C.F.R. § 214.2(f)(5) ....................................................................................... 3

8 C.F.R. § 214.2(f)(5)(i).................................................................................... 3, 23

8 C.F.R. § 214.2(f)(7)(iii) ................................................................................. 23

8 C.F.R. § 214.2(f)(17) ..................................................................................... 23

8 C.F.R. § 214.3(a)(1) ......................................................................................................... 22

8 C.F.R. § 1239.1 ............................................................................................................... 25

22 C.F.R. 42.122(c) ............................................................................................................ 29

22 C.F.R. § 5.5 ................................................................................................................... 21

22 C.F.R. § 41.122 ............................................................................................................. 21

22 C.F.R. § 41.122(a) ......................................................................................................... 21

22 C.F.R. § 41.122(c) ......................................................................................................... 30

22 C.F.R. § 41.61(b) ............................................................................................................ 2

## OTHER AUTHORITIES

150 Cong. Rec. S11 ........................................................................................................... 18

86 Fed. Reg. at 69,668 ............................................................................................... 3, 23, 24

https://studyinthestates.dhs.gov/students/get-started/international-student-life-cycle .................... 2

https://studyinthestates.dhs.gov/students/prepare/students-and-the-form-i-20 ............................. 3

https://www.uscis.gov/policy-manual/volume-2-part-f-chapter-2 ................................................ 2

**INTRODUCTION**

In late March and early April 2025. ICE searched the National Crime Information Center ("NCIC") database for records related to the approximately 1.3 million foreign students in the United States and identified approximately 5,000—less than half a percent—with hits. ICE then modified the records pertaining to those students in its Student Exchange and Visitor Information System ("SEVIS") law enforcement database to reflect a designation of "terminated." The State Department, for its part, examined the records and decided to revoke the visas of approximately 3,200 students. Thereafter, on April 24, 2025, Plaintiffs filed their Complaint. But since then, things have changed dramatically. On April 26, 2025, ICE issued a Broadcast Message describing new guidance for SEVIS terminations. By May 6, 2025, ICE had reactivated the affected SEVIS records, made those reactivations retroactive, and stated it had no plans to repeat the terminations based on the NCIC records that led to the initial terminations. Many individual lawsuits were then dismissed by stipulation, including the individual defendants in this case.

What remains in the Amended Complaint are challenges to the State Department's alleged visa revocation policy and the visa revocation notice letters it sent, and to the Department of Homeland Security's ("DHS") alleged SEVIS termination policies. Those challenges are brought not by individual affected students, but by two organizations representing institutions of higher learning. But Plaintiffs lack standing because they are so far removed from the challenged actions that they lack any cognizable injury and their claims are not redressable. The claims also fail on the merits. State Department visa revocations are discretionary and nonreviewable under 8 U.S.C. § 1201(i). Any claims relating to an alleged policy to terminate SEVIS records based on an NCIC hit was rendered moot when ICE issued new guidance and the records were reactivated. Plaintiffs' claims, including challenges to ICE's new policy and the State Department's revocation letters,

fail because ICE's new policy falls within a statutory exception to notice and comment rulemaking, and ICE's policy and the State Department's letters are not final agency actions. There is no legal basis for any claim in the Amended Complaint and Plaintiffs cannot cure the deficiencies. The Amended Complaint should be dismissed in its entirety, without leave to amend.

## BACKGROUND

### I.      Statutory and Regulatory Background

**The F-1 Nonimmigrant Student Classification.** The Immigration and Nationality Act ("INA"), as amended, allows for the entry of an alien, who "is a bona fide student qualified to pursue a full course of study and who seeks to enter the United States temporarily and solely for the purpose of pursuing such a course of study. . . at an established college, university…or other academic institution…" 8 U.S.C. § 1101(a)(15)(F)(i). In general, to qualify for an F-1 nonimmigrant visa, a foreign national must submit a visa application at a U.S. Embassy or Consulate where he must, among other things, (1) show he has been accepted to an approved U.S. educational institution for the purpose of pursuing a full course of study, (2) present a Certificate of Eligibility for Nonimmigrant (F-1) Student Status ("Form I-20") issued by the school, (3) show he possesses sufficient funds to cover his expenses while in the United States. *See* 22 C.F.R. § 41.61(b);    https://studyinthestates.dhs.gov/students/get-started/international-student-life-cycle; USCIS Policy Manual, Vol. 2, Part F, Chapter 2, *available at* https://www.uscis.gov/policy-manual/volume-2-part-f-chapter-2.

Once a student has received an F-1 visa from the State Department, the student may seek admission at a United States port of entry. There, the applicant must again present a Form I-20 and documentary evidence of financial support, and must demonstrate an intent to attend the school specified on the visa. 8 C.F.R. § 214.2(f)(1)(i); *see also* USCIS Policy Manual, Vol. 2, Part F,

Chapter 2. Upon admission to the United States, the student obtains F-1 status. To maintain F-1 status, at a minimum, a student must "pursue a full course of study" or "engage in authorized practical training." 8 C.F.R. § 214.2(f)(5)(i); (f)(6)(iii); *see also id.* §§ (f)(7)(iii) (failure to complete program on time); (f)(12)(ii) (failure to comply with OPT reporting requirements); (f)(9) (employment restrictions).

Individuals admitted in F-1 status are permitted to remain in the United States for the duration of status (or "D/S") instead of a date certain. *See Silva v. Gonzales*, 463 F.3d 68, 69 (1st Cir. 2006). Duration of status "is defined as the time during which an F-1 student is pursuing a full course of study at an educational institution certified by the Student and Exchange Visitor Program ("SEVP") for attendance by foreign students, or engaging in authorized practical training following completion of studies." 8 C.F.R. § 214.2(f)(5). During that time, the students use their Form I-20 as proof of their status. *See* https://studyinthestates.dhs.gov/students/prepare/students-and-the-form-i-20 ("Applying for Benefits"). The Form I-20 "proves that [the student is] legally enrolled in a program of study in the United States." *Id.* The Form I-20 includes an end-date for the program of study. *See* USCIS Policy Manual, Vol. 2, Part F, Chapter 8 at paragraph C.1, *available at* https://www.uscis.gov/policy-manual/volume-2-part-f-chapter-8. If a student stays beyond his authorized end date (including any grace period), he may be considered to be failing to maintain his F-1 status. *See id.*

**SEVIS.** SEVIS is "a law enforcement system of records." Ex. A, 86 Fed. Reg. 69,663, 69,668 (Dec. 8, 2021). It is the most recent iteration of a system created pursuant to a Congressional mandate that "[t]he [Secretary of Homeland Security][1] . . . develop and conduct a

---

[1] 8 U.S.C. § 1372 refers to the Attorney General, but those functions were transferred to DHS in the Homeland Security Act of 2002.

program to collect [certain information] from approved institutions of higher education, other approved educational institutions, and designated exchange visitor programs in the United States [certain information] with respect to aliens who have the status, or are applying for the status, of nonimmigrants under subparagraph (F), (J), or (M) of section 1101(a)(15) of this title." 8 U.S.C. § 1372(a)(1). SEVIS "is a web-based system" that, as relevant here, DHS "uses to maintain information on [SEVP]-certified schools, [and] F-1 … students who come to the United States to attend those schools." *See* "ICE, Student and Exchange Visitor Information System," found online at: https://www.ice.gov/sevis/overview (last visited August 15, 2025).

