UNITED STATES DISTRICT COURT

DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| PRESIDENTS' ALLIANCE ON HIGHER EDUCATION AND IMMIGRATION and ASSOCIATION OF INDEPENDENT COLLEGES AND UNIVERSITIES IN MASSACHUSETTS,<br><br>    Plaintiffs,<br><br>    v.<br><br>MARKWAYNE MULLIN, in his official capacity as Secretary of Homeland Security[1]; TODD LYONS, in his official capacity as Acting Director of U.S. Immigration and Customs Enforcement; the DEPARTMENT OF HOMELAND SECURITY; MARCO RUBIO, in his official capacity as Secretary as Secretary of State; and the DEPARTMENT OF STATE,<br><br><br>    Defendants. | Civil Action No. 25-11109-PBS |

**DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION FOR LEAVE TO CONDUCT LIMITED DISCOVERY TO COMPLETE AND SUPPLEMENT THE CERTIFIED ADMINISTRATIVE RECORD AND MOTION TO ACCEPT ADDITIONAL RECORDS**

In this action, Plaintiff seeks judicial review under the Administrative Procedure Act

("APA").  The Court previously adopted the parties' Joint Statement that set forth a scheduling

---

[1] Secretary of Homeland Security Markwayne Mullin is automatically substituted for the former officeholder, Kristi Noem, Fed. R. Civ. P. 25(d).

plan that included potential discovery after Defendants filed the administrative record. APA review, however, involves neither discovery nor trial. *Atieh v. Riordan*, 727 F.3d 73, 76 (1st Cir. 2013). A court reviewing agency action "shall . . . hold unlawful and set aside agency action, findings, and conclusions found to be . . . arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with the law . . . ." 5 U.S.C. § 706(2)(A). Courts consider the "whole record," 5 U.S.C. § 706, which usually means "the administrative record already in existence, not some new record made initially in the reviewing court." *Camp v. Pitts*, 411 U.S. 138, 142 (1973). *See* Doc. No. 9. Defendant Department of State (DOS) submitted a certified administrative record, pertaining to DOS' case-by-case review process for possible or proposed visa revocations, to Plaintiffs as Attorneys' Eyes Only, and Plaintiffs have since filed an administrative record under seal with their motion for the Court's review. Plaintiffs now seek to supplement the administrative record with limited discovery.[2] Importantly, Plaintiffs' motion fails to outline with any specificity the materials they expected to see in the administrative record. Therefore, Plaintiffs have not met their burden to provide "clear evidence" that the administrative record lacks information that was actually generated or considered by the agency. *Can Softtech, Inc. v. United States*, 181 Fed. Cl. 406 (2026).

## LEGAL STANDARD

---

[2] Both agencies maintain that there are no such policies as alleged by Plaintiffs, and State's submission of an administrative record, or any supplemental record, pertaining to DOS' case-by-case review process for possible or proposed visa revocations is not a concession.

The "Supreme Court has consistently stated that review of administrative decisions is 'ordinarily limited to consideration of the decision of the agency . . . and of the evidence on which it was based,' and that 'no de novo proceeding may be held.'"  *Olsen v. United States*, 414 F.3d 144, 155 (1st Cir. 2005) (quoting *United States v. Carlo Bianchi & Co.*, 373 U.S. 709, 714-15 (1963)).

Accordingly, the "focal point for judicial review should be the administrative record already in existence, not some new record made initially in the reviewing court."  *Id*. (quoting *Camp v. Pitts*, 411 U.S. 138, 142 (1973)); *see also Dep't of Com. v. New York,* 588 U.S. 752, 755, 139 S. Ct. 2551, 2556, 204 L. Ed. 2d 978 (2019) ("[I]n reviewing agency action, a court is ordinarily limited to evaluating the agency's contemporaneous explanation in light of the existing administrative record."); *Hill Dermaceuticals, Inc. v. Food & Drug Admin.,* 709 F.3d 44, 47 (D.C. Cir. 2013) ("It is black-letter administrative law that in an APA case, a reviewing court 'should have before it neither more nor less information than did the agency when it made its decision.'")  Indeed, extra-record discovery is an "unusual step."  *New York*, 139 S.Ct. at 2564.

