# UNITED STATES DISTRICT COURT FOR THE
# DISTRICT OF MASSACHUSETTS

PRESIDENTS' ALLIANCE ON HIGHER
EDUCATION AND IMMIGRATION and
ASSOCIATION OF INDEPENDENT
COLLEGES AND UNIVERSITIES IN
MASSACHUSETTS,

        Plaintiffs,

v.

MARKWAYNE MULLIN, in his official
capacity as Secretary of Homeland Security[1];
DAVID J. VENTURELLA, in his official
capacity as Acting Director of U.S. Immigration
and Customs Enforcement; the DEPARTMENT
OF HOMELAND SECURITY; MARCO
RUBIO, in his official capacity as Secretary as
Secretary of State; and the DEPARTMENT OF
STATE,

        Defendants.

Civil Action No. 25-11109-PBS

## DECLARATION OF AKIL BALDWIN

I, Akil Baldwin, pursuant to 28 U.S.C. § 1746, declare under penalty of perjury as follows:

1.      I am the Special Agent in Charge for Homeland Security Investigations (HSI) in Maryland. Prior to that, I was the Acting Assistant Director and Deputy Assistant Director for the National Security Division (NSD) of Homeland Security Investigations (HSI). I also served as the Division Chief for the HSI Office of International Operations and as the HSI Attache in Hong Kong, Assistant Special Agent in Charge in New York, N.Y., and Assistant Attache in Brussels, Belgium.

2.      As the former Acting Assistant Director and Deputy Assistant Director within NSD, I

---

[1] Pursuant to Fed. R. Civ. P. Rule 25(d), Secretary Markwayne Mullin and Acting Director David J. Venturella are automatically substituted for former Secretary Kristi Noem and former Acting Director of ICE, Todd Lyons.

oversaw the National Security Division, to include Counter Threat Lead Development Unit (CTLD), as well as Student and Exchange Visitor Program (SEVP) functions in support of ICE efforts to identify, disrupt, and dismantle transnational criminal enterprises and terrorist organizations that threaten the security of the United States. These efforts encompass all investigations and aspects of terrorism, special interests involving state and non-state actors, human rights violators and war criminals, as well as compliance and oversight functions for over 6,900 academic institutions, 45,000 designated school officials, and approximately 1.3 million foreign students studying in the United States.

3.    SEVP was created in the wake of the September 11, 2001, terrorist attacks to provide integrity to the immigration system by collecting, maintaining, and analyzing information so only legitimate nonimmigrant students or exchange visitors can gain entry into the United States. Through a database housing information pertaining to schools and students, called the Student and Exchange Visitor Information System (SEVIS), SEVP manages and tracks nonimmigrants in the F, M, and J visa categories. SEVIS is a law enforcement database.

4.    CTLD, a component of HSI's NSD, is specifically responsible for analyzing information related to nonimmigrant visa holders, who are lawfully admitted to the United States but violate the terms of their admission, pose a threat to national security or public safety, or are involved in criminal activity, and referring them to the field for further investigation. CTLD receives over one million potential alien violator records each year, primarily from U.S. Customs and Border Protection (CBP) Arrival and Departure Information System (ADIS), as well as from SEVIS.

5.    I am generally aware of litigation stemming from HSI's March 2025 Student Criminal Alien Initiative (SCAI). I am also aware of the subsequent SEVP Broadcast Message that was disseminated on April 26, 2025, to all SEVP Personnel. I provide this declaration based on my

personal knowledge, reasonable inquiry, and information obtained from various records, systems, databases, other U.S. Department of Homeland Security (DHS) and ICE employees, and information portals maintained and relied upon by DHS in the regular course of business.

6.      In March of 2025, HSI initiated the SCAI. Under the initiative, HSI searched the National Crime Information Center (NCIC) to determine whether any nonimmigrant students had criminal records.

7.      HSI referred the records to the Department of State to take action as it deemed appropriate. In response, the Department of State revoked some nonimmigrant student visas with an NCIC record.

8.      The Department of State requested that HSI terminate the SEVIS records of any nonimmigrant student whose visa was not valid. HSI SEVP terminated the SEVIS records of each nonimmigrant student with a record in NCIC.

9.      Terminating a record in SEVIS does not terminate an alien's nonimmigrant status in the United States. Under the SCAI, SEVP did not terminate the nonimmigrant status of any alien by terminating their SEVIS record. Furthermore, the authority to issue or revoke visas for nonimmigrant students lies with the Department of State, not SEVP. Terminating a record within SEVIS does not effectuate a visa revocation.

10.     Following SCAI, HSI took numerous steps, including:

   a.   In late April 2025, SEVP set back to "active" the SEVIS records terminated as part of the SCAI.

   b.   The reactivation of those SEVIS records terminated under the SCAI was retroactive to the date of the initial terminations, such that there is no gap or lapse in the affected SEVIS records. Although the event history will memorialize whatever modifications

are made to the SEVIS account, the effect of this retroactive activation was as though the termination did not happen.

c. On April 26, 2025, SEVP sent out a Broadcast Message to all SEVP personnel concerning the management and termination of SEVIS records. Attached to this declaration is a true and correct copy of that message.

d. In numerous stipulations of dismissals and declarations filed in federal litigation, ICE stated that it will not re-terminate SEVIS records based solely on the NCIC record that led to the initial termination or solely on any related visa revocation that is effective upon departure. However, ICE maintains the authority to terminate a SEVIS record for other reasons, such as if a student fails to maintain his or her nonimmigrant status after the record is reactivated or engages in other unlawful activity.

e. Throughout mid-May and early June of 2025, for each alien who had a SEVIS record impacted by SCAI and whose visa was expired or revoked by the Department of State effective upon departure from the United States, SEVP mailed a letter indicating that the alien's SEVIS record was reset to "active," and that this activation is automatically retroactive to the date of termination. Additionally, the letter states that it is ICE's position that the SEVP termination of SEVIS records during the time period of SCAI will not, by itself, be used as a basis for denial of future immigration benefits or a determination that one did not maintain his or her nonimmigrant status during that time period.

