**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MASSACHUSETTS**

PRESIDENTS' ALLIANCE ON HIGHER EDUCATION AND IMMIGRATION; and ASSOCIATION OF INDEPENDENT COLLEGES AND UNIVERSITIES IN MASSACHUSETTS

*Plaintiffs*,

v.

MARKWAYNE MULLIN, in his official capacity as Secretary of Homeland Security; DAVID VENTURELLA, in his official capacity as Acting Director of U.S. Immigration and Customs Enforcement; the DEPARTMENT OF HOMELAND SECURITY; MARCO RUBIO, in his official capacity as Secretary of State; and the DEPARTMENT OF STATE,

*Defendants*.

Case No. 25-cv-11109-PBS

**LEAVE TO FILE GRANTED ON AUGUST 25, 2026**

**PLAINTIFF'S REPLY MEMORANDUM IN SUPPORT OF THEIR MOTION FOR ADDITIONAL DISCOVERY TO COMPLETE AND SUPPLEMENT THE ADMINISTRATIVE RECORD**

Defendants ask this court to accept that five heavily redacted pages of documents from the Department of State ("DOS") and zero pages of documents from the Department of Homeland Security ("DHS") are the complete administrative record of a multi-agency initiative that terminated both the Student and Exchange Visitor Information System ("SEVIS") records of thousands of international students, and the nonimmigrant student visas of any such students with an active visa. It should not. The Department of State's supplemental Administrative Record served months late on August 25, 2026, (which consists largely of [redacted]

[redacted]) does nothing to cure the defects identified by Plaintiffs. The government cites no authority addressing the circumstances here beyond Administrative Procedure Act ("APA") generalizations. They do not rebut Plaintiffs' identification of key materials omitted from the current administrative record ("AR"). Nor do Defendants offer any meaningful response to Plaintiffs' allegations of bad faith. Rather than seeking deference, Defendants seek immunity from judicial review.

Rather than address Plaintiffs' request directly, the government incants in quasi-hypnotic fashion that the policy "does not exist." Defs. Opp. (Dkt. 82) at 5, 6, 7, 8, 9 ("Opp."). But repetition will not make it so, as this Court's conclusion that Plaintiffs identified "a specific DOS policy of revoking visas based on NCIC hits without any individualized inquiry," Dkt. 54 at 42, and "DHS's policy of terminating SEVIS records based on an NCIC hit and/or a visa revocation based on an NCIC hit," *id.* at 48, makes clear. But the (apparently conceded) absence of a considered decision-making process prior to implementing a policy does not make that policy any less of one. It just makes that policy an APA violation. At the very least, discovery is warranted to probe the existence and contours of the challenged policy. Nor can Defendants insist that the current record is sufficient. Indeed, they implicitly concede this point, as DOS has produced more documents for its AR.[1] (DHS still has not produced a single page.) Additionally, Defendants' bad

---

[1] DOS's supplementation does not moot Plaintiff's motion. If DOS believed that these documents "ensure that this Court has the information that it needs to determine the matter on summary judgment," Opp. at 9, then such documents clearly should have been produced in the initial AR. Having failed to include them in the first instance, DOS initial AR is plainly deficient. The supplemented AR remains deficient because it is so redacted as to preclude meaningful judicial review. [redacted], Defendants have not

faith and improper conduct—which stand unrebutted—warrant supplementation. Plaintiffs' motion for additional discovery should therefore be granted.

## I. Additional Discovery is Required to Determine the Existence and Extent of the Challenged Policy

An agency cannot defeat APA review simply by denying that the challenged action exists. Defendants' repeated insistence that there is no policy crumbles under scrutiny. The existence of a policy is demonstrated by Defendants' own actions and the paltry AR they have already produced. The Court should at least permit targeted discovery to test the government's assertions regarding the existence or contours of the challenged policy.

