# EXHIBIT A

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| PRESIDENTS' ALLIANCE ON HIGHER EDUCATION AND IMMIGRATION; and ASSOCIATION OF INDEPENDENT COLLEGES AND UNIVERSITIES IN MASSACHUSETTS,<br><br>*Plaintiffs*,<br><br>v.<br><br>MARKWAYNE MULLIN, in his official capacity as Secretary of Homeland Security; DAVID VENTURELLA, in his official capacity as Acting Director of U.S. Immigration and Customs Enforcement; the DEPARTMENT OF HOMELAND SECURITY; MARCO RUBIO, in his official capacity as Secretary of State; and the DEPARTMENT OF STATE,<br><br>*Defendants*. | Case No. 25-cv-11109-PBS |

**NOTICE OF RULE 30(B)(6) DEPOSITION**
**OF DEFENDANT DEPARTMENT OF HOMELAND SECURITY**

PLEASE TAKE NOTICE that at a mutually agreeable time and location, Plaintiffs Presidents' Alliance on Higher Education and Association of Independent Colleges and Universities in Massachusetts, by and through their counsel, will take the deposition upon oral examination of Defendant Department of Homeland Security ("DHS"), by a person or persons designated by DHS, who consent(s) to testify on behalf of DHS, pursuant to Fed. R. Civ. P. 30(b)(6) and the Local Rules of the United States District Court for the District of Massachusetts, before a court reporter, notary public, or other person authorized by law to administer oaths. The oral examination will continue from day to day until completed. The deposition will be recorded

by stenographic and audiovisual means.

The matters of the deposition, of which the person(s) so designated to testify shall have knowledge, are set forth in Schedule A of Plaintiffs' notice dated September 23, 2026.

Plaintiffs request that Defendant Department of Homeland Security identify in writing at least one week in advance of the deposition the name(s) of the representative(s) who will testify on its behalf and the Topic(s) on which each representative will testify.

Respectfully submitted,

/s/ *George P. Varghese*
George P. Varghese (MA BBO #706861)
Jacob Tuttle Newman (MA BBO #712110)
Asma S. Jaber (MA BBO #707322)
Charlotte Mostertz (MA BBO #707537)
WILMER CUTLER PICKERING
HALE AND DORR LLP
60 State Street
Boston, MA 02109
Phone: (617) 526-6000
george.varghese@wilmerhale.com
jacob.tuttlenewman@wilmerhale.com
asma.jaber@wilmerhale.com
charlotte.mostertz@wilmerhale.com

Sirine Shebaya (D.C. Bar #1019748)*
Khaled Alrabe (Cal. Bar #349899)*
NATIONAL IMMIGRATION PROJECT
1763 Columbia Road NW
Suite 175 #896645
Washington, DC 20009
Phone: (617) 227-9727
Fax: (617) 227-5495
sirine@nipnlg.org
khaled@nipnlg.org

Kerry E. Doyle (MA BBO #565648)
Stephen J. Antwine (Pa. Bar #309379)*
GREEN & SPIEGEL, LLC
1524 Delancey Street, Floor 4
Philadelphia, PA 19102

Phone: (215) 395-8959
Fax: (215) 330-5311
kdoyle@gands-us.com
santwine@gands-us.co

*Counsel for Plaintiffs Presidents' Alliance on Higher Education and Immigration and Association of Independent Colleges and Universities in Massachusetts*

David Zimmer (MA BBO #692715)
Julia Solomon-Strauss (MA BBO #718481)*
ZIMMER, CITRON & CLARKE LLP
711 Atlantic Avenue, 6th Floor
Boston, MA 02111
Phone: (617) 676-9421
dzimmer@zimmercitronclarke.com
julia@zimmercitronclarke.com

*Counsel for Plaintiff Presidents' Alliance on Higher Education and Immigration*

**Motion for admission pro hac vice granted* 

Date: September 23, 2026

**CERTIFICATE OF SERVICE**

I hereby certify that on September 23, 2026, the foregoing document, entitled "NOTICE OF RULE 30(B)(6) DEPOSITION OF DEFENDANT DEPARTMENT OF HOMELAND SECURITY" was served in accordance with the Federal Rules of Civil Procedure and/or the Local Rules of the United States District Court for the District of Massachusetts upon the attorneys for the Plaintiff in the above-entitled action by electronic mail.

Date: September 23, 2026

/s/ *George P. Varghese*
George P. Varghese

## SCHEDULE A

The instructions, rules of construction, and definitions set forth in Rules 26, 30, and 45 of the Federal Rules of Civil Procedure and in Rule 26.5 of the Local Rules of the United States District Court for the District of Massachusetts are incorporated herein as if fully set forth.

## DEFINITIONS

Unless otherwise defined, all words and phrases herein shall be interpreted in their common, ordinary sense, as well as the meanings ascribed to them under the Federal Rules of Civil Procedure and the Local Rules of the United States District Court for the District of Massachusetts (Local Rule 26.5). Should You not understand the meaning of any term, it is requested that You immediately seek clarification through the undersigned. In addition, the following terms shall have the meanings set forth below whenever used in any Request for Production:

1. "Action" or "Litigation" means the above captioned civil action.

2. "Administrative Record" means the certified administrative record (including supplementation) produced by Defendant Department of State in this Action. *See* PresAll CAR 001–005; STATE Supplemental CAR 00001–00306.

3. The terms "and" and "or" are to be construed either disjunctively or conjunctively to acquire the broadest meaning possible, so as to bring within the scope of the Topic all information that might otherwise be construed to be outside its scope.

4. "Any," "each," and "all" shall be construed to mean both any and all.

5. "Broadcast Message" means the April 26, 2025 communication entitled "Policy Regarding Termination of Records" transmitted by ICE to SEVP personnel.

6. "Complaint" means the First Amended Complaint in the above captioned civil action, Dkt. 14.

7. "Communication" means any contact, oral or written, whereby information of any nature is transmitted or transferred by one or more persons and/or between two or more persons by means including, but not limited to, telephone conversations, letters, telegrams, email, text messages, social media posts, social media direct messages, other group or direct messages, written memoranda, face-to-face conversations, and persons seeing or hearing any information by any means and any document memorializing or referring to the contact.

8. "DOGE" means the Department of Government Efficiency and any office, component, personnel, contractors, detailees, representatives, or agents acting on its behalf.

9. "DHS" means the United States Department of Homeland Security.

10. "DOS" means the United States Department of State, together with all of its offices, bureaus, employees, officials, contractors, agents, and representatives.

11. "Document" or "Documents" is used in the broadest sense permissible under the applicable rules and orders and includes each and every written, recorded, or graphic matter of any kind, type, nature, or description that is or has been in Your possession, custody, or control, regardless of the medium on which they are produced, reproduced, or stored, including but not limited to, computer files, computer databases, computer printouts, correspondence, electronic mail, memoranda, tapes, stenographic or handwritten notes, written forms of any kind, drafts of Documents, exhibits, work papers, schedules, forms, audits, charts, plans, articles, specifications, diaries, letters, telegraphs, photographs, minutes, contracts, agreements, reports, surveys, data compilations of any kind, facsimiles, invoices, checks, statements, receipts, summaries, books, ledgers, and any recording or writing, as these terms are defined in Rule 1001 of the Federal Rules of Evidence. Any Document bearing marks, including initials, stamped initials, comments, or

notations not a part of the original text or photographic reproduction thereof, is a separate Document.

12. "AI" means any software, system, model, application, tool or service that uses machine learning, large language models, neural networks, or similar computational methods to create, synthesize, summarize, predict, recommend, translate, analyze, modify, or otherwise produce content, information, outputs, or responses based in whole or in part on data, instructions, training materials, or other inputs. The foregoing includes, without limitation, systems capable of generating or assisting in the generation of text, documents, spreadsheets, emails, reports, images, audio, video, computer code, analysis, summaries, recommendations, rankings, or decisions.

13. The terms "including," "includes," and "include" shall be construed to mean those terms, in each case, without limitation. Under no circumstance should the use of "including" in any Topic be construed to limit the scope of the Topic.

14. "ICE" means U.S. Immigration and Customs Enforcement, including all offices, divisions, programs, employees, contractors, agents, and representatives acting on its behalf.

15. "Letterhead Memoranda" or "LHM" means the eleven memoranda from ICE to DOS transmitting NCIC hit spreadsheets as produced by DOS in its Supplemental AR. *See* STATE Supplemental CAR 00001, 000021, 00053, 00079, 00129, 00179, 00226, 00266, 00295, 00301.

16. "NCIC" means the National Crime Information Center database maintained by the Federal Bureau of Investigation ("FBI").

17. "NCIC Hit(s)" means any result, match, flag, identification, notification, record, response, or other indication generated through an NCIC query.

18. "Policy" means any policy, procedure, practice, protocol, program, initiative, guidance, instruction, directive, criterion, standard, custom, course of conduct, decision-making framework, or rule, whether written, unwritten, formal, informal, operative, proposed, temporary, permanent, departmental, agency-wide, or otherwise.

19. "Refer," "Relate," "Regard," or "Concern" shall be construed to bring within the scope of the Topic all information that comprises, embodies, evidences, constitutes, describes, explicitly or implicitly refers to, was reviewed in conjunction with, or was generated as a result of the subject matter of the Topic, including, but not limited to, all information that reflects, memorializes, discusses, evaluates, considers, reviews, reports, or in any way logically or factually connects with the subject matter described in the paragraph of the Topic.

20. "SCAI" or "Student Criminal Alien Initiative" means the initiative undertaken by DHS, ICE, and/or DOS beginning in or about March 2025 that involved querying international students through NCIC and taking subsequent immigration-related actions, including visa revocations and/or SEVIS terminations.

21. "SEVIS" means the Student and Exchange Visitor Information System and any successor database, system, platform, recordkeeping system, or repository used to maintain information regarding international students and exchange visitors.

22. "SEVIS Record" means any record, file, entry, profile, notation, status designation, data field, information, or metadata maintained in SEVIS regarding a student or exchange visitor.

23. "SEVIS Terminations," "Terminations," or "Termination of SEVIS Records" means any action, decision, notation, process, instruction, or mechanism that results in the termination, deactivation, cancellation, or closure of a SEVIS record.

24. "SEVP" means the Student and Exchange Visitor Program and all of its offices, personnel, employees, contractors, agents, and representatives.

25. "Visa Revocation" means any revocation, cancellation, invalidation, withdrawal, suspension, termination, rescission, deactivation, or declaration that a visa is no longer valid, effective, or usable, including any action taken pursuant to SCAI.

26. "You," "Your," "Yours," and "Defendant(s)" each means and refers to Defendant Department of Homeland Security, inclusive of all its agents, as defined herein, collectively and individually.

27. The use of the singular form of any word includes the plural, and the use of the plural form of any word includes the singular.

28. Each gender of any word includes the other genders.

29. The use of any tense of any verb shall be considered to include within its meaning all of the tenses of the verb so used.

30. The use of any definition for the purposes of these Topics shall not be deemed to constitute an agreement or acknowledgement on the part of the Defendant that such definition is accurate, meaningful, or appropriate for any other purpose in this Litigation.

31. To the extent these Topics employ terms used in the Complaint, such use is without prejudice to the rights of Plaintiffs.

**TIME PERIOD**

Except where otherwise indicated, the relevant time period is from January 20, 2025, to the present.

## INSTRUCTIONS

1. Designees shall be prepared to testify fully on the following Topics, after conducting a diligent and thorough investigation into all information within Your possession, custody, or control, and educating the designees with such information as needed. If Your designees cannot provide full testimony of any Topic, You should so advise us immediately, specifying the portion of the Topic the designees are unable to answer and providing any information You have regarding the unanswered portion.

2. In the event You refuse to fully respond to a Topic on the basis of a claim of attorney-client privilege, You shall at least respond to that portion of the Topic that is unobjectionable and specifically identify that portion of the Topic that is allegedly protected by the attorney-client privilege.

3. In the event that You object to any Topic on the ground that it is overbroad and/or unduly burdensome for any reason, respond to that Topic as narrowed to the least extent necessary, in Your judgment, to render it not overbroad/unduly burdensome and state specifically the extent to which You have narrowed that Topic for purposes of Your response and the factual basis for Your conclusion.

4. Your designees shall bring to this deposition all documents reviewed, relied upon, or consulted in preparation for this deposition.

## TOPICS OF EXAMINATION

1. The conception, research, development, approval, implementation, and execution of SCAI, including, without limitation, the identification of all DHS personnel involved in such, and ICE's process for evaluating NCIC Hits of international students, including, without

limitation, any steps, guidance, training, and internal communications related to Your implementation of SCAI.

2. Your use of the NCIC database, including, without limitation, Your process of querying NCIC to identify individuals under SCAI, and how NCIC Hits were generated by and/or shared with You.

3. Your coordination with, and any direction to and/or from other governmental agencies, including DOS and DOGE, to implement SCAI, including, without limitation, the creation, content, approval, timing, and transmission of SEVIS NCIC Lists Alpha through Kilo to DOS, *see* STATE Supplemental CAR 00002-00008, 00022-00029, 00039-00051, 00054-00075, 00080-00124, 00130-00172, 00180-00217, 00227-00259, 00267-00290, 00296-00298, 00302-00304, and corresponding Letterhead Memoranda, as produced by DOS in its Supplemental AR, and any documents, communications, or discussions between You and DOGE.

4. Your use of AI in developing and implementing SCAI, including, without limitation, any prompts, data, or other input given to AI by You as part of SCAI, and any outputs generated by such systems.

5. Your process for terminating students' SEVIS Records in connection with SCAI, including, without limitation, identification of any person(s) with authority to terminate SEVIS Records, the "feeder" data sent to DOS, DHS's "priorities for DOS action," any "Additional info" provided to DOS, as reflected in the SOG Process Map, and what review preceded Termination of a SEVIS Record. *See* PresAll CAR 001.

6. Your basis for terminating students' SEVIS Records in connection with SCAI, including, without limitation, the statutory and regulatory provisions relied upon and the identity

of any person(s) who reviewed and approved Your position, including how Termination of a student's SEVIS Record affects the student's F-1 nonimmigrant status.

7. DHS's notification, or decision not to provide notification, to affected students and/or their designated school officials regarding SEVIS Terminations before or at the time of Termination, including, without limitation, any discussions, considerations, documents, Policies, or internal communications about notification of SEVIS terminations, and identification of any person(s) involved.

8. Your decision to reactivate SEVIS Records that had been terminated in connection with SCAI without reactivating F-1 visas, including, without limitation, any person(s) involved in that decision, when that decision was made, on what basis, the scope of reactivation, and documents generated during the decision-making process or as a result of the decision.

9. The Broadcast Message, including, without limitation, the development, drafting, review, approval, dissemination, and implementation thereof.

10. DHS's position as to whether SEVIS Records terminated under SCAI may be re-terminated.

11. Any successor, related, or similar initiative to SCAI that DHS has considered or undertaken.

12. The development, approval, and internal classification of SCAI, including how DHS categorizes SCAI within its organizational framework, the criteria DHS uses to distinguish among Policies, directives, guidance documents, and law enforcement initiatives, and how those criteria were applied to the SCAI.

13. Your efforts to identify, collect, and produce documents constituting DHS's Administrative Record in this Action, including, without limitation, DHS's decision not to produce

any documents as part of the Administrative Record, including, without limitation, any person(s) who made the decision not to produce any documents, and the timing of that decision.

14. The process, practices, procedures, and/or requirements that DHS follows to develop, implement, and enforce Policies.