# EXHIBIT D

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MASSACHUSETTS**

PRESIDENTS' ALLIANCE ON HIGHER EDUCATION and ASSOCIATION OF INDEPENDENT COLLEGES AND UNIVERSITIES IN MASSACHUSETTS,

*Plaintiffs,*

v.

MARKWAYNE MULLIN, in his official capacity as Secretary of Homeland Security1; TODD LYONS, in his official capacity as Acting Director of U.S. Immigration and Customs Enforcement; the DEPARTMENT OF HOMELAND SECURITY; MARCO RUBIO, in his official capacity as Secretary as Secretary of State; and the DEPARTMENT OF STATE,

*Defendants.*

Case No. 25-cv-11109-PBS

**PLAINTIFFS' FIRST SET OF INTERROGATORIES (NOS. 1–20)**

Pursuant to Rules 26 and 33 of the Federal Rules of Civil Procedure and applicable Local Rules, Plaintiffs, Presidents' Alliance on Higher Education and Association of Independent Colleges and Universities in Massachusetts, request that Defendants, Markwayne Mullin, Todd Lyons, the Department of Homeland Security, Marco Rubio, and the Department of State, serve written responses to this First Set of Interrogatories. Defendants shall answer within thirty (30) days of service of these Interrogatories. Defendants shall answer the following Interrogatories separately and fully in writing, under oath, and serve the answers at the offices of WilmerHale, 60 State St., Boston, MA 02109. To the extent that any of these Interrogatories may at any time be supplemented, changed, or otherwise affected by information acquired by Defendants subsequent

to the service of its answers, Plaintiffs direct Defendants to promptly serve supplemental answers reflecting such changes pursuant to Rule 26(e) of the Federal Rules of Civil Procedure.

## **DEFINITIONS**

Unless otherwise defined, all words and phrases herein shall be interpreted in their common, ordinary sense, as well as the meanings ascribed to them under the Federal Rules of Civil Procedure and the Local Rules of the United States District Court for the District of Massachusetts (Local Rule 26.5). Should You not understand the meaning of any term, it is requested that You immediately seek clarification through the undersigned. In addition, the following terms shall have the meanings set forth below whenever used in any Request for Production:

1. "Action" or "Litigation" means the above-captioned civil action.

2. "Administrative Record" means the certified administrative record (including supplementation) produced by Defendant Department of State in this Action. *See* PresAll CAR 001–005; STATE Supplemental CAR 00001–00306.

3. The terms "and" and "or" are to be construed either disjunctively or conjunctively to acquire the broadest meaning possible, so as to bring within the scope of the Interrogatory all information that might otherwise be construed to be outside its scope.

4. "Any," "each," and "all" shall be construed to mean both any and all.

5. "Broadcast Message" means the April 26, 2025, communication entitled "Policy Regarding Termination of Records" transmitted by ICE to SEVP personnel.

6. "Complaint" means the First Amended Complaint in the above-captioned Action, Dkt. 14.

7. "Communication" means any contact, oral or written, whereby information of any nature is transmitted or transferred by one or more persons and/or between two or more persons

by means including, without limitation, telephone conversations, letters, telegrams, email, text messages, social media posts, social media direct messages, other group or direct messages, written memoranda, face-to-face conversations, and persons seeing or hearing any information by any means and any document memorializing or referring to the contact.

8. "DHS" means the United States Department of Homeland Security.

9. "DOS" means the United States Department of State, together with all of its offices, bureaus, employees, officials, contractors, agents, and representatives.

10. "Document" or "Documents" is used in the broadest sense permissible under the applicable rules and orders and includes each and every written, recorded, or graphic matter of any kind, type, nature, or description that is or has been in Your possession, custody, or control, regardless of the medium on which they are produced, reproduced, or stored, including but not limited to, computer files, computer databases, computer printouts, correspondence, electronic mail, memoranda, tapes, stenographic or handwritten notes, written forms of any kind, drafts of Documents, exhibits, work papers, schedules, forms, audits, charts, plans, articles, specifications, diaries, letters, telegraphs, photographs, minutes, contracts, agreements, reports, surveys, data compilations of any kind, facsimiles, invoices, checks, statements, receipts, summaries, books, ledgers, and any recording or writing, as these terms are defined in Rule 1001 of the Federal Rules of Evidence. Any Document bearing marks, including initials, stamped initials, comments, or notations not a part of the original text or photographic reproduction thereof, is a separate Document.

11. The terms "including," "includes," and "include" shall be construed to mean those terms, in each case, without limitation. Under no circumstance should the use of "including" in any Interrogatory be construed to limit the scope of the Interrogatory.

12. "ICE" means U.S. Immigration and Customs Enforcement, including all offices, divisions, programs, employees, contractors, agents, and representatives acting on its behalf.

13. "NCIC" means the National Crime Information Center database maintained by the Federal Bureau of Investigation.

14. "NCIC Hit" or "NCIC Hits" means any result, match, flag, identification, notification, record, response, or other indication generated through an NCIC query.

15. "Policy" means any policy, procedure, practice, protocol, program, initiative, guidance, instruction, directive, criterion, standard, custom, course of conduct, decision-making framework, or rule, whether written, unwritten, formal, informal, operative, proposed, temporary, permanent, departmental, agency-wide, or otherwise.

16. "Refer," "Relate," "Regard," or "Concern" shall be construed to bring within the scope of the Interrogatory all information that comprises, embodies, evidences, constitutes, describes, explicitly or implicitly refers to, was reviewed in conjunction with, or was generated as a result of the subject matter of the Interrogatory, including, but not limited to, all information that reflects, memorializes, discusses, evaluates, considers, reviews, reports, or in any way logically or factually connects with the subject matter described in the paragraph of these Interrogatories.

17. "SCAI" or "Student Criminal Alien Initiative" means the initiative undertaken by DHS, ICE, and/or DOS beginning in or about March 2025 that involved querying international students through NCIC and taking subsequent immigration-related actions, including visa revocations and/or SEVIS Terminations.

18. "SEVIS" means the Student and Exchange Visitor Information System and any successor database, system, platform, recordkeeping system, or repository used to maintain information regarding international students and exchange visitors.

19. "SEVIS Record" means any record, file, entry, profile, notation, status designation, data field, information, or metadata maintained in SEVIS regarding an international student or exchange visitor.

20. "SEVIS Terminations," "Terminations," or "Termination of SEVIS Records" means any action, decision, notation, process, instruction, or mechanism that results in the termination, deactivation, cancellation, or closure of a SEVIS Record.

21. "SEVP" means the Student and Exchange Visitor Program and all of its offices, personnel, employees, contractors, agents, and representatives.

22. "Visa Revocation" means any revocation, cancellation, invalidation, withdrawal, suspension, termination, rescission, deactivation, or declaration that a visa is no longer valid, effective, or usable, including any action taken pursuant to the Student Criminal Alien Initiative.

23. "You," "Your," "Yours," and "Defendant(s)" each means and refers to Defendant Markwayne Mullin, Defendant Todd Lyons, Defendant Department of Homeland Security, Defendant Marco Rubio, and Defendant Department of State, as defined herein, collectively and individually.

24. The use of the singular form of any word includes the plural, and the use of the plural form of any word includes the singular.

25. Any use of any specific gender includes any and all other genders.

26. The use of any tense of any verb shall be considered to include within its meaning all of the tenses of the verb so used.

27. The use of any definition for the purposes of these Interrogatories shall not be deemed to constitute an agreement or acknowledgement on the part of the Defendant that such definition is accurate, meaningful, or appropriate for any other purpose in this Litigation.

28. To the extent these Interrogatories employ terms used in the Complaint, such use is without prejudice to the rights of Plaintiffs.

## INSTRUCTIONS

1. Each Interrogatory shall be responded to in accordance with the Instructions herein and all applicable rules and orders.

2. Each Interrogatory is to be read, construed, and responded to separately and independently without reference to, or being limited by, any other Interrogatory.

3. These Interrogatories should be construed to require responses based upon the knowledge of, and information available to, the responding party as well as its agents and representatives.

4. In answering these Interrogatories, if You claim any ambiguity in interpreting an Interrogatory, or any Definition or Instruction, that claim shall not be used as a basis for refusing to respond. Set forth, as part of Your response, the language You consider to be ambiguous and the interpretation chosen or used in responding to the Interrogatory.

5. In answering and responding to these Interrogatories, You shall furnish such information (including any information contained in any Document or Thing) that is known or available to You, or in Your possession, custody, or control, including all information that is in the actual or constructive possession, custody, or control of Your (subject to any otherwise applicable privileges) attorneys, accountants, representatives, consultants, agents, employees, or anyone else acting on Your behalf.

6. If You object to any part of an Interrogatory, identify the portion to which You object, set forth the basis for Your objection and respond to all parts of the Interrogatory to which You do not object.

7. If You cannot fully respond to an Interrogatory after exercising due diligence to secure the information requested thereby, so state, and specify the portion of each Interrogatory that cannot be responded to fully and completely, what efforts were made to obtain the requested information and the facts relied upon that support the contention that the Interrogatory cannot be answered fully and completely, and state what knowledge, information, or belief You have Concerning the unanswered portion of any such Interrogatory.

8. If a claim of privilege is asserted with respect to any Interrogatory, in whole or in part, or You refuse to answer any Interrogatory on any other ground, specify the exact basis for Your claim that such Interrogatory need not be answered, and do so with sufficient specificity to permit the Court to determine the validity of Your objection or position.

9. If You object to any Interrogatory on the grounds that it is overbroad or unduly burdensome for any reason, respond to that Interrogatory as narrowed to the least extent necessary, in Your judgment, to render it not overbroad/unduly burdensome and state specifically how You have narrowed that Interrogatory for purposes of Your response and the factual basis for Your conclusion.

10. Where an Interrogatory does not specifically request particular facts, but where such facts are necessary in order to make the answer to the Interrogatory comprehensible, complete, or not misleading, the Interrogatory shall be deemed specifically to request such facts and You are requested to include such facts as part of the answer.

11. If You elect to answer any Interrogatory pursuant to Federal Rule of Civil Procedure 33(d), identify by Bates number or range the particular Document(s) Relating to the specific Interrogatory.

12. To identify a Document or Documents in response to these Interrogatories means to give, to the extent known and applicable: (a) the type of Document; (b) the general subject matter; (c) the date of the Document; (d) the author or authors, according to the Document; (e) the persons to whom, according to the Document, the Document (or a copy) was to have been sent; and, if applicable, (f) the Bates number or range of the Document.

13. None of the Definitions or Interrogatories set forth above and below shall be construed as an admission Relating to the existence of evidence, to the relevance or admissibility of any evidence, or to the truth or accuracy of any statement or characterization in the Definition or Interrogatory.

14. Unless otherwise stated, the time frame for these Interrogatories is January 1, 2025, to present.

## INTERROGATORIES

**INTERROGATORY NO. 1**

Describe in detail the conception, development, and authorization of SCAI, including, but not limited to, when it was initiated and the objectives underlying the initiative. *See* Dkt. No. 14 ¶¶ 31–32.

**INTERROGATORY NO. 2**

Identity all personnel who participated in, directed, approved, reviewed, recommended, implemented, administered, or oversaw SCAI, including title, agency affiliation, and responsibilities for each individual identified. *See* Dkt. No. 14 ¶¶ 31–32.

**INTERROGATORY NO. 3**

Describe in detail all queries entered into NCIC to identify individuals under SCAI including, but not limited to, data sources used to create queries; how queries were performed

and by whom; and what categories of Hits were returned (including arrests without charges, victims, or witnesses). *See* Dkt. No. 14 ¶¶ 32–33.

**INTERROGATORY NO. 4**

Describe any safeguards or error-checking procedures used by DHS to validate that an individual in the NCIC database was an accurate match for an international student studying in the United States, or to prevent other erroneous actions. *See* Dkt. No. 14 ¶¶ 31–33.

**INTERROGATORY NO. 5**

Describe all criteria and processes used by DHS to determine which NCIC Hits would be acted upon for purposes of further enforcement action, including but not limited to, SEVIS Record Termination or referral to DOS. *See* Dkt. No. 14 ¶¶ 32–33, 38.

**INTERROGATORY NO. 6**

Describe the complete process used by DOS to review and revoke student visas based on NCIC Hits—including but not limited to—all steps, inputs, training, and internal communications beyond those reflected in DOS's Administrative Record, including any departure from prior Policy.

**INTERROGATORY NO. 7**

Describe in detail DOS's "initial assessment of action" step identified in its Process Map in the Administrative Record. *See* PresAll CAR 001.

**INTERROGATORY NO. 8**

Describe all meetings between DOS and DHS in which DHS provided "priorities for DOS action," beyond those included in the Administrative Record, including the topics covered in those meetings, the date of those meetings, the medium of those meetings (i.e., telephone, videoconference, in-person), and who participated.

**INTERROGATORY NO. 9**

Describe the process reflected in the "SOP" for Handling Cases Under Review, *see* PresAll CAR 002–004, including, but not limited to, how analysts proposed Visa Revocation decisions and what criteria or reasoning were applied.

**INTERROGATORY NO. 10**

Describe the decision-making process used by DHS officials to Terminate SEVIS Records, including all materials, Documents, procedures, guidance, Communications, training, and relied upon or considered by DHS in deciding to terminate SEVIS Records including any departure from prior Policy. *See* Dkt. No. 14 ¶¶ 39–41.

**INTERROGATORY NO. 11**

State in detail all facts supporting DHS's contention that "there are no such policies as alleged by Plaintiffs", including, but not limited to, identification of any Documents, Communications, or decision-making processes that DHS contends reflect individualized or non-Policy-based actions. Dkt. No. 82 at 2.

**INTERROGATORY NO. 12**

State in detail all facts supporting DOS's contention that "there are no such policies as alleged by Plaintiffs", including, but not limited to, identification of any Documents, Communications, or decision-making processes that DOS contends reflect individualized or non-Policy-based actions. Dkt. No. 82 at 2.

**INTERROGATORY NO. 13**

Describe the relationship and coordination between DOS Visa Revocations and DHS SEVIS Terminations. *See* Dkt. No. 14 ¶¶ 38–43; Dkt. No. 54 at 2–3.

**INTERROGATORY NO. 14**

Describe the reasons DHS decided to reverse or suspend SEVIS Terminations connected to SCAI.

**INTERROGATORY NO. 15**

Describe in detail the development, drafting, approval, distribution, and implementation of the Broadcast Message, including, but not limited to, all individuals involved in drafting, reviewing, or approving the Broadcast Message; the process by which the Broadcast Message was created and disseminated to SEVP personnel; whether the Broadcast Message was intended to establish, modify, codify, or reflect any Policy concerning SEVIS Terminations, including Terminations based on Visa Revocations; and how the Broadcast Message has been implemented and applied by DHS personnel. *See* Dkt. No. 14 ¶¶ 45–47; Dkt. No. 54 at 50–52.

**INTERROGATORY NO. 16**

Describe how DOS determined that a result of criminal charges in the NCIC database formed a valid basis for a Visa Revocation.

**INTERROGATORY NO. 17**

Describe how DHS determined that a result of criminal charges in the NCIC database formed a valid basis for a SEVIS Record Termination.

**INTERROGATORY NO. 18**

State whether the revocation of visas based on NCIC Hits remains in effect in any form and identify which agency maintains or enforces them.

**INTERROGATORY NO. 19**

State whether any SEVIS Record Terminations based on an NCIC Hit remains in effect in any form and identify which agency maintains or enforces them.

**INTERROGATORY NO. 20**

Describe the reasons DOS determined that it would not restore or reinstate the visas it revoked pursuant to SCAI, including any materials relied on or considered by DOS in coming to its determination.

DATED: September 23, 2026

Respectfully submitted,

/s/ *George P. Varghese*
George P. Varghese (MA BBO #706861)
Jacob Tuttle Newman (MA BBO #712110)
Asma Jaber (MA BBO #707322)
Charlotte Mostertz (MA BBO #707537)
WILMER CUTLER PICKERING
HALE AND DORR LLP
60 State Street
Boston, MA 02109
Phone: (617) 526-6000
george.varghese@wilmerhale.com
jacob.tuttlenewman@wilmerhale.com
asma.jaber@wilmerhale.com
charlotte.mostertz@wilmerhale.com

Sirine Shebaya (D.C. Bar #1019748)*
Khaled Alrabe (Cal. Bar #349899)*
NATIONAL IMMIGRATION PROJECT
1763 Columbia Road NW
Suite 175 #896645
Washington, DC 20009
Phone: (617) 227-9727
Fax: (617) 227-5495
sirine@nipnlg.org
khaled@nipnlg.org

Kerry E. Doyle (MA BBO #565648)
Stephen J. Antwine (Pa. Bar #309379)*
GREEN & SPIEGEL, LLC
1524 Delancey Street, Floor 4
Philadelphia, PA 19102
Phone: (215) 395-8959
Fax: (215) 330-5311
kdoyle@gands-us.com
santwine@gands-us.co

*Counsel for Plaintiffs Presidents' Alliance on Higher Education and Immigration and Association of Independent Colleges and Universities in Massachusetts*

David Zimmer (MA BBO #692715)
Julia Solomon-Strauss (MA BBO #718481)*
ZIMMER, CITRON & CLARKE LLP
711 Atlantic Avenue, 6th Floor
Boston, MA 02111
Phone: (617) 676-9421
dzimmer@zimmercitronclarke.com
julia@zimmercitronclarke.com

*Counsel for Plaintiff Presidents' Alliance on Higher Education and Immigration*

**Motion for admission pro hac vice granted*