In § 1372, Congress described the system of records for collecting and maintaining information about F, J, and M students, which is separate from the nonimmigrant classifications of 8 U.S.C. § 1101(a)(15)(F), (J), and (M). 8 U.S.C. § 1372. Nothing in § 1372 equates the records in the system to nonimmigrant status or states that the system of records is a method to adjudicate or terminate nonimmigrant status. *See id.* Indeed, nonimmigrant student status existed long before SEVIS. Congress mandated that ICE shall administer the program to collect information on nonimmigrant foreign students described in 8 U.S.C. § 1372 and "shall use" the information collected in SEVIS "to carry out the enforcement functions of the agency," 6 U.S.C. § 252(a)(4).

Consistent with § 1372 and the nature of SEVIS as a database, in 2021, in accordance with the Privacy Act of 1974, DHS "modif[ed], rename[d] and reissue[d]" its database under § 1372 as "DHS/ICE-001 Student and Exchange Visitor Information System (SEVIS) System of Records." *See* Ex. A, 86 Fed. Reg. at 69,663. That Federal Register System of Records Notice explained that "[t]he purpose of this system of records is to maintain the integrity of the U.S. immigration system by collecting, maintaining, and analyzing information so that only bona fide nonimmigrant students or exchange visitors gain entry to the United States and that institutions accepting

4

nonimmigrant students are legitimate and certified and adhere to the federal rules and regulations that govern them." *Id.* at 69,664. It further explained that DHS and the State Department use the system for various purposes, some of which relate to the students themselves and some of which are school-specific. *See id.* at 69,664-665 (listing the purposes of the database).

SEVIS contains biographical information, identity information, criminal history, education information, employment information, financial support information, travel records, and case information such as "adjudication determinations; site visit reports; appeals determinations; administrative reviews; and information regarding investigations." *Id.* at 69,665-666. The information contained in SEVIS is obtained from "F/M/J nonimmigrants; proxy, parent, or legal guardians; school officials; program officials; federal and state government personnel; federal agency systems; governing bodies; and members of the public." *Id.* at 69,666.

## II.    Factual and Procedural Background

In March and April 2025, ICE terminated approximately 5,000 SEVIS records pertaining to F-1 students, and the State Department revoked the visas of approximately 3,200 F-1 students. Ex. C, May 5, Hrg. Tr. at 67:25-68:2; 66:8-18; 68:12-24 (Watson). That corresponds to less than half a percent of the over 1.3 million international students admitted to the United States**.** *Id.* at 62:9-11; (Watson); Ex. B, April 29 Hrg. Tr. at 9:2-11 (Watson).

As ICE and U.S. Citizenship and Immigration Services ("USCIS") have explained in sworn declarations, the SEVIS record changes did *not* change or adjudicate the students' F-1 status. Ex. G, Baldwin Decl. ¶ 9; Ex. F, Young Decl. ¶ 7. Rather, status adjudications occur in connection with an immigration benefit application or during immigration proceedings. *Id.* ¶¶ 9, 10.

Ultimately, by May 6, 2025, ICE reactivated the SEVIS records. Ex. E, May 6 Watson Decl. ¶¶ 4-5. ICE also sent personalized letters to the students associated with the previously-

5

terminated SEVIS records stating that the return of the SEVIS record to active was retroactive to the date of the termination such that there is no lapse in the record. Ex. G, Baldwin Decl. ¶ 15. ICE has stated that it will not "re-terminate SEVIS records based solely on the NCIC record that led to the initial termination or solely on any related visa revocation that is effective upon departure." Ex. G, Baldwin Decl. ¶ 11. After the terminations, ICE issued new guidance for SEVIS record terminations, stating that it will not terminate a SEVIS record based upon a State Department visa revocation that is effective upon departure. Ex. H, ICE April 26, 2025, Broadcast Message.

Presidents' Alliance on Higher Education and Immigration ("Presidents' Alliance") and five Student Doe plaintiffs filed their initial complaint on April 24, 2025, against Pamela Bondi, the U.S. Attorney General, Kristi Noem, the Secretary of Homeland Security, Todd Lyons, the Acting Director of ICE, and DHS. ECF 1. The operative Amended Complaint was filed on June 27, 2025, by Presidents' Alliance, Student Doe #4, and a new plaintiff, the Association of Independent Colleges and Universities in Massachusetts ("AICUM"), against Defendants Noem, Lyons, DHS, Marco Rubio, Secretary of State, and the Department of State.[2] ECF 14 ("Am. Compl."). Student Does 1, 2, 3, and 5 voluntarily dismissed their action that same day. ECF 13. Student Doe #4 voluntarily dismissed his claims on August 4, 2025. ECF 23.

The Amended Complaint contains five counts, all brought pursuant to the Administrative Procedure Act ("APA"). Count I alleges that the State Department implemented an arbitrary and capricious visa revocation policy. *Id.* ¶¶ 72-76. Count II alleges that DHS implemented a SEVIS record termination policy contrary to preexisting regulations. *Id.* ¶¶ 77-80. Count III alleges that DHS and ICE's policy of SEVIS terminations based on visa revocations or NCIC hits is arbitrary

---

[2] Since the Amended Complaint does not name Attorney General Bondi nor bring any claims against the Justice Department, Attorney General Bondi should be terminated from this action.

and capricious because it departs from prior practice without explanation. *Id.* ¶ 81-87. Count IV alleges that ICE's April 26, 2025, Broadcast Message should have undergone notice-and-comment rulemaking. *Id.* ¶¶ 88-92. Finally, Count V alleges that the State Department engaged in a so-called "intimidation policy" by sending visa revocation notice letters. *Id.* ¶¶ 93-98. The Amended Complaint seeks to have the challenged "policies" declared unlawful and set aside, to have the resulting visa revocations set aside, to enjoin DHS from terminating SEVIS records, to require any SEVIS record termination policy to undergo notice and comment rulemaking, to vacate the State Department's alleged intimidation policy, and to award fees and costs. Am. Compl. at Prayer.

## LEGAL STANDARDS

**Rule 12(b)(1) Motion to Dismiss.** A court should dismiss claims under Rule 12(b)(1) when it lacks jurisdiction to decide them, including where plaintiffs lack standing, a statute precludes review, or the claims are moot. *See, e.g.*, *Hochendoner v. Genzyme Corp.*, 823 F.3d 724, 730 (1st Cir. 2016); *Bos. Bit Labs, Inc. v. Baker*, 11 F.4th 3, 8 (1st Cir. 2021); *Bernardo v. Johnson*, 814 F.3d 481, 483 (1st Cir. 2016). "When a district court considers a Rule 12(b)(1) motion, it must credit the plaintiff's well-pled factual allegations and draw all reasonable inferences in the plaintiff's favor." *Merlonghi v. United States*, 620 F.3d 50, 54 (1st Cir. 2010). "A plaintiff, however, may not rest merely on unsupported conclusions or interpretations of law." *Murphy v. United States*, 45 F.3d 520, 522 (1st Cir. 1995) (citation omitted). Plaintiffs bear the burden of proving jurisdiction. *Taber Partners, I v. Merit Builders, Inc.*, 987 F.2d 57, 60 (1st Cir. 1993).

**Rule 12(b)(6) Motion to Dismiss.** The factual "allegations [in the complaint] must be enough to raise a right to relief above the speculative level and a claim for relief must be plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "Evaluating whether a complaint states a plausible claim for relief is 'a context-specific task that requires the reviewing

7

court to draw on its judicial experience and common sense.'" *Cebollero-Bertran v. Puerto Rico Aqueduct & Sewer Auth.*, 4 F.4th 63, 70 (1st Cir. 2021) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009)).

## ARGUMENT

### I.    The Amended Complaint Should Be Dismissed Under Rule 12(b)(1).

#### A.    Plaintiffs Lack Standing.

This Court lacks jurisdiction because Plaintiffs lack standing. Constitutional standing is an indispensable component of the case-or-controversy requirement of Article III. *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561 (1992). "The 'irreducible constitutional minimum of standing contains three elements': (1) that the plaintiff suffered an 'injury in fact,' (2) that there is a 'causal connection between the injury and the conduct complained of,' and (3) that it is 'likely' that the injury will be redressed by the requested relief." *Sutliffe v. Epping Sch. Dist.*, 584 F.3d 314, 325 (1st Cir. 2009) (quoting *Lujan*, 504 U.S. at 560).

The organizational standing analysis uses the same analysis as the traditional standing inquiry. *Equal Means Equal v. Ferriero*, 478 F. Supp. 3d 105, 120 (D. Mass. 2020). Associational standing requires a plaintiff to show that "(a) its members would otherwise have standing to sue in their own right; (b) the interests it seeks to protect are germane to the organization's purpose; and (c) neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit." *United Food & Com. Workers Union Loc. 751 v. Brown Grp., Inc.*, 517 U.S. 544, 553 (1996) (quotations/citations omitted). In their Amended Complaint, Plaintiffs do not (and cannot) satisfy the requirements under either theory of standing.

#### 1.    Plaintiffs Have Not Pled a Concrete, Particularized Injury.

Plaintiffs, Presidents' Alliance and AICUM, are organizations that represent colleges and universities. Am. Compl. ¶¶ 5-6. However, they have not suffered an injury-in-fact that is "actual

or imminent, not conjectural or hypothetical." *Conservation L. Found., Inc. v. EPA*, 964 F. Supp. 2d 175, 186 (D. Mass. 2013) (quoting *Lujan*, 504 U.S. at 560).

First, Plaintiffs cannot establish an injury in fact for purposes of organizational standing, that is "sufficiently concrete" and not "merely an abstract social interest." *Equal Means Equal*, 478 F. Supp. 3d at 121. For example, Plaintiffs must demonstrate "concrete and demonstrable injury to the organization's activities—with the consequent drain on the organization's resources." *Havens Realty Corp. v. Coleman*, 455 U.S. 363, 379 (1982). They have not done so here.

According to Plaintiffs, they expended "significant and varied resources" in response to the challenged policies, including "funnel[ing] their attention to helping member institutions weather the sudden revocations and terminations." Am. Compl. ¶¶ 52-53. Presidents' Alliance claims it "has been forced to divert significant time and resources away from its planned initiatives to respond to the resulting crisis," *id.* ¶ 54, and has dealt with "a surge in individualized requests … from member institutions seeking clarity, coordination, and guidance," which "have forced the organization to reprioritize internal workflows and significantly increase coordination efforts with national partners." *Id.* ¶ 55. AICUM claims to have "expended staff resources to survey its member institutions and [hold] follow-up calls," "diverted resources in order to conduct advocacy outreach to elected officials on behalf of its members," and experienced "immense financial strain the current federal regulatory landscape has created." *Id.* ¶ 56.

The purported organizational injuries Plaintiffs allege here are of the same nature as those considered and rejected by the Supreme Court when a group of medical associations claimed to have organizational standing to challenge the FDA's relaxed regulatory requirements for mifepristone, providing easier access to the abortion drug. *See FDA v. All. for Hippocratic Med.*, 602 U.S. 367, 372-73 (2024); *see id.* at 394. The medical associations claimed they possessed

9

standing because they incurred costs in order to oppose the FDA's actions, including conducting studies to "better inform their members and the public about mifepristone's risks," and causing them to "expend considerable time, energy, and resources drafting citizen petitions to FDA, as well as engaging in public advocacy and public education, causing the association to expend resources to the detriment of other spending priorities." *Id.* at 394 (internal citations and quotation marks omitted). The Supreme Court held that the associations could "not spend [their] way into standing simply by expending money to gather information and advocate against the defendant's action." *Id.* So too here. Plaintiffs' expenditure of resources to assist their member institutions does not constitute a concrete injury for purposes of standing. A central component of Presidents' Alliance's mission is "to address immigration issues impacting students, campuses, and communities." Am. Compl. ¶ 5. And "AICUM advocates on behalf of its members on numerous issues, including … protecting the interests of international students on its member campuses." *Id.* ¶ 6. The alleged injuries Plaintiffs set forth in the Amended Complaint consist of each organization executing their respective missions as opposed to the obstruction of their ability to carry out the same. *Cf. Nat'l Ass'n of Consumer Advocs. v. Uejio*, 521 F. Supp. 3d 130, 142 (D. Mass. 2021). "If these allegations were sufficient to claim standing, an organizational plaintiff would have standing anytime a defendant's action interfered with their organizational goal of advocacy." *Equal Means Equal*, 478 F. Supp. 3d at 122. Plaintiffs' "expenses in the pursuit of [their] agendas are self-effectuating and claiming them as injury-in-fact would allow any advocacy group to manufacture standing by choosing to expend resources to advocate against policy decisions made by the federal government." *Id.* (internal citation omitted). To establish standing, "organizations [must] have an injury distinct from an interest in the problem," and courts "do not find standing when the organizational goal is one in the same with the injury because

10

those organizations have only a mere interest in a problem." *Id.* (internal citations/quotations omitted). Plaintiffs have not demonstrated a "concrete and demonstrable injury to the[ir] activities… [that] constitutes far more than simply a setback to the organization's abstract social interests" sufficient to demonstrate standing. *Havens Realty Corp.*, 455 U.S. at 379.

Moreover, Plaintiffs have not shown any ongoing injuries now that Defendants have reactivated the terminated SEVIS records. *See* Am. Compl. ¶ 44. Indeed, the only harms Plaintiffs cite in their Amended Complaint concern Counts II and III, and were "a result of the DHS's actions to terminate international students' SEVIS records pursuant to its Termination Policy," *id.* ¶ 54; *see also id.* ¶ 56, which has since been rendered moot by the reactivation of the SEVIS records. Nor can Plaintiffs claim that "they are suffering *present* injury because the risk of" future SEVIS terminations because Plaintiffs "cannot manufacture standing by choosing to make expenditures based on hypothetical future harm that is not certainly impending." *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 402 (2013) (emphasis in original).

Plaintiffs also cannot establish an injury in fact on a theory of associational standing, which requires the association to, "at the very least, 'identify [a] member[ ] who ha[s] suffered the requisite harm.'" *Draper v. Healey*, 827 F.3d 1, 3 (1st Cir. 2016) (internal citation omitted). The Amended Complaint does not individually identify any of Plaintiffs' member institutions but describes them as "several large public research universities located across the United States, including in Massachusetts." Am. Compl. ¶ 59. Plaintiffs' "failure to allege facts in this regard is alone fatal to its associational standing theory." *Equal Means Equal*, 478 F. Supp. 3d at 120; *FW/PBS, Inc. v. City of Dallas*, 493 U.S. 215, 235 (1990) (discussing the requirement that plaintiffs must name affected individuals to demonstrate standing).

Plaintiffs contend their member institutions were injured as a result of SEVIS record

11

terminations (which have since been reversed), citing confusion, decreased enrollment, the need to provide additional resources to international students, budgetary strain, and limitations on intellectual diversity. Am. Compl. ¶¶ 58-59. But "[p]ast harm is insufficient to confer standing to seek forward-looking declaratory or injunctive relief; there must be ongoing injury or a sufficient threat that the injury will recur." *Nat'l Ass'n of Gov't Emps., Inc. v. Yellen ("NAGE")*, 120 F.4th 904, 910 (1st Cir. 2024) (internal quotation marks and citations omitted). ICE has confirmed that, "[c]onsistent with its new SEVIS policy, ICE will not re-terminate SEVIS records based solely on the NCIC record that led to the initial termination or solely on any related visa revocation that is effective upon departure." Ex. G, Baldwin Decl. ¶ 11. That is consistent with stipulations of dismissal entered in cases throughout the country in which ICE has agreed not to terminate SEVIS records again for the same reason. The future conjectural harm Plaintiffs' member institutions fear—widespread re-termination of SEVIS records—"relies on a highly attenuated chain of possibilities, [and] does not satisfy the requirement that threatened injury must be certainly impending." *Clapper*, 568 U.S. at 410. Put another way, Plaintiffs seek "forward-looking relief due to hypothetical injuries that would materialize only in the event of a … [decision of] the U.S. federal government" to re-terminate SEVIS records based solely on entries in the NCIC database en masse. *NAGE*, 120 F.4th at 910. But ICE has already stated it will not do so, making these feared injuries too speculative for purposes of establishing standing. Ex. G, Baldwin Decl. ¶ 11.

Plaintiffs also cite a similarly speculative set of future harms to their member institutions, "including the possibility of decertification and the future inability to recruit or admit international students," Am. Compl. ¶ 64, "uncertainty created by the abrupt and voluminous termination of SEVIS records," which "continues to have—a profound impact on institutional planning and budgeting," *id.* ¶ 70, "[t]he inability to forecast international student enrollment," and "sudden

12

decline or unpredictability in enrollment [that] could lead to significant fiscal shortfalls, program cuts, and staffing reductions." *Id.* In support of these claims, Plaintiffs cite a single article regarding the threatened revocation of Harvard's SEVP status, *id.* ¶ 64, but do not specify that Harvard is a member institution or offer any concrete evidence to substantiate their fears of future harm to their member institutions. Nor do they offer any declarations or affidavits from their member institutions to substantiate their claims of future harm. The Supreme Court has "repeatedly reiterated that 'threatened injury must be *certainly impending* to constitute injury in fact,' and that '[a]llegations of *possible* future injury' are not sufficient." *Clapper*, 568 U.S. at 409 (quoting *Whitmore v. Arkansas*, 495 U.S. 149, 158, (1990)). Accordingly, Plaintiffs have not sufficiently demonstrated injury-in-fact on the part of even a single member to establish associational standing. *Draper*, 827 F.3d at 3.

### 2.    Plaintiffs Cannot Show Traceability.

Plaintiffs also lack standing because the injuries they seek to remedy are not fairly traceable to Defendants or the challenged policies. *Lujan*, 504 U.S. at 560-61. This is particularly true with respect to Plaintiffs' contentions that enrollment at member "institutions has already dipped below historical trends," Am. Compl. ¶ 59, and that certain students at member institutions have left the United States. *Id.* ¶ 63. Plaintiffs provide no evidence that the challenged policies are the impetus for this alleged decrease in enrollment. There are a variety of reasons enrollment may be down that have nothing to do with the challenged policies, including, for example, rising costs in higher education and uncertainty in the financial markets. Plaintiffs admit that approximately 80% of international students pay full tuition. *Id.* ¶ 66. Moreover, Plaintiffs do not specify whether the unnamed students referenced in the Amended Complaint departed the United States because their SEVIS records were terminated (which accounts for less than half a percent of international

13

students), or for other reasons. Indeed, Plaintiffs concede that an international student might depart the United States for any number of "personal" or "legal" reasons unrelated to a termination of his or her SEVIS record. *Id.* ¶ 65. Nor do Plaintiffs specify what member institution such students attended or whether the students departed temporarily or abandoned their U.S. education altogether. After all, ICE reactivated SEVIS records for affected students. Ex. G, Baldwin Decl. ¶¶ 12-13. Though Plaintiffs contend that students at an unnamed "member institution self-deported out of fear," Am. Compl. at ¶ 63, Plaintiffs have not alleged facts showing that Defendants would "imminently" deport these students based on the SEVIS terminations, such as facts showing students were issued Notices to Appear and charged as deportable, or facts showing that *any* students were removed from the United States as a result of the challenged policies.

Students who choose to not enroll with member institutions or make the decision to depart the United States cannot serve as the basis for the link between Defendants' alleged policies and Plaintiffs' purported injuries. *Equal Means Equal*, 478 F. Supp. 3d at 117 ("Injuries that stem from independent acts of third parties are ordinarily not cognizable because they are [not] fairly traceable to the defendant.").

### 3.    Plaintiffs' Alleged Injuries are Not Redressable.

Finally, Plaintiffs cannot demonstrate that their alleged injuries are redressable by a favorable decision of this Court. Plaintiffs seek declaratory and injunctive relief including enjoining the challenged policies and declaring them unlawful. Am. Compl. at Prayer for Relief. However, the Amended Complaint does not establish how such relief will redress the purported organizational injuries and the injuries to Plaintiffs' member institutions.

First, a declaration that the "Termination Policy" is unlawful, arbitrary, and capricious (Counts II and III) would have no effect because, as Plaintiffs acknowledge, Am. Compl. ¶¶ 44-45, ICE reactivated the terminated records and changed its guidance on terminations altogether.

*See* Ex. G, Baldwin Decl. ¶¶ 10-13. Moreover, it is entirely speculative that enjoining the alleged policies would redress the alleged injuries. *See Dantzler, Inc. v. Empresas Berrios Inventory & Operations, Inc.*, 958 F.3d 38, 47 (1st Cir. 2020). Plaintiffs focus on the drop in enrollment at member institutions. Am. Compl. ¶¶ 65-67. It is entirely speculative that the requested relief would restore enrollment, particularly given that the challenged actions affected less than half a percent of international students. Enrollment is entirely dependent on third parties not involved in this lawsuit: students who make the decision of whether and where to attend college. *See Vertex Tower Assets, LLC v. Town of Wakefield, New Hampshire*, 771 F. Supp. 3d 80, 91 (D.N.H. 2025) ("Where redress of a plaintiff's injury would require discretionary action by a third party … the redressability requirement is not met."); *see also Dantzler, Inc.*, 958 F.3d at 49.

To the extent Plaintiffs cite financial harm to member institutions as a result of a purported drop in tuition, Am. Compl. ¶ 66, this, too, is not redressable because the APA's waiver of sovereign immunity does not apply to claims seeking monetary damages. *Dep't of Educ. v. California*, 145 S. Ct. 966, 968 (2025). And Plaintiffs exclusively seek relief under the APA. *See* Am. Compl. ¶¶ 72-98. Accordingly, any financial harm Plaintiffs seek to remedy is not redressable by a favorable decision of this Court.

## B.    Counts II and III Are Moot.

"At all stages of litigation, a plaintiff must maintain a personal interest in the dispute. The … doctrine of mootness considers whether [standing] exists throughout the proceedings." *Uzuegbunam v. Preczewski*, 592 U.S. 279, 282 (2021). "[I]f in the course of litigation a court finds that it can no longer provide a plaintiff with any effectual relief, the case generally is moot." *Id.*; *see also NAGE*, 120 F.4th at 911 (a plaintiff's "personal stake in the action" is eliminated when there is no "persisting redressable injury"; claims based on "past injuries" can become moot when

15

circumstances change).

Plaintiffs alleged that DHS violated the APA with "widespread SEVIS terminations in March and April, based solely on inclusion in the NCIC database." Am. Compl. ¶¶ 41, 77-87 Plaintiffs admit that DHS reversed course and reactivated the records, but claim the reactivations "might only temporary." *Id*. ¶ 44. Plaintiffs claim that DHS has a "policy of widespread SEVIS terminations based upon requested and specious visa revocations or a database hit." *Id*. ¶ 85; *see also id.* ¶ 79. Yet they admit that the alleged policy they challenge was superseded by agency guidance dated April 26, 2025. *Id*. ¶ 45.

The SEVIS database records were returned to active by May 6, 2025 – over three months ago and over seven weeks before Plaintiffs filed their Amended Complaint, and that reactivation was retroactive to the date of termination. *See* Ex. E, May 6 Watson Decl. ¶¶ 5, 7; Ex. G, Baldwin Decl. ¶¶ 12, 13. To the extent Plaintiffs seek relief from the terminations for affected students, it has already been granted by ICE. *See, e.g., Vertex Tower*, 771 F. Supp. 3d at 89 (claims resolved by defendant during pendency of lawsuit moot). Plaintiffs suggest the reactivation is "temporary," but, to the contrary, ICE has stated that it "will not re-terminate the SEVIS records based solely on the NCIC hits that led to the initial termination." Ex. G, Baldwin Decl. ¶ 11. Moreover, DHS has shown that the challenged behavior cannot reasonably be expected to recur through its restoration of the records, declarations explaining that those records will not be terminated again based solely on the NCIC hit, and the revised guidance of April 26, 2025. *Already, LLC v. Nike, Inc.*, 568 U.S. 85, 96, (2013); *Berge v. Sch. Comm. of Gloucester*, 107 F.4th 33, 45 (1st Cir. 2024). Nor is an argument of a mere *possibility* that the actions could recur sufficient to avoid mootness. "We have never held that the doctrine--by imposing this burden [of not reasonably expected to recur] on the defendant--allows the plaintiff to rely on theories of Article III injury that would fail

16

to establish standing in the first place." *Already LLC*, 568 U.S. at 96.

Plaintiffs also challenge the alleged "policy" of terminations based on database hits. Am. Compl. ¶¶ 77-87. However, Plaintiffs admit that the alleged policy was superseded by the April 26, 2025, Policy. Am. Compl. ¶ 45. Thus to the extent there ever was a policy and a legal claim against it, that too is now moot, particularly since the effects of that alleged prior policy have been reversed. *See Bos. Bit Labs,* 11 F.4th at 9 (challenged order superseded, mooting claims); *Fund for Animals, Inc. v. United States BLM*, 460 F.3d 13, 18 (2006) (claim based on expired memo was moot). Accordingly, Counts II and III of the Amended Complaint should be dismissed as moot.

## II.    Count I Should Be Dismissed For Failure To State A Claim

### A.    Visa Revocations are Unreviewable by Statute and Discretionary.

An APA cause of action fails to state a claim if another statute precludes judicial review or if an agency action is committed to the agency's discretion by law. 5 U.S.C. §§ 701(a)(1) & (a)(2). *See also Oryszak v. Sullivan*, 576 F.3d 522, 525 (D.C. Cir. 2009) (§ 701(a) is not jurisdictional). Count I challenges an alleged State Department "policy of revoking visas en masse based on the presence of a student's name in the NCIC database." Am. Compl. ¶ 74. It claims this alleged policy is a change in position and arbitrary, capricious, and unlawful. *Id.* ¶¶ 73-76. Plaintiffs fail to state a claim under the APA because visa revocations are precluded from judicial review by statute and committed to the discretion of the State Department. Dismissal under Rule 12(b)(6) is required.

State Department visa revocations are governed by 8 U.S.C. § 1201(i), which was amended as part of the Intelligence Reform and Terrorism Prevention Act of 2004 (IRTPA), Pub. L. 108-458, § 5304, 118 Stat. 3638, and provides, in relevant part:

> After the issuance of a visa or other documentation to any alien, the consular officer or the Secretary of State *may at any time, in his discretion, revoke such visa or other documentation. … There shall be no means of judicial review (including [habeas corpus]) of a revocation under this subsection*, except in the context of a

17

removal proceeding if such revocation provides the sole ground for removal under section 1227(a)(1)(B) of this title."

8 U.S.C. § 1201(i) (emphasis added). As the Ninth Circuit explained, "[s]ection 1201(i) of Title 8 expressly precludes visa revocations from judicial review." *Ibrahim v. Dep't of Homeland Sec.*, 669 F.3d 983, 1004 (9th Cir. 2012). The legislative history of IRTPA is in accord. *See* 150 Cong. Rec. S11,939-01 (daily ed. Dec. 8, 2024) (statement of Sen. Kyl) ("Currently all decisions regarding visa issuance by Consular Officers are final, they are not subject to judicial review. The same should be true of visa revocation decisions."). In effect, Congress "expanded the [consular] non-reviewability doctrine by enacting [8 U.S.C. § 1201(i)], which stripped district courts of the authority to review visa revocations[.]" *Bolante v. Achim*, 457 F. Supp. 2d 898, 900-01 (E.D. Wis. 2006). The exception in § 1201(i) for a limited challenge in removal proceedings where visa revocation is the sole ground for removal does not change the analysis because the courts of appeals are the "sole and exclusive means for judicial review of an order of removal." 8 U.S.C. § 1252(a)(5); *see also* 8 U.S.C. § 1252(b)(9). Those provisions "force[] a [noncitizen] in removal proceedings to save all of his or her challenges to an unlawful government decision or action until after a final removal order is issued." *Calcano-Martinez v. INS*, 232 F.3d 328, 340 (2d Cir. 2000). Outside of this narrow set of removal proceedings, there is no review of a visa revocation or underlying issues of law or fact. *See id.*

Thus, Plaintiffs cannot challenge any visa revocation decisions under the APA, whether pursuant to a "policy" or otherwise, because such a challenge is precluded from review by statute. 5 U.S.C. § 701(a)(1).

The decision to revoke a visa is also committed to the discretion the Secretary of State by the plain terms of the applicable statute: "After the issuance of a visa or other documentation to any alien, the consular officer or the Secretary of State *may at any time, in his discretion*, revoke

such visa or other documentation." 8 U.S.C. § 1201(i) (emphasis added). The statute indicates discretion by using the terms "discretion," "may," and "at any time." *Bernardo,* 814 F.3d at 485-86 (use of "may," "at any time," and "for what he deems to be good and sufficient cause" in 8 U.S.C. § 1155 denoted discretion). Congress imposed no threshold requirements or limitations on the exercise of that discretion to revoke a visa, nor does the Amended Complaint identify any. *See* 8 U.S.C. § 1201(i); *see also Bouarfa v. Mayorkas,* 604 U.S. 6, 15 (2024) (comparing the petition revocation provision of § 1155 (which has language similar to § 1201(i)) with other statutory sections granting discretion and holding that "[w]hen it comes to the Secretary [of Homeland Security]'s discretion to revoke the agency's approval of a visa petition, though, Congress imposed no such threshold requirements."). Where the statute delegates an action to agency discretion, the APA precludes review. *See* 5 U.S.C. § 701(a)(2). That limitation encompasses agency action of a kind "traditionally regarded as committed to agency discretion" or when the relevant statute provides "no meaningful standard against which to judge the agency's exercise of discretion." *Union of Concerned Scientists v. Wheeler*, 954 F.3d 11, 17 (1st Cir. 2020) (citations omitted). Visa decisions are of a kind traditionally committed to agency discretion. *See Dep't of State v. Muñoz,* 602 U.S. 899, 907 (2024) (the "admission and exclusion of foreign nationals is a 'fundamental sovereign attribute exercised by the Government's political departments [and is] largely immune from judicial control.'") (citing *Trump v. Hawaii*, 585 U.S. 667, 702 (2018)). And the statute, which provides complete discretion as to the time and reason for revocation, with no "threshold requirements," *see Bouarfa*, 604 U.S. at 15, provides no standard against which a judge can review that exercise of discretion. *See, e.g., Make the Rd. N.Y. v. Wolf*, 962 F.3d 612, 633 (D.C. Cir. 2020) (no standard to evaluate exercise of discretion in expedited removal statute).

Plaintiffs seek to avoid this clear bar to an APA claim by asserting that the agency's actions

19

constitute an unexplained reversal in policy (Am. Compl. ¶ 74), but that is the wrong analytical framework. Visa revocations are discretionary, including whether and when to revoke a visa. "Just as Congress does not have to exercise the powers delegated to it by the people, neither does the agency have to exercise its delegated powers where the text and structure of the relevant statute provide it with complete discretion." *Gonzalez v. Cuccinelli*, 985 F.3d 357, 371 (4th Cir. 2021). Here, the State Department has complete discretion to revoke visas, and it has exercised that discretion. And as with visa petition revocations under § 1155, "[t]hat discretion is a two-way street." *Bouarfa*, 604 U.S. at 15. As the *Bouarfa* Court explained, "[b]y granting the Secretary [of Homeland Security] discretion to revoke the agency's approval of visa petitions, Congress has also vested the Secretary with discretion to *decline* to revoke an approval the agency previously gave. So, if the Secretary determines that the agency's approval of a visa petition was erroneous, he can revoke that approval—or he can let the error stand." *Id.* Plaintiffs may not like the State Department's current exercise of discretion in these matters, but nonetheless, such discretionary decisions and whether or when to invoke them, are not reviewable under the APA.

**B.      Plaintiffs Have Not Identified a Policy that Constitutes a Final Agency Action.**

Count I fails for an additional reason. The APA permits challenges to *final* agency actions only. 5 U.S.C. § 704; *Harper v. Werfel*, 118 F.4th 100, 116 (1st Cir. 2024). Plaintiffs claim to challenge an alleged revocation "policy" of the State Department but fail to identify any such alleged policy. "Instead, Plaintiffs appear to have attached a 'policy' label to their own amorphous description of the [agency's] practices. But a final agency action requires more." *Bark v. United States Forest Service*, 37 F. Supp. 3d 41, 50 (D.D.C. Mar. 28, 2014).

"An agency action is final if: (1) it marks the 'consummation of the agency's decision-making process,' and (2) the action determines rights or obligations or creates legal consequences."

20

*Harper*, 118 F.4th at 116 (quoting *Bennett v. Spear*, 520 U.S. 154, 177-78 (1997)). "Final agency action 'is a term of art that does not include all [agency] conduct such as, for example, constructing a building, operating a program, or performing a contract,' but instead refers to an 'agency's [final] *determination* of rights and obligations whether by rule, order, license, sanction, relief, or similar action.'" *Nat'l Veterans Legal Servs. Program v. United States DOD*, 990 F.3d 834, 839 (4th Cir. 2021) (quoting *Vill. of Bald Head Island v. U.S. Army Corps of Eng'rs*, 714 F.3d 186, 193 (4th Cir. 2013) (citing *Bennett,* 520 U.S. at 177-78)). An action fails the first prong if it is "'of a merely tentative or interlocutory nature'" and does not express an agency's "'unequivocal position.'" *Holistic Candlers and Consumer's Ass'n v. FDA*, 664 F.3d 940, 943 (D.C. Cir. 2012) (citations omitted). A non-final action contemplates further administrative consideration or modification prior to the agency's adjudication of rights or imposition of obligations. *See id*. at 945.

Plaintiffs do not and cannot identify any "agency rule, order, license, sanction, relief, or the equivalent" of the State Department that they seek to challenge. 5 U.S.C. § 551(13) (defining agency action). While the State Department has promulgated a regulation governing the revocation of nonimmigrant visas, 22 C.F.R. § 41.122, that regulation reiterates the statutory grant of discretion in 8 U.S.C. § 1201(i) and provides no basis for Plaintiffs' challenge here. 22 C.F.R. § 41.122(a). The State Department "articulates" its "official guidance, including procedures and policies, on matters relating to Department management and personnel" in the Foreign Affairs Manual ("FAM"). 22 C.F.R. § 5.5. The Amended Complaint does not identify any FAM sections that Plaintiffs believe support their "policy" challenge, and that is unsurprising. FAM sections do not have the force of law. *See Christensen v. Harris County*, 529 U.S. 576, 587 (2000) (explaining that "interpretations contained in policy statements, agency manuals, and enforcement guidelines" all "lack the force of law"). And, the FAM, like the applicable regulation, reiterates the State

21

Department's discretion to revoke visas. *See, e.g.,* 9 FAM 403.11-4(C)(2) (Nov. 21, 2022); 9 FAM 403.11-5 (Mar. 7, 2024); 9 FAM 403.11-5(B) (Apr. 29, 2025). Thus, the FAM does not support Plaintiffs' claims.

Accordingly, Count I fails to state a claim and must be dismissed.

### III.    Count II Fails to State a Claim

Plaintiffs allege in Count II that for a record in the SEVIS law enforcement database, "the only lawful means of termination" are 8 C.F.R. § 214.1(d) or § 214.1(e)-(g). Am. Compl. ¶ 79. That is wrong. The cited regulations relate to nonimmigrant status and have nothing to do with modifying (including terminating) database records.

Part 214.1(d), "Termination of status," states, "[w]ithin the period of initial admission or extension of stay, the *nonimmigrant status* of an alien shall be terminated by…." 8 C.F.R. 214.1(d) (emphasis added). The plain text of the regulation shows that the regulation has no relation to SEVIS. *See Textron Inc. v. Comm'r of Internal Revenue*, 336 F.3d 26, 31 (1st Cir. 2003) (plain text controls). The regulation makes no mention of database records, SEVIS, or 8 U.S.C. § 1372, the statute authorizing SEVIS. That is in contrast to other statutes and regulations that explicitly refer to SEVIS. *See, e.g.,* 8 C.F.R. § 214.2(f); 8 C.F.R. § 214.3(a)(1); 6 U.S.C. § 252(a)(4). And, § 214.1(d) pertains to *all* nonimmigrant classes, not just those with information in SEVIS. *See* 8 C.F.R. 214.1(d) (referring to "nonimmigrant status" generally); *id.* § 214.1(a) (defining all nonimmigrant classes); *id.* § 214.1(h) (referring only to F, J, and M nonimmigrants); *id.* § 214.2 (altering requirements of 214.1 for certain classes of nonimmigrants); 8 U.S.C. § 1372(a)(1) (limiting SEVIS to F, J, and M nonimmigrants). Thus, Plaintiffs argument that § 214.1(d) governs SEVIS terminations—when it pertains to all nonimmigrants and has nothing to do with database maintenance—is unsupported by the plain text of the regulation and fails to state a claim upon

22

which relief can be granted.

Plaintiffs' claim that 8 C.F.R. §§214.1(e)-(g) govern SEVIS law enforcement database management fares no better for many of the same reasons. Like § 214.1(d), those sections explain ways in which *any* nonimmigrant may fail to maintain status; they are not limited to students. *See* 8 C.F.R. §§ 214.1(e)-(g). They make no mention of the SEVIS database or record management. *See id.* Furthermore, the provisions of § 214.1 are explicitly modified by § 214.2. *See* 8 C.F.R. 214.2 ("The general requirements in § 214.1 are modified for the following nonimmigrant classes:"). Part 214.2(f) pertains to nonimmigrant students in F-1 status and includes requirements for updating addresses, maintaining a fulltime course load, and completing a program of study within the time period allotted. *See, e.g.,* § 214.2(f)(5)(i) (fulltime course of study); § 214.2(f)(7)(iii) (failure to complete program in time allotted), § 214.2(f)(17) (address updates). The INA also provides categories of removable aliens separate and apart from the regulations Plaintiffs cite. *See* 8 U.S.C. § 1227. Thus, Plaintiffs claim that §§ 214.1(d)-(g) are the only laws applicable to nonimmigrant students is simply wrong and cannot support a claim for relief.

Finally, SEVIS is a law enforcement database that contains records about foreign nationals, schools, designated school officials, and others involved in the student nonimmigrant programs. 86 Fed. Reg. at 69,668. It is a *tool* used by DHS and Department of State to support other functions, as explained in the Federal Register on December 8, 2021, over three years before the actions that led to this litigation. *Id.* How DHS maintains, modifies, and uses the records in its law enforcement database is separate and apart from nonimmigrant *status* and the laws and regulations governing such status. The Federal Register Notice describes SEVIS's uses as "validat[ing] the identity of F/M/J nonimmigrants"; "facilitat[ing] and support[ing] determination activities related to admissibility into the United States and the eligibility and status of benefits"; "support vetting of

23

F/M/J nonimmigrants and their dependents and school and program officials"; "monitor[ing] the compliance" with immigration laws and regulations; "perform[ing] administrative and criminal investigations related to the participation of F/M/J nonimmigrants, school and EV Program sponsors, and the schools and exchange visitor programs"; "creat[ing] and provid[ing] reports for analyzing compliance issues and identifying activities and related individuals (if needed) for evidence-based decision-making." 86 Fed. Reg. at 69,664-665. Validating, vetting, supporting, facilitating, and monitoring are not adjudications. Nothing in the Federal Register Notice suggests that SEVIS is a method by which ICE can or does adjudicate F-1 student status. *See id.*

Plaintiffs fail to state a claim that SEVIS database record management is governed by a subset of regulations relating to nonimmigrant status, and thus Count II must be dismissed.

## IV.    Count III Fails to State a Claim

### A.    The Alleged Policy is Not a Reviewable Final Agency Action.

Even if this Court determined that Plaintiffs' third cause of action is not moot, it should be dismissed for failure to state a claim because it does not challenge a final agency action. Count III challenges "Defendants' policy of widespread SEVIS terminations based upon requested and specious visa revocations or a database hit" on the basis that it "represents a sudden and unexplained departure from prior policy and practice." Am. Compl. ¶ 85.

Much like Count I, in Count III, Plaintiffs fail to identify the purported "policy" they challenge, but instead fabricate a policy from their own perception of agency practice. *See Bark*, 37 F. Supp. 3d at 50. Count III does not identify any "agency rule, order, license, sanction, relief, or the equivalent" that forms the basis of a final agency action subject to judicial review under the APA. *See* 5 U.S.C. § 551(13). The alleged "policy" that Plaintiffs challenge (and which Plaintiffs agree has been superseded, Am. Compl. ¶ 44), is not "a definitive statement of the agency's

24

position with direct and immediate consequences." *Trafalgar Cap. Assocs., Inc. v. Cuomo*, 159 F.3d 21, 35 (1st Cir. 1998) (cleaned up).

DHS's management of the SEVIS database through temporary termination of records is not a final agency action because the changes did not mark the consummation of any decision-making process. *See Vill. of Bald Head Island v. U.S. Army Corps of Eng'rs*, 714 F.3d 186, 193 (4th Cir. 2013) ("action" under APA does not include, *e.g.,* constructing a building, operating a program, or performing a contract). Congress intended the SEVIS database to serve as "an electronic means to monitor and verify" certain information about nonimmigrant students, *see* 8 U.S.C. § 1372(c), and expressly instructed that ICE "*shall* use such information to carry out the enforcement functions of the agency." 6 U.S.C. § 252(a)(4) (emphasis added). As described by statute, enforcement via immigration proceedings provides notice, opportunity to be heard, and a final, appealable decision. *See* 8 U.S.C. §§ 1229a, 1252(a)(5), (b)(9); *see also* 8 C.F.R. § 1239.1. The conclusion of such enforcement proceedings with a final order by an immigration judge is a consummation of decisionmaking. Plaintiffs have not pled any facts or produced any evidence that this occurred. Rather, Plaintiffs purport to challenge a series of past, temporary changes to records within a DHS database under the guise that they form the basis of a "policy." But Plaintiffs' objections to the way DHS manages a database it was charged to administer by Congress is not a final agency action. Rather, it is the kind of "day-to-day agency management" that Courts are to avoid. *Norton v. Southern Utah Wilderness Alliance ("SUWA")* 542 U.S. 55, 67 (2004).

Second, legal consequences do not flow from the mere changing of a SEVIS record. Changing a SEVIS record from "active" to "terminated" does not terminate a student's nonimmigrant status or result in the revocation of a nonimmigrant visa. Ex. G, Baldwin Decl. ¶ 9. Rather, it is a record keeping action conducted under DHS's authority to collect information and

25

maintain records under 8 U.S.C. § 1372. *See Yunsong Zhao v. Virginia Polytechnic Inst. & State Univ.*, No. 7:18-cv-00189, 2018 WL 5018487, at *6 (W.D. Va. Oct. 16, 2018) (describing SEVIS record modification by school's DSO as "clerical duty performed as a preliminary matter"); *see also Yerrapareddypeddireddy v. Albence,* No. CV-20-01476-PHX-DWL, 2021 U.S. Dist. LEXIS 221212, at *22 (D. Ariz. Nov. 16, 2021) (similar as to ICE's termination of a SEVIS record). Accordingly, Count III does not assert a viable claim under the APA because the temporary change to student SEVIS records was not a final agency action.

**B.      The April 26, 2025, Broadcast Message is Unreviewable.**

Should Plaintiffs purport to challenge ICE's April 26, 2025 "SEVIS Notice – Policy Regarding Termination of Records," Ex. H ("the Broadcast Message"), it does not constitute a final agency action. *See Bennett*, 520 U.S. at 177-78.

The Broadcast Message serves as a guidance document, not a final agency action. *Whitewater Draw Nat. Res. Conservation Dist. v. Mayorkas*, 5 F.4th 997, 1008-09 (9th Cir. 2021) (no final agency action where "[m]anual describes how DHS will implement NEPA, but it does not prescribe any action in any particular matter."); *Ctr. for Auto Safety v. Nat'l Highway Traffic Safety Admin.*, 452 F.3d 798, 807 (D.C. Cir. 2006) ("policy guidelines do not reflect final agency action"); *Sierra Club v. EPA*, 955 F.3d 56, 63 (D.C. Cir. 2020) (agency guidance not final agency action where it "imposes no obligations, prohibitions or restrictions on regulated entities, does not subject them to new penalties or enforcement risks, [and] preserves the discretion of permitting authorities"). Allowing judicial review of such a document would "improperly intrude[] into the agency's decisionmaking process." *Reliable Automatic Sprinkler Co. v. Consumer Prod. Safety Comm'n*, 324 F.3d 726, 732 (D.C. Cir. 2003).

On its face, the Broadcast Message states that it is not "a rule or a final action by SEVP. It

is not intended to, does not, and may not be relied upon to create any right or benefit, substantive or procedural, enforceable at law by any party." Ex. H at 3. It is informational agency guidance surrounding Defendants' obligations and authority to maintain the SEVIS database and contains informational references to legal authority regarding maintenance of nonimmigrant status and visa revocations. *See generally id*. The document does not purport to bind the agency, universities, or students. *See S. California All. of Publicly Owned Treatment Works v. EPA*, 8 F.4th 831, 838 (9th Cir. 2021) (guidance document not a final agency action where, on its face, it clarified that it did "not bind anyone to anything"). Accordingly, any challenge to the Broadcast Message cannot form the basis for an APA claim because it is not a final agency action.

## V.   Count IV Fails to State a Claim Because the Broadcast Message is Not a Legislative Rule that Required Notice and Comment Rulemaking.

Plaintiffs allege in Count IV that the Broadcast Message is "a substantive rule that was required to go through notice-and-comment rulemaking" and that the failure to do so warrants vacatur of the policy. Am. Compl. ¶¶ 89, 92. Because the Broadcast Message falls within the statutory exception for "interpretative rules, general statements of policy, or rules of agency organization, procedure, or practice," 5 U.S.C. § 553(b)(A), notice and comment rulemaking was not required and Plaintiffs fail to state a claim.

"Rules issued through the notice-and-comment process are often referred to as 'legislative rules' because they have the 'force and effect of law.'" *Perez v. Mortg. Bankers Ass'n*, 575 U.S. 92, 96-97 (2015) (citations omitted). But "[n]ot all 'rules' must be issued through the notice-and-comment process." *Id.* Under the APA, notice-and-comment rulemaking is not required for "interpretative rules, general statements of policy, or rules of agency organization, procedure, or practice." *Id.*; *see also* 5 U. S. C. §553(b)(A). "Interpretive rules" are "'issued by an agency to advise the public of the agency's construction of the statutes and rules which it administers.'"

*Perez*, 575 U.S. at 97, quoting *Shalala v. Guernsey Memorial Hospital*, 514 U. S. 87, 99 (1995). Policy statements are non-binding statements of an agency's current enforcement or adjudicatory approach and do not interpret a legal norm. *Syncor Int'l Corp. v. Shalala*, 127 F.3d 90, 94 (D.C. Cir. 1997). Rules of agency organization, procedure, or practice, sometimes called procedural rules, pertain to agency actions that do not alter the rights or interests of parties, even though they may alter the manner in which the parties present themselves or their viewpoints to the agency. *James Hurson Assoc. v. Glickman*, 229 F.3d 277, 280 (D.C. Cir. 2000).

Here, the Broadcast Message falls squarely within the statutory exceptions of § 553(b)(A). First, the distribution of it and the disclaimers within it show that it is not a substantive rule. It was issued "to all SEVP personnel," and it explained that it was "not a substitute for applicable legal requirements, nor is it itself a rule or a final action by SEVP. It is not intended to, does not, and may not be relied upon to create any right or benefit, substantive or procedural, enforceable at law by any party in any administrative, civil, or criminal matter." Ex. H at 1-2. DHS further acknowledged that the two-page Broadcast Message may not answer all questions, stating that, "[f]or additional information about SEVIS record terminations, please contact the SEVP Response Center (SRC)[.]" *Id.* at 2.

Second, DHS's explanation of its authority shows that the policy is an "interstitial, minor, or confirmatory pronouncement[] guiding agency operation" and not a "new policy on a matter of some considerable import." *N.H. Hosp. Ass'n v. Azar,* 887 F.3d 62, 74 (1st Cir. 2018). In particular, rather than rely on its general rulemaking authority, DHS relied on 8 U.S.C. § 1372, the statute granting authority to create and conduct a program and database to track F, J, and M international students. *Id.* at 1. It explained that inherent to that statutory authority was the "ability to update and maintain the information in SEVIS and, as such, to terminate SEVIS records, as needed, to

28

carry out the purposes of the program." *Id.* at 1.

Third, the nature of SEVIS supports the conclusion that notice and comment rulemaking was not required because it is a law enforcement database and *tool* used by agencies to carry out their missions. SEVIS is not a method by which ICE adjudicates an alien's nonimmigrant status. The SEVIS Broadcast Message setting forth ICE's procedures regarding management of SEVIS records in certain circumstances, including setting those records to "terminated" is thus a pronouncement guiding agency operations and nothing more. *See J-E-M- Broadcasting v. F-C-C*, 22 F.3d 320, 322-23 (1994*)* (Commission's new "hard look" rules to summarily dismiss any flawed license application without allowing the applicant to correct its error were procedural rules); *James Hurson Assocs.*, 229 F.3d at 281 (elimination of face-to-face label review was procedural because it did not alter the substantive criteria for approving or denying labels)**.**

## VI.    Count V Fails To State a Claim Because It Does Not Challenge a Final Agency Action.

Plaintiffs' fifth cause of action fails to assert a viable claim under the APA because it is not a final agency action. Am. Compl. ¶¶ 93-98. Plaintiffs assert that the State Department implemented a policy of issuing "intimidating" letters to international students whose visas were revoked, warning of the revocation and potential consequences. *Id.* ¶ 95. This claim fails for a number of reasons. First, as with Count I, Plaintiffs claim must be dismissed because they fail to identify any actual policy that they challenge. The State Department's regulations state that aliens should be notified of visa revocations where practicable, 22 C.F.R. 42.122(c), but Plaintiffs do not claim to be challenging this regulation. Second, to the extent Plaintiffs challenge the visa revocation notices themselves, those are not final agency actions. The final agency action is the visa revocation, which as explained is not reviewable under 8 U.S.C. § 1201(i) or the APA. Third, Plaintiffs do not identify anything incorrect about the letters which indicate that fines, detention,

29

and/or deportation *can* result from remaining in the United States without lawful immigration status, that deportation to a country other than the student's country of origin *may* occur, and that a student whose visa was revoked *may* wish to demonstrate their intent to depart the United States. Moreover, they do not create direct and appreciable legal consequences. *See Roe v. Mayorkas*, No. 22-cv-10808, 2023 WL 3466327 at *15 (D. Mass. 2023); *Beshir v. Holder*, 10 F. Supp. 3d 165, 180 (D.D.C 2014). Because the revocation notices are "purely advisory and in no way affected the legal rights of the relevant actors" they are not final agency actions and cannot be challenged under the APA. *Bennett,* 520 U.S. at 178; *see Nat'l Educ. Ass'n et al. v. U.S. Dep't of Educ. et al.*, 25-cv-091-LM, 2025 WL 1188160 (D. N.H. Apr. 24, 2025) ("an agency's action will be considered final if, looking to the practical effects, it appears on its face to be binding or if it is applied by the agency in a way that indicates it is binding") (internal quotations omitted).

Thus, Plaintiffs fail to assert a viable claim under the APA because the State Department's practice of issuing revocation letters "if practicable," (22 C.F.R. § 41.122(c)), to international students whose visas were revoked, is not a final agency action.

## CONCLUSION

Wherefore, the Defendants request that this Court dismiss the Complaint in its entirety, without leave to amend, because any such amendment would be futile.

Respectfully submitted,

BRETT A. SHUMATE
Assistant Attorney General

ALESSANDRA FASO
Acting Assistant Director

By: */s/ Alexandra McTague*
ALEXANDRA MCTAGUE
NY Bar No. 4342911
Senior Litigation Counsel
United States Department of Justice

30

Civil Division
Office of Immigration Litigation
P.O. Box 868, Ben Franklin Station
Washington, DC 20044
Phone: (202) 718-0483
Fax: (202) 305-7000
e-mail: alexandra.mctague2@usdoj.gov
*Attorneys for Defendants*

## CERTIFICATE OF SERVICE

I hereby certify that on August 15, 2025, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system, which will provide electronic notice and an electronic link to this document to all attorneys of record.

By:  */s/ Alexandra McTague*
ALEXANDRA MCTAGUE
Senior Litigation Counsel
United States Department of Justice
Civil Division

31