Where, as here, an agency files an administrative record, the Court is to review that record with limited exception.  "This requirement that federal courts base their review solely on the administrative record" also "serves to limit the courts to their proper role."  *Harvard Pilgrim Health Care of New England v. Thompson*, 318 F. Supp. 2d 1, 9 (D.R.I. 2004) (citing *Bradley v. Weinberger*, 483 F.2d 410, 414 (1st Cir. 1973)).  "Reviewing courts are to determine whether an agency's action was arbitrary or capricious in light of the information the agency confronted." *Id*.  "Limiting a district court's review to the administrative record reflects policies of fairness, orderly procedure, and competence. . ." *Id*.  "These policies give agencies an opportunity to

3

correct their own errors, afford parties and courts the benefit of the agency's expertise, allow for the compilation of an adequate record for judicial review, and promote judicial efficiency." *Id*.

"Supplementing the administrative record on judicial review is therefore the exception, not the rule, and is discretionary with the reviewing court." *Town of Winthrop v. F.A.A.*, 535 F.3d 1, 14 (1st Cir. 2008).  The First Circuit permits supplementation "where there is a 'strong showing of bad faith or improper behavior' by the agency." *Housatonic River Initiative v. United States Env't Prot. Agency*, 75 F.4th 248, 278 (1st Cir. 2023) (quoting *Town of Winthrop*, 535 F.3d at 14).  The First Circuit also allows supplementation "'to facilitate [the Court's] comprehension of the record or the agency's decision,' particularly when 'highly technical, environmental matters' are at issue or when the agency has 'fail[ed] to explain administrative action as to frustrate effective judicial review.'" *Id*. at 279 (quoting *City of Taunton v. EPA*, 895 F.3d 120, 127 (1st Cir. 2018)).[3]

However, the First Circuit has explained that supplementation of the administrative record is "the exception, not the rule, and is discretionary with the reviewing court." *Town of*

---

[3] "Although the First Circuit has acknowledged that other exceptions may exist, it has declined to recognize any." *Seafreeze Shoreside, Inc. v. U.S. Dep't of Interior*, No. 22-cv-11091-IT, 2023 WL 6218159, at *10 (D. Mass. Sept. 25, 2023).  For example, the First Circuit has noted, without explicitly adopting, that "the Ninth Circuit allows record supplementation 'when necessary to determine whether the agency considered all relevant factors in making its decision' or 'when the agency has relied on extra-record materials.'" *Housatonic River Initiative*, 75 F.4th at 279 (quoting *Ruskai v. Pistole*, 775 F.3d 61, 66 (1st Cir. 2014)).

*Winthrop*, 535 F.3d at 14.  Exceptions to the rule against supplementation "are narrowly construed and the party requesting discovery bears a heavy burden of showing that it is necessary to supplement the administrative record." *Roman v. Riordan,* No. CV 15-40061-TSH, 2016 WL 234803, at *2 (D. Mass. Jan. 20, 2016) (quoting *Harvard Pilgrim Health Care of New England v. Thompson*, 318 F. Supp. 2d 1, 9 (D.R.I. 2004)).  Therefore, if the Court finds the administrative record "inadequate for judicial review, 'the proper course, except in rare circumstances, is to remand to the agency for additional investigation or explanation.'" *Olsen v. United States*, 414 F.3d 144, 155 (quoting *Fla. Power & Light Co. v. Lorion*, 470 U.S. 729, 744 (1985)).

## ARGUMENT

I.      **There is no "SEVIS Termination" policy, as is alleged by Plaintiffs in the First Amended Complaint. DHS/ICE cannot produce an Administrative Record on a policy that does not exist.**

DHS cannot produce an Administrative Record for an alleged "policy" that does not actually exist. In the First Amended Complaint, Plaintiffs challenge an alleged "SEVIS Termination Policy," whereby ICE terminates SEVIS records of international students whose names appeared in the NCIC database. See Amend. Compl. at 15. There is no such policy. *See* Declaration of Akil Baldwin at ¶ 11.  The Student Criminal Alien Initiative (SCAI) was a law enforcement initiative that ICE executed, consistent with its law enforcement authorities under the Immigration and Nationality Act (INA). *Id*.  As the attached declaration details, the actions taken under the SCAI were operational steps taken in response to specific data, rather than the product of a formal rulemaking process or a centrally codified substantive policy, to further ICE's immigration enforcement mission.

The fact of the nonexistence of the Plaintiff's alleged "SEVIS Termination Policy" is further demonstrated by the actions taken by ICE after the SCAI. ICE re-activated the SEVIS records of almost all of the students whose records were terminated pursuant to the SCAI. These re-activations were retroactive to the date of the initial terminations, such that there is no gap or lapse in the affected SEVIS records. Although the event history will memorialize whatever modifications are made to the SEVIS account, the effect of this retroactive activation was as though the termination did not happen. If ICE developed a "SEVIS Termination Policy" as Plaintiffs allege, there would be no reason to re-activate the SEVIS records and place the students back in the exact position they were in prior to the initiative.

Additionally, ICE sent out letters to student visa holders affected by the SCAI to alert them to the fact that their record in SEVIS had been reactivated, retroactive to the date of initial termination, and stated, "the effect of this retroactive activation is as though the termination did not happen, and there are no 'gaps' or 'lapses' in your SEVIS record." Letter from the Student and Exchange Visitor Program to SCAI-Affected Student Visa Holders, (June 2, 2025). The letter also notes, "it is ICE's position that the SEVP termination of your SEVIS designation occurring during this time period will not, by itself, be used as a basis for denial of future immigration benefits or a determination that you did not maintain your nonimmigrant status during that period." *Id*. Again, it would be unnecessary to send such letters, assuring student visa holders that the termination of the SEVIS record in March/April 2025 should not adversely affect them moving forward. This clearly demonstrates that there was no ongoing plan, guidance, or "SEVIS Termination Policy" that was an outgrowth of the SCAI, as Plaintiffs claim.

Both DHS and DOS have defended litigation across the country, brought by individual student visa holders who are challenging the termination of their record in SEVIS, as well as the

revocation of their visas by the DOS. Administrative records have been provided in those cases because there are documents that demonstrate the events and considerations that led to those specific actions, i.e. the termination of the record in SEVIS. These organizational Plaintiffs are not challenging the termination of individual records in SEVIS, but rather, they are asserting that DHS and DOS have certain "SEVIS termination" and "Visa Revocation" policies, respectively. It is not possible to provide an administrative record in this case, where the "policy" at issue does not exist.  Declaration of Akil Baldwin at ¶ 12.

Ultimately, there is no administrative record for a policy that does not exist. *Id.*  Actions taken by the agency after the SCAI demonstrate that there is no such policy and all efforts have been made to place affected student visa holders back in the position they were in prior to the SCAI. As such, Plaintiffs cannot reasonably say that any ongoing policy of SEVIS Record Terminations exists.

II.     **The APA Forecloses Inclusion of Post-Decisional Documents in an Administrative Record.**

APA review "involves neither discovery nor trial." *Atieh*, 727 F.3d at 76. Accordingly, this Court's review must be strictly confined to the documents and materials that were before the agency at the time of its decision-making. *See Citizens to Pres. Overton Park, Inc. v. Volpe*, 401 U.S. 402, 420 (1971); *Camp*, 411 U.S. at 142. The purpose of confining judicial review to the contemporaneous administrative record is to prevent courts from utilizing new evidence to improperly transform the "arbitrary and capricious" standard of review into an effective *de novo* review. *Safeguard Base Operations, LLC v. United States*, 989 F.3d 1326, 1348 (Fed. Cir. 2021). Documents created after the agency's initial decision are improper for inclusion in an administrative record and fall outside the scope of this Court's permissible review. *See* 5 U.S.C.

§ 706(2) ("[T]he court shall review the whole record *or those parts of it cited by a party . . . .*") (emphasis added).

The integrity of APA review rests entirely on a "contemporaneous explanation" of the agency's reasoning at the moment the challenged action was taken. *See Saratoga Dev. Corp. v. United States*, 21 F.3d 445, 456 (D.C. Cir. 1994). Here, Plaintiffs attempt to compel discovery from DHS because of the existence of an April 26, 2025 Broadcast Message sent to SEVP personnel. *See* Plaintiffs' First Amend. Compl. ¶¶ 44–47 (ECF 14). However, this Broadcast Message was issued weeks after the challenged SEVIS terminations were already executed in March 2025. *See* Declaration of Akil Baldwin at ¶ 6, 10(c).  Inclusion of such post-decisional material fundamentally undermines the purpose of APA review by injecting evidence that was not available to, nor considered by, the agency when it made its operational decisions. The issuance of post-decisional guidance cannot retroactively transform a completed law enforcement operation into a formalized regulatory action. Nor does its existence imply that a formal, written policy was in place at the time the initial actions occurred.

Plaintiffs' presumption that other related, pre-decisional documents must exist simply because the Broadcast Message was sent is factually flawed. The challenged SEVIS terminations were law enforcement steps taken under SCAI.  *Id*. at ¶ 8.  That initiative was not reduced to a formal, written policy.  *Id*. at ¶ 11. Rather, SCAI was an independent law enforcement action executed in accordance with Defendants' statutory authorities under the INA.  *Id.*

Again, there was no formal policy implementing SCAI. *Id.*  There were no internal memoranda or policy guidance documents the agency utilized during the initial decision-making process. *Id*. at ¶ 12.  Because no such policy or substantive rule existed in the manner alleged by Plaintiffs, there is nothing to produce.

**III.    Alternatively, Department of State Agreed to Supplement Its Record and No Ruling on Discovery Should Issue at This Time.**

Both agencies maintain that there are no policies; however, in light of Plaintiffs' filing, DOS has determined that they need more time to supplement the administrative record. Supplementation is not a concession that a policy exists. It is the agencies' good faith effort to ensure that this Court has the information that it needs to determine the matter on summary judgment. As such, this Court should stay any decision on this matter until the agencies have had the opportunity to conduct a further review and, if necessary, supplement the record. DOS anticipates supplementing the administrative record by August 25, 2026. To allow the agencies this brief period of time to provide supplements, where applicable, does not deter from its current scheduling order. If anything, it will make the discovery process more efficient. Accordingly, Defendants request that the Court set a briefing schedule after August 25, 2026. In the alternative, the Court should order a meet and confer so that the parties can meaningfully discuss their respective requested discovery.

<div align="center">

**CONCLUSION**

</div>

This Court's review must be focused on the evidence in the record. The Court's review under the APA must focus on whether the agencies' decisions were arbitrary or capricious in light of the record. DHS cannot produce an Administrative Record for an alleged "policy" that does not actually exist. However, because DOS agrees to supplement the record it previously submitted, the Court need not issue a ruling on discovery at this time. The Court should permit briefing on the matter only after State supplements the record on August 25, 2026, so that the parties and the Court can review a full, complete and supplemented record. To do so would be to the benefit of judicial economy where the supplemental administrative record could allow the

parties to move forward with summary judgment on the supplemental record and obviate the

need for any further discovery or dramatically limit its scope.

For the foregoing reasons, the Court should deny Plaintiffs' motion to conduct limited

discovery to supplement the administrative record, or in the alternative, stay its decision on

Plaintiffs' motion until after the Department of State supplements the certified administrative

record by August 25, 2026, and, if necessary, the matter is fully briefed.

<div style="margin-left:50%">

Respectfully Submitted,
*/s/ August E. Flentje*
AUGUST FLENTJE
Deputy Director

Nancy N. Safavi
(TXBN #24042342)
Senior Trial Attorney
Office of Immigration Litigation
U.S. Department of Justice
P.O. Box 878 Ben Franklin Station
Washington DC 20044
Phone: (202) 514-9875
Nancy.Safavi@usdoj.gov

</div>

Dated: August 14, 2025                                        Counsel for Defendants

**CERTIFICATE OF SERVICE**

I, August E. Flentje, Deputy Director, hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF).

By:  */s/ August E. Flentje*
AUGUST FLENTJE
Deputy Director

Dated: August 14, 2025