11. I attest that there is no overarching, formal, or written policy, regulation, or established agency directive that exists which corresponds to the broad, unified "policy" alleged by the Plaintiffs. SCAI was a law enforcement initiative that ICE executed consistent with its law

enforcement authorities under the Immigration and Nationality Act. The actions taken under the SCAI were operational in nature and meant to further ICE's immigration enforcement mission.

12.     Consequently, because SCAI was a law enforcement initiative and not based on a formal policy or substantive rule, it is impossible to compile an administrative record that would reflect the development, deliberation, or formal adoption of such a policy. There are no records, memoranda, or policy guidance documents pertaining to the creation or implementation of an agency-wide policy as alleged, because no such policy was created.

I declare under penalty of perjury that the foregoing is true and correct. Executed this __14__ day of August 2026.

AKIL R BALDWIN
Digitally signed by AKIL R BALDWIN
Date: 2026.08.14 16:13:41 -04'00'

Akil Baldwin
Homeland Security Investigations
U.S. Immigration and Customs Enforcement U.S.
Department of Homeland Security

**FOUO – FOR INTERNAL SEVP USE ONLY**

**Broadcast Message:** SEVIS Notice – Policy Regarding Termination of Records

**To:** All SEVP Personnel

**Date:** April 26, 2025

---

**General Information**

The Student and Exchange Visitor Program (SEVP) manages and tracks nonimmigrants in the F, M, and J categories. To eliminate vulnerabilities related to the nonimmigrant visa program, Congress provided broad statutory authority under 8 U.S.C. § 1372 for the Government "to develop and conduct a program to collect" information regarding nonimmigrant students and exchange visitors and to "establish an electronic means to monitor and verify" certain related information, which is the system referred to as the Student and Exchange Visitor Information System (SEVIS). Inherent in that authority is SEVP's ability to update and maintain the information in SEVIS and, as such, to terminate SEVIS records, as needed, to carry out the purposes of the program.

A terminated record in SEVIS could indicate that the nonimmigrant no longer maintains F or M status. Designated school officials (DSOs) mostly terminate F-1/M-1 students and/or F-2/M-2 dependents who do not maintain their status. However, termination does not always result in an adverse impact on the student. DSOs and SEVP can terminate records for several normal, administrative reasons.

Additionally, SEVP can terminate records for a variety of reasons, including, but not limited to the following reasons:

- Exceeded Unemployment Time
- Failure to Comply with I-515A
- Failure to Repay the I-901 Fee Chargeback
- Failure to Report While on OPT
- No Show
- School Withdrawn
- Violation of Change of Status Requirements
- Change of Status Approved
- Evidence of a Failure to Comply with the Terms of Nonimmigrant Status Exists
- U.S. Department of State Visa Revocation (Effective Immediately)

**Failure to Comply with Terms of Nonimmigrant Status**

**FOUO – FOR INTERNAL SEVP USE ONLY**

FOUO – FOR INTERNAL SEVP USE ONLY

When SEVP has objective evidence that a nonimmigrant visa holder is no longer complying with the terms of their nonimmigrant status for any reason, then the SEVIS record may be terminated on that basis. Information should be entered into in SEVIS that identifies the failure to comply. In its discretion, ICE may conduct further investigation or initiate removal proceedings pursuant to INA § 237(a)(1)(C)(i) based on evidence that a nonimmigrant student is not complying with the terms of their nonimmigrant status.

**Visa Revocations**

Pursuant to INA § 221(i), the U.S. Department of State (State) may at any time, in its discretion, revoke an alien's visa. State can consider derogatory information provided by ICE and other U.S. law enforcement agencies in its assessment of whether visa revocation is appropriate for an alien. When State revokes an alien's visa with immediate effect, ICE should take steps to initiate removal proceedings.

If State revokes a nonimmigrant visa effective immediately, SEVP may terminate the nonimmigrant's SEVIS record based on the visa revocation with immediate effect, as such a revocation can serve as a basis of removability under INA § 237(a)(1)(B). SEVP should not, however, terminate a nonimmigrant's SEVIS record on this basis until it has confirmed that State has revoked the visa.

For additional information about SEVIS record terminations, please contact the SEVP Response Center (SRC) via phone at 703-603-3400 or 1-800-892-4829 or via email at SEVP@ice.dhs.gov. The SRC is open Monday through Friday, 8 a.m. to 6 p.m. ET, except for federal holidays.

**Disclaimer**

This Broadcast Message is not a substitute for applicable legal requirements, nor is it itself a rule or a final action by SEVP. It is not intended to, does not, and may not be relied upon to create any right or benefit, substantive or procedural, enforceable at law by any party in any administrative, civil, or criminal matter.

FOUO – FOR INTERNAL SEVP USE ONLY