### *A. Defendants' Claim That There Is No Policy Fails On Its Face*

Defendants' arguments are self-defeating. The Court has already found it can "plausibly infer the existence of such a [SEVIS termination] policy at this stage from the allegation that ICE terminated the SEVIS records of thousands of F-1 students with NCIC hits after DOS revoked their visas." Dkt. 54 at 48. Defendants do not challenge that this mass termination occurred. Yet, the government now asks the Court to disregard that inference and accept, on Defendants' word alone, that no policy exists. Indeed, where there is a volume and pattern of agency action consistent with a policy, courts reject agencies' no-policy claims. *See, e.g.*, *Aracely, R. v. Nielsen*, 319 F.Supp.3d 110, 148 (D.D.C. July 3, 2018) (finding an ICE official's "self-serving declaration is not sufficient to discredit Plaintiffs' substantial volume of evidence indicating the existence" of the challenged ICE policy); *R.I.L.-R v. Johnson*, 80 F.Supp.3d 164, 174-76 (D.D.C. Feb. 20, 2015) (noting "the recent surge in detention during a period of mass migration is not mere happenstance"

---

attempted to justify these redactions with a supplemental privilege log. The supplemental production also failed to include the types of documents identified in Plaintiffs' brief, such as the documents referenced in [redacted], documents elucidating the agencies' rationales behind the Initiative, or documents previously cited in parallel proceedings. Plaintiffs should be allowed limited discovery to rectify this deficiency.

and finding "ICE has a policy of taking deterrence of mass migration into account in making custody determinations, and that such consideration has played a significant role" in agency action).[2]

DHS's sweeping pattern of terminating SEVIS records also indicates the existence of a policy. Defendants baselessly argue that a policy cannot have existed because DHS later decided to reactivate SEVIS records. DHS's uniform termination of more than 3,000 students' SEVIS records in a matter of weeks is consistent with a common policy of terminating SEVIS records for students whose visas have been revoked by DOS. That DHS reversed or suspended the terminations does not erase this policy from history. Rather, DHS's course reversal is completely consistent with the existence of a policy that, once implemented, was the subject of a barrage of lawsuits. The Government's reliance on letters DHS sent to affected students is equally unavailing. That DHS needed to issue, en masse, uniform assurances after an equally sweeping action again suggests that the terminations were the result of a common agency policy that, once challenged, required a common agency remedy.

### *B. Plaintiffs Should Be Allowed Discovery to Determine the Existence and Scope of the SEVIS Termination Policy*

Far from barring discovery, Defendants insistence that no SEVIS termination policy exists is the reason discovery is warranted. The Court need not accept Defendants' *ipse dixit* regarding the existence of a policy and the government cannot avoid discovery simply by denying the existence of the challenged policy. If the government intends to make the existence and scope of a SEVIS termination policy a key issue in this case, "[i]n such situations, a court may depart from the default APA no-discovery rule." *American Fed'n of Lab. & Cong. of Indus. Orgs. v.*

---

[2] Defendants' attempt to relabel the challenged policy as a "law enforcement initiative" does not change its status as agency action reviewable under the APA. Defendants cite no law to the contrary. If the existence of a policy is at issue, discovery is warranted to resolve that question.

*Department of Lab.*, 349 F.R.D. 243, 248-49 (D.D.C. 2025) (granting discovery in APA challenge where defendant argued the challenged action was not a policy and "only relied on declarations taken *after* the alleged policies or decisions took effect"). A departure from the no-discovery rule is particularly warranted here, as the Government has produced no meaningful AR. Discovery is therefore "appropriate . . . to determine what the agency actually did." *Id.* at 249 (internal quotations omitted). Indeed, where the record "does not reveal 'whether [the] agency's challenged policy exists,'" that warrants that the Court "exercise its discretion to permit further discovery 'to ascertain the contours of the precise policy at issue.'" *Escobar Molina v. United States Dep't of Homeland Sec.*, 832 F.Supp.3d 22, 52 (D.D.C. 2026) (alteration in original); *see also Hispanic Affairs Project v. Acosta*, 901 F.3d 378, 388 (D.C. Cir. 2018) ("[T]he district court is free to exercise its discretion to permit further discovery to ascertain the contours of the precise policy at issue." (internal quotations omitted)).

## II. Additional Discovery is Warranted by the Incomplete and Deficient Record

Defendants' record is plainly deficient. DHS has produced nothing, hiding behind its excuse that there is no policy, and does not even contend that it attempted to search for materials. *See generally* Decl. of Akil Baldwin. The AR produced by DOS initially consisted of five heavily redacted pages that elucidate nothing and frustrate the Court's effective judicial review, and was supplemented by thousands of rows of heavily redacted spreadsheets. Defendants have entirely failed to engage with or justify these omissions beyond a baseless assertion that there was no policy. As such, additional discovery is required to effectively review the record and evaluate the challenged policy.

### *A. The AR Must be Completed*

The AR must be completed because it omits materials that were part of the decision-making process. [redacted]

[redacted] Defendants' supplementation consists entirely of [redacted] and heavily redacted [redacted]. On its face, the now-supplemented AR lacks any insight into the agencies' rationale or decision-making process. Maybe there was none—in which case the APA violation is evident. But unless the government intends to concede that point, the Court must be provided with sufficient information to evaluate what factors were or were not considered when Defendants undertook their Initiative and terminated thousands of student visas. *See Motor Vehicle Mfrs. Ass'n of the U.S., Inc. v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983). On this record, it cannot. Neither can the Court evaluate the privilege(s) asserted by Defendants to justify their heavy redactions of the five-page AR. [redacted] *See* Mot. 10 n.3.

Defendants' argument that the Broadcast Message is outside the scope of discovery because it was created post-decision is equally ill-made. The Broadcast Message reflects an ongoing policy that appears to authorize the prior actions taken by the government, despite the fact that it was never the subject of notice-and-comment rulemaking. Now the Government seeks to also exclude it from judicial review. The Broadcast Message may be appropriately considered part

of the AR. Plaintiffs have explicitly challenged ICE's Broadcast Message as the "Government's new policy for unilateral SEVIS terminations." Pls. Opp. to Defs. Mot. to Dismiss (Dkt. 32) at 9. The Broadcast Message—a document created during DHS and DOS's nationwide revocation of terminating student records that reflects the how ICE terminates SEVIS records—memorializes what guidance was before the agency, even if memorialized after revocations began. *See New York v. McMahon*, 826 F.Supp.3d 184, 198 (D. Mass. 2026) (allowing limited discovery related to "documents involve[ing] the mechanics of how the [agency action] will be implemented, after the policy of implementing the [agency action] had been decided.").

Even if the Broadcast Message is outside the scope of the AR, it is appropriate for the Court to review it. Because "there are no formal contemporaneous administrative findings" related to the SEVIS Termination Policy, "consideration of extra-record evidence may be the only way there can be effective judicial review." *Wagafe v. Biden*, 764 F.Supp.3d 980, 1006 (W.D. Wash. 2025) (internal quotations omitted). This Court has already noted "[t]he Broadcast Message thus seems to have mark[ed] the consummation of the agency's decisionmaking process." Dkt. 54 at 50. As such, the Broadcast Message is relevant to determine whether ICE "considered all relevant factors and adequately explained its decision" to terminate SEVIS records. *Wagafe,* 764 F.Supp.3d at 1006; *National Min. Ass'n v. Jackson*, 856 F.Supp.2d 150, 158 (D.D.C. 2012) (considering post-decision extra-record evidence because the administrative record "is entirely bare as to how [the agency] has applied [the policy].").

Likewise, Defendants' argument that administrative records for individual cases should not be included here because "Plaintiffs are not challenging the termination of individual records in SEVIS," Opp. at 7, is a meritless attempt to evade judicial review. Plaintiffs are challenging DHS's policy of terminating SEVIS records based on an NCIC hit. The AR therefore should appropriately

include "all materials that might have influenced the agency's decision." *Batalla Vidal v. Duke*, No. 16-cv-4756, 2017 WL 4737280, at *5 (E.D.N.Y. Oct. 19, 2017) (internal quotations omitted). That ICE produced documents in parallel litigation pertaining to individual student record revocations (e.g., inter-agency communications and NCIC data for F-1 students) evidences these documents exist and might have influenced ICE's decision to terminate SEVIS records. Plaintiffs, therefore, are entitled to those materials as part of the AR in this litigation.[3]

*B. The Circumstances Warrant Supplementation of the Record*

Defendants' bald insistence that supplementation is the "exception, not the rule," Opp. at 4, fails in the face of Plaintiffs' detailed assertions that the exception applies. Defendants concede that "the First Circuit permits supplementation 'where there is a strong showing of bad faith or improper behavior by the agency,'" *id.* (citing *Housatonic River Initiative v. EPA*, 75 F.4th 248, 278 (1st Cir. 2023)). Those circumstances are present here, warranting supplementation of the administrative record.

*First*, the record is so bare that it frustrates effective judicial review, Mot. 11-14. Such a scant production without, at minimum, documents from parallel proceedings, also indicates bad faith. *See* Mot. 15. The fact that DOS requested more time to supplement the record underscores the Government's bad faith. If DOS had identified documents that it needed to supplement the record, those documents should have been produced immediately. That it either did not attempt to find these documents until filing its opposition, or intentionally withheld these documents in the first instance, is improper. In light of Defendants' reticence to disclose relevant information, "a

---

[3] Notably, the Broadcast Message and individual administrative records are the only document that Defendants object to being included in the Administrative Record here. Defendants' opposition is silent as to Defendants' initial assessments, priorities, commentaries, draft SOPs, and "additional info" identified in Plaintiffs' Memorandum of Law. *See* Mot. at 6-7; *see generally* Opp. Plaintiffs maintain such documents are appropriately considered part of the AR, and should be the subject of discovery to complete the AR.

reviewing court cannot presume that the agency has acted properly." *Home Box Office, Inc. v. FCC*, 567 F.2d 9, 54 (D.C. Cir. 1977).

*Second*, Defendants' implementation of the challenged policy indicates improper behavior. Mot. 14-15. DOS revoked student visas en masse without individualized review, investigation, or explanation. DHS and ICE likewise terminated the SEVIS records of thousands of students without individualized analysis or explanation, then abruptly reversed course with no explanation. Although Defendants argue this about-face demonstrates a lack of policy, sweeping terminations and a sudden, unexplained shift is more evidence of a compromised decision-making process. Deviation from appropriate decision-making processes indicates improper behavior warranting supplementation of the record. *See Tummino v. Torti*, 603 F.Supp.2d 519, 543-44 (E.D.N.Y. 2009).

* * *

For the foregoing reasons and those in Plaintiffs' Memorandum of Law, Plaintiffs' respectfully request the Court grant Plaintiffs' Motion for Leave to Conduct Limited Discovery to Complete and Supplement the Administrative Record.

Respectfully submitted,

/s/ *George P. Varghese*

George P. Varghese (MA BBO # 706861)
Jacob Tuttle Newman (MA BBO # 712110)
Asma Jaber (MA BBO # 707322)
Charlotte Mostertz (MA BBO # 707537)
WILMER CUTLER PICKERING
HALE AND DORR LLP
60 State Street
Boston, MA 02109
Phone: (617) 526-6000
george.varghese@wilmerhale.com
jacob.tuttlenewman@wilmerhale.com

asma.jaber@wilmerhale.com
charlotte.mostertz@wilmerhale.com

Sirine Shebaya (D.C. Bar # 1019748)*
Khaled Alrabe (Cal. Bar # 349899)*
NATIONAL IMMIGRATION PROJECT
1763 Columbia Road NW
Suite 175 #896645
Washington, DC 20009
Phone: (617) 227-9727
Fax: (617) 227-5495
sirine@nipnlg.org
khaled@nipnlg.org

Kerry E. Doyle (MA BBO #565648)
Stephen J. Antwine (Pa. Bar # 309379)*
GREEN & SPIEGEL, LLC
1524 Delancey Street, Floor 4
Philadelphia, PA 19102
Phone: (215) 395-8959
Fax: (215) 330-5311
kdoyle@gands-us.com
santwine@gands-us.co

*Counsel for Plaintiffs Presidents' Alliance on Higher Education and Immigration and Association of Independent Colleges and Universities in Massachusetts*

David Zimmer (MA BBO #692715)
Julia Solomon-Strauss (MA BBO #718481)*
ZIMMER, CITRON & CLARKE LLP
711 Atlantic Avenue, 6th Floor
Boston, MA 02111
Phone: (617) 676-9421
dzimmer@zimmercitronclarke.com
julia@zimmercitronclarke.com

*Counsel for Plaintiff Presidents' Alliance on Higher Education and Immigration*

**Motion for admission pro hac vice granted*

Dated: September 2, 2026

**CERTIFICATE OF SERVICE**

I, George P. Varghese, certify that a copy of the foregoing document was served on all parties who have appeared through the Court's electronic docketing system.

Date: September 2, 2026 *<u>/s/ George P. Varghese</u>*