**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| PRESIDENTS' ALLIANCE ON HIGHER EDUCATION AND IMMIGRATION; and ASSOCIATION OF INDEPENDENT COLLEGES AND UNIVERSITIES IN MASSACHUSETTS<br><br>*Plaintiffs*,<br><br>v.<br><br>MARKWAYNE MULLIN, in his official capacity as Secretary of Homeland Security; DAVID VENTURELLA, in his official capacity as Acting Director of U.S. Immigration and Customs Enforcement; the DEPARTMENT OF HOMELAND SECURITY; MARCO RUBIO, in his official capacity as Secretary of State; and the DEPARTMENT OF STATE,<br><br>*Defendants*. | Case No. 25-cv-11109-PBS |

**<u>STATUS REPORT REGARDING DISCOVERY</u>**

Pursuant to the Court's September 18, 2026 order Defendants provide their positions on Plaintiffs' numerous and overbroad discovery requests. Defendants reiterate that the September 18, 2026 hearing was the first time Plaintiffs provided notice of what type of discovery they sought. Moreover, Defendants never had the benefit of reviewing the discovery requests before the Court. At the bare minimum, Defendants should receive the full thirty days to respond pursuant to the Federal Rules of Civil Procedure.

On September 23, 2026, Plaintiffs simultaneously served upon the Court and Defendants the following discovery requests: Plaintiffs' First Set of Requests for Production to Defendants; Plaintiffs' First Set of Interrogatories; Notice of Rule 30(b)(6) Deposition of Defendant

Department of Homeland Security; and Notice of Rule 30(b)(6) Deposition of Defendant Department of State.

The parties met and conferred on September 30, 2026, to discuss the status of and the parties' positions on Plaintiffs' discovery requests. Counsel for Defendants informed Plaintiffs' counsel that the objections to their discovery requests were substantive and numerous. The parties agreed that Defendants would provide the materials by 10 am on Friday, October 2nd in writing. Defendants informed Plaintiffs they needed an extension of time until Monday because as of 1 pm on Friday they were still working on their responses. Defendants were forced to file an untimely motion for extension of time when Plaintiffs refused to cooperate and incorporate Defendants' position after 1 pm on Friday, October 2, 2026, and Plaintiffs unilaterally filed a status report without the consent of Defendants. The Court is holding a hearing on October 19th on Plaintiffs' improperly filed "joint" status report and Defendants' motion for extension of time. Defendants submit this status report in support of its Motion for Extension of Time and in response to the Court's September 18th order.

## DEFENDANTS' POSITION

Defendants submit their partial responses and formal objections to Plaintiffs' requests for discovery. *See* Attachments A-D. Generally, Plaintiffs' requests are overbroad, unduly burdensome and go beyond the limited scope of discovery contemplated by this Court. Defendants request that the Court narrow the scope of all the discovery requests as outlined in Defendants' below counter proposals. Moreover, should the Court agree with Defendants as to the limited scope of discovery required here in order to supplement the administrative record, Defendants likewise request that the Court reset deadlines for discovery and the case schedule.

As evident by the number of issues that remain outstanding, the Court should order the parties to meet and confer to narrow the scope of the discovery disputes and requests.

**JURISDICTIONAL DISCOVERY**

Defendants request discovery in this case where this Court noted jurisdictional discovery may be warranted and where associational standing may be in question. Defendants request 25 interrogatories, no limits on requests for productions and 10 depositions at least two of which should be Rule 30(b)(6) depositions for the Plaintiff organizations and at least two Rule 30(b)(6) depositions of each organization's association members. Defendants' counsel informed Plaintiffs of this request at the September 30th meet and confer. To the extent that Plaintiffs may argue Defendants deserve no more depositions than the two they were afforded, Defendants provide that the number of Rule 30(b)(6) depositions should be based on the number of Plaintiffs' organizations who are parties and at least one of their association members to establish standing. Without a Rule 30(b)(6) for each, jurisdiction or a lack thereof cannot be established and genuine issues as to standing and of material fact would still exist.

**THE ADMINISTRATIVE RECORD**

Defendants submit that they complied with this Court's order to submit the administrative record. Final, additional requested copies will be provided before October 16, 2026. Submission of this record does not waive any assertions of privilege or objections. Submission of an administrative record and subsequently the supplemental administrative record warrants reduction of the discovery demands submitted by Plaintiffs, and any limited discovery for the

Defendant, U.S. Department of State ("DOS") should be just that – limited and confined to the scope of the combined administrative record.

**PROPOSED SCHEDULE FOR DISCOVERY**

Currently, the close of written fact discovery ends on November 16, 2026. Any suggestion by Plaintiffs that the date should be any earlier than November 16th is contrary to their representations in the parties' joint 16(d) filing and this Court's order adopting the schedule. Indeed, during the September 30th meet and confer, Plaintiffs mentioned that the dates would no longer work, and they *never* mentioned they would seek dates *earlier* than what was on the calendar. Plaintiffs did not agree to negotiate a new time frame for discovery until they saw Defendants' objections. If the Court accepts Defendants' proposed limitations on the scope of discovery, it can complete discovery by the following deadlines:

| | |
|---|---|
| Close of Written Fact Discovery | February 19, 2027 |
| Depositions Completed & Close of Fact Discovery | April 16, 2027 |

If the Court were to grant the entirety of Plaintiffs' requests for discovery, Defendants would need until April 16, 2027, for the close of written fact discovery and would commit to a rolling production where documents are produced monthly starting in December on the second Friday of every month: December 11, January 14, February 12, March 12, and April 9.

Moreover, the Court should not issue any due date for discovery until a protective order and ESI protocols are in place. The parties have yet to meet and confer on these matters as well.

**DOS' RULE 30(B)(6) DEPOSITION**

DOS agrees that at a mutually agreeable time and location, Plaintiffs, by and through their counsel, will take the deposition upon oral examination of Defendant, DOS, by a person or persons designated by DOS, who consent(s) to testify on behalf of DOS, pursuant to Fed. R. Civ. P. 30(b)(6) and the Local Rules, before a court reporter, notary public, or other person authorized by law to administer oaths. The oral examination will be for one day until up to seven hours of record time are completed. The deposition will be recorded by stenographic and audiovisual means. The deposition will not be held open.

The matters of the deposition, of which the person(s) so designated to testify shall have knowledge, are set forth herein. Defendant DOS will identify in writing at least one week in advance of the deposition the name(s) of the representative(s) who will testify on its behalf and the Topic(s) on which each representative will testify.

Except where otherwise indicated, Defendant provides that the relevant time-period is from January 20, 2025, to April 30, 2025. Defendants agree to the following topics:

1. The execution of SCAI during the relevant time-period, including the identification of DOS's policy-making personnel, who had policy-making roles, at and above the office director level involved in such, and DOS' process for evaluating NCIC Hits of international students, including any steps, guidance, training, and agency communications related to implementation of SCAI.

2. Use of the NCIC database for identifying individuals under SCAI, and how NCIC Hits were generated by and/or shared with DOS.

3. The Visa Revocation process during the relevant time-period related to SCAI, including the process of reviewing students identified through NCIC queries and determination

that NCIC Hits formed a valid basis for Visa Revocation, and any departure from prior DOS policy, practice, or guidance, including the Foreign Affairs Manual.

4. The coordination with, and any direction to and/or from other governmental agencies, including DHS and ICE, to create, implement, and execute SCAI, including, without limitation, any documents or communications shared between DOS and other government agencies, and any "initial assessment of action," "feeder data," "priorities for DOS action," and "Additional info" as reflected in the SOG Process Map. PresAll CAR 001.

**ICE RULE 30(B)(6) DEPOSITION**[1]

Defendants DHS and ICE agree that at a mutually agreeable time and location, Plaintiffs, by and through their counsel, will take the deposition upon oral examination of Defendant Immigration and Customs Enforcement ("ICE"), by a person or persons designated by ICE, who consent(s) to testify on behalf of ICE, pursuant to Fed. R. Civ. P. 30(b)(6) and the Local Rules, before a court reporter, notary public, or other person authorized by law to administer oaths. The oral examination will be for one day until up to seven hours of record time are completed. The deposition will be recorded by stenographic and audiovisual means. The deposition will not remain open.

The matters of the deposition, of which the person(s) so designated to testify shall have knowledge, are set forth herein. Defendant ICE will identify in writing at least one week in advance of the deposition the name(s) of the representative(s) who will testify on its behalf and

[1] At the September 30th meet and confer, Plaintiffs' counsel stated that they oppose the agency selecting an ICE official. Plaintiffs provided no basis for this objection other than to say that the judge ordered the 30(b)(6) of DHS, without acknowledgement that ICE is a component of DHS.

the Topic(s) on which each representative will testify. Except where otherwise indicated, the relevant time-period is from January 20, 2025, to April 30, 2025. Defendants agree to the following topics:

1. The execution of SCAI during the relevant time-period, including the identification of the principal ICE personnel involved in such, and ICE's process for evaluating NCIC Hits of international students, including any steps, guidance, training, and agency communications related to ICE's implementation of SCAI.

2. ICE's use of the NCIC database for identifying individuals under SCAI, and how NCIC Hits were generated by and/or shared with ICE.

3. ICE's non-privileged coordination with, and any direction to and/or from other governmental agencies, including DOS, to implement SCAI, including the creation, content, approval, timing, and transmission of SEVIS NCIC Lists Alpha through Kilo to DOS, *see* STATE Supplemental CAR 00002-00008, 00022-00029, 00039-00051, 00054-00075, 00080-00124, 00130-00172, 00180-00217, 00227-00259, 00267-00290, 00296-00298, 0030200304, and corresponding Letterhead Memoranda, as produced by DOS in its Supplemental AR.

4. ICE's process for terminating students' SEVIS Records in connection with SCAI, including identification of any principal person(s) with authority to terminate SEVIS Records, the "feeder" data sent to DOS, DHS's "priorities for DOS action," any "Additional info" provided to DOS, as reflected in the SOG Process Map, and what review preceded Termination of a SEVIS Record. *See* PresAll CAR 001.

5. ICE's reason for terminating students' SEVIS Records in connection with SCAI, including the statutory and regulatory provisions relied upon and the identity of any

principal/decision-making person(s) who reviewed and approved ICE's position, including how Termination of a student's SEVIS Record affects the student's F-1 nonimmigrant status.

6. ICE's notification, or decision not to provide notification, to affected students and/or their designated school officials regarding SEVIS Terminations before or at the time of Termination, including any documents, Policies, or agency communications about notification of SEVIS terminations, and identification of principal/decision-making person(s) involved.

7. ICE's decision to reactivate SEVIS Records that had been terminated in connection with SCAI, including any principal/decision-making person(s) involved in that decision, when that decision was made, on what basis, the scope of reactivation, and documents generated during the decision-making process or as a result of the decision.

**THE COURT SHOULD LIMIT PLAINTIFFS' FIRST SET OF INTERROGATORIES (NOS. 1–20) IN SCOPE AND NUMBER**

Defendants submit the below 12 interrogatories for the Court to review so as to narrow the scope of Plaintiffs' submission. Defendants can agree to provide responses, without waiving objections or making any concessions, to the following for the relevant time-period from January 20, 2025, to April 30, 2025:

<u>INTERROGATORY NO. 1</u> Describe the SCAI including, but not limited to, when it was initiated and the objectives underlying the initiative. *See* Dkt. No. 14 ¶¶ 31–32.

<u>INTERROGATORY NO. 2</u> Identity those personnel who were principally responsible for and participated in, directed, approved, reviewed, recommended, or oversaw SCAI, including title, agency affiliation, and responsibilities for each individual identified. *See* Dkt. No. 14 ¶¶ 31–32.

INTERROGATORY NO. 3 Describe all results from NCIC queries to identify individuals under SCAI including what categories of Hits were returned (including arrests without charges, victims, or witnesses). *See* Dkt. No. 14 ¶¶ 32–33.

INTERROGATORY NO. 4 Describe all criteria and processes used by ICE to determine which NCIC Hits would be acted upon for SEVIS Record Termination or referral to DOS. *See* Dkt. No. 14 ¶¶ 32–33, 38.

INTERROGATORY NO. 5 Describe the complete process used by DOS to review and revoke student visas identified in SCAI.

INTERROGATORY NO. 6 Describe DOS's "initial assessment of action" step identified in its Process Map in the Administrative Record. *See* PresAll CAR 001.

INTERROGATORY NO. 7 Describe the process reflected in the "SOP" for Handling Cases Under Review, *see* PresAll CAR 002–004, including, but not limited to, how analysts proposed Visa Revocation decisions and what criteria or reasoning were applied.

INTERROGATORY NO. 8 Describe the relationship and coordination between DOS Visa Revocations and ICE SEVIS Terminations. *See* Dkt. No. 14 ¶¶ 38–43; Dkt. No. 54 at 2–3.

INTERROGATORY NO. 9 Describe the reasons ICE decided to reverse or suspend SEVIS Terminations connected to SCAI.

INTERROGATORY NO. 10 Describe how DOS determined that a result of criminal charges in the NCIC database formed a valid basis for a Visa Revocation of students identified in SCAI.

INTERROGATORY NO. 11 Describe how ICE determined that a result of criminal charges in the NCIC database formed a valid basis for a SEVIS Record Termination.

INTERROGATORY NO. 12 State whether any SEVIS Record Terminations based on an NCIC Hit remains in effect in any form and identify which agency maintains the NCIC hit and/or SEVIS record or enforces them.

**THE COURT SHOULD LIMIT AND NARROW THE SCOPE OF PLAINTIFFS' FIRST REQUEST FOR THE PRODUCTION OF DOCUMENTS**

As discussed above, extra-record discovery for DOS should be limited to documents relevant to what was already produced in the administrative record. The Court should limit discovery directed to ICE.[2] ICE restored the SEVIS records affected by the SCAI-related terminations with retroactive effect, such that the records were as though no termination had taken place. Accordingly, discovery concerning ICE should be confined to the specific challenged conduct (the SCAI-related terminations) and the contemporaneous decision-making related to such terminations, as well as the subsequent restoration of those records. Discovery outside those subjects and timeframes is not proportional to Plaintiffs' allegations of continuing injury attributable to ICE. *See* Dkt. No. 14; Dkt. No. 54, Dkt. No. 82, Declaration of Akil Baldwin.

[2] When a showing is made that the record may not be complete, *limited* discovery is appropriate to resolve that question. *New York v. McMahon*, 826 F. Supp. 3d 184 (D. Mass. 2026). In the District of Massachusetts, courts have required that a party seeking completion of the record provide reasonable, non-speculative grounds to believe that materials considered in the decision-making process are not included in the record, and must identify the pertinent omitted materials with sufficient specificity, as opposed to merely proffering broad categories of documents. *Id.* Where the admin record is found inadequate for judicial review, the proper course except in rare circumstances, is to remand to the agency for additional investigation or explanation, not to permit de novo discovery in the district court. *Olsen v. United States*, 414 F.3d 144 (1st Cir. 2005).

As such, without waiving any objections or making any concessions, Defendants believe the following 8 RFPs are within the scope of the narrow limitations for supplementing the administrative record with the relevant time-period as January 20, 2025, to April 30, 2025.

1. Produce all non-privileged final policies, guidance, instructions, and memoranda in effect during the relevant time-period concerning the purpose of SCAI, including any directives, memoranda, emails, or presentations reflecting why and how the initiative was undertaken.
2. Produce all non-privileged final policies, guidance, instructions, and memoranda in effect during the relevant time-period showing how ICE implemented NCIC screening under SCAI, including: categories of results obtained; and any filtering, verification, or validation steps applied prior to taking further action.
3. Produce all non-privileged final policies, guidance, instructions, and memoranda in effect during the relevant time-period between ICE and DOS concerning: SCAI; Visa Revocations of students identified in SCAI; SEVIS decisions of students identified in SCAI; and any priorities for DOS action or reciprocal agency input specific to SCAI.
4. Produce all non-privileged prior final versions of the SOP referenced in the Administrative Record, *see* PresAll CAR 002–005, workflow, guidance, or process.
5. Produce all non-privileged final documents relating to Visa Revocations under SCAI, including those predating April 14, 2025, and all materials reflecting approval of such Documents.
6. Produce all non-privileged final policies, guidance, instructions, and memoranda in effect during the relevant time-period sufficient to show how ICE implemented SEVIS Terminations related to SCAI, including: use of termination codes (including the "OTHER"

category); system entries, logs, or audit trails; and any instructions provided to personnel implementing Terminations.

7. Produce all non-privileged final policies, guidance, instructions, and memoranda in effect during the relevant time-period, that were considered for Visa Revocations of students identified in SCAI, but were not included in any Administrative Record.
8. Produce all non-privileged final policies, guidance, instructions, and memoranda in effect during the relevant time-period that ICE personnel relied upon in terminating SEVIS records based on an NCIC Hit and/or visa revocation and that were not included in the applicable Administrative Record.

## CONCLUSION

Defendants request that this Court address the following with the parties at any forthcoming hearing:

- Requirements for a meet and confer for the parties to further narrow the scope of discovery and any disputes;
- Any deadlines for document discovery shall not occur until at least 30 days after a protective order and ESI protocols are in place;
- Deadlines shall be consistent with the Federal Rules of Civil Procedure and Local Rules;
- Defendants' jurisdictional discovery requests to ascertain Plaintiffs' standing;
- Limits on Plaintiffs' discovery requests to 12 interrogatories, 8 requests for document production, 2 Rule 30(b)(6) depositions with limited and relevant topics as proposed by Defendants;

- The scope of the discovery for the parties by establishing the relevant time-period as January 20, 2025, to April 30, 2025 and other relevant parameters;
- Defendants' proposed deadlines for discovery and the case schedule.

Respectfully Submitted,

AUGUST FLENTJE
Deputy Director

By: _/s/ Nancy N. Safavi_
Nancy N. Safavi
(TXBN #24042342)
Senior Trial Attorney
Office of Immigration Litigation
U.S. Department of Justice
P.O. Box 878 Ben Franklin Station
Washington DC 20044
Phone: (202) 514-9875
Nancy.Safavi@usdoj.gov

Dated: October 9, 2026

Counsel for Defendants

**CERTIFICATE OF SERVICE**

I, NANCY N. SAFAVI, Senior Trial Attorney, hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF).

Dated: October 9, 2026 By: */s/ Nancy N. Safavi*
Nancy N. Safavi
Senior Trial Attorney



SBU - LEGAL

# ATTACHMENT A

# DEFENDANTS' OBJECTIONS TO DOS DEPOSITION NOTICE

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MASSACHUSETTS**

PRESIDENTS' ALLIANCE ONHIGHEREDUCATIONAND IMMIGRATION and ASSOCIATION OF INDEPENDENT COLLEGES AND UNIVERSITIES IN MASSACHUSETTS,

*Plaintiffs*,

v.

MARKWAYNE MULLIN, in his official capacity as Secretary of Homeland Security[1]; TODD LYONS, in his official capacity as Acting Director of U.S. Immigration and Customs Enforcement; the DEPARTMENT OF HOMELAND SECURITY; MARCO RUBIO, in his official capacity as Secretary as Secretary of State; and the DEPARTMENT OF STATE,

*Defendants*

Case No. 25-cv-11109-PBS

**NOTICE OF RULE 30(B)(6) DEPOSITION**
**OF DEFENDANT DEPARTMENT OF STATE**

PLEASE TAKE NOTICE that at a mutually agreeable time and location, Plaintiffs Presidents' Alliance on Higher Education and Association of Independent Colleges and Universities in Massachusetts, by and through their counsel, will take the deposition upon oral examination of Defendant Department of State ("DOS"), by a person or persons designated by DOS, who consent(s) to testify on behalf of DOS, pursuant to Fed. R. Civ. P. 30(b)(6) and the Local Rules of the United States District Court for the District of Massachusetts, before a court reporter, notary public, or other person authorized by law to administer oaths. The oral

examination will continue from day to day until completed. The deposition will be recorded by examination and will be for one day until up to stenographic and audiovisual means.

The matters of the deposition, of which the person(s) so designated to testify shall have knowledge, are set forth in Schedule A of Plaintiffs' notice dated September 23, 2026. Plaintiffs request that Defendant Department of State identify in writing at least one week in advance of the deposition the name(s) of the representative(s) who will testify on its behalf and the Topic(s) on which each representative will testify.

**SCHEDULE A**

The instructions, rules of construction, and definitions set forth in Rules 26, 30, and 45 of the Federal Rules of Civil Procedure and in Rule 26.5 of the Local Rules of the United States District Court for the District of Massachusetts are incorporated herein as if fully set forth.

**DEFINITIONS**

Unless otherwise defined, all words and phrases herein shall be interpreted in their common, ordinary sense, as well as the meanings ascribed to them under the Federal Rules of Civil Procedure and the Local Rules of the United States District Court for the District of Massachusetts (Local Rule 26.5). Should You not understand the meaning of any term, it is requested that You immediately seek clarification through the undersigned. In addition, the following terms shall have the meanings set forth below whenever used in any Request for Production:

1. "Action" or "Litigation" means the above captioned civil action.

2. "Administrative Record" means the certified administrative record (including supplementation) produced by Defendant Department of State in this Action. *See* PresAll CAR 001–005; STATE Supplemental CAR 00001–00306.

3. The terms "and" and "or" are to be construed either disjunctively or conjunctively to acquire the broadest meaning possible, so as to bring within the scope of the Topic all information that might otherwise be construed to be outside its scope.

4. "Any," "each," and "all" shall be construed to mean both any and all.

5. "Broadcast Message" means the April 26, 2025 communication entitled "Policy Regarding Termination of Records" transmitted by ICE to SEVP personnel.

6. "Complaint" means the First Amended Complaint in the above captioned civil action, Dkt. 14.

7. "Communication" means any contact, oral or written, whereby information of any nature is transmitted or transferred by one or more persons and/or between two or more persons by means including, but not limited to, telephone conversations, letters, telegrams, email, text messages, social media posts, social media direct messages, other group or direct messages, written memoranda, face-to-face conversations, and persons seeing or hearing any information by any means and any document memorializing or referring to the contact.

8. "DOGE" means the Department of Government Efficiency and any office, component, personnel, contractors, detailees, representatives, or agents acting on its behalf.

9. "DHS" means the United States Department of Homeland Security.

10. "DOS" means the United States Department of State, together with all of its offices, bureaus, employees, officials, contractors, agents, and representatives.

11. "Document" or "Documents" is used in the broadest sense permissible under the applicable rules and orders and includes each and every written, recorded, or graphic matter of

any kind, type, nature, or description that is or has been in Your possession, custody, or control, regardless of the medium on which they are produced, reproduced, or stored, including but not limited to, computer files, computer databases, computer printouts, correspondence, electronic mail, memoranda, tapes, stenographic or handwritten notes, written forms of any kind, drafts of Documents, exhibits, work papers, schedules, forms, audits, charts, plans, articles, specifications, diaries, letters, telegraphs, photographs, minutes, contracts, agreements, reports, surveys, data compilations of any kind, facsimiles, invoices, checks, statements, receipts, summaries, books, ledgers, and any recording or writing, as these terms are defined in Rule 1001 of the Federal Rules of Evidence. Any Document bearing marks, including initials, stamped initials, comments, or notations not a part of the original text or photographic reproduction thereof, is a separate Document.

12. "AI" means any software, system, model, application, tool or service that uses machine learning, large language models, neural networks, or similar computational methods to create, synthesize, summarize, predict, recommend, translate, analyze, modify, or otherwise produce content, information, outputs, or responses based in whole or in part on data, instructions, training materials, or other inputs. The foregoing includes, without limitation, systems capable of generating or assisting in the generation of text, documents, spreadsheets, emails, reports, images, audio, video, computer code, analysis, summaries, recommendations, rankings, or decisions.

13. The terms "including," "includes," and "include" shall be construed to mean those terms, in each case, without limitation. Under no circumstance should the use of "including" in any Topic be construed to limit the scope of the Topic.

14. "ICE" means U.S. Immigration and Customs Enforcement, including all offices, divisions, programs, employees, contractors, agents, and representatives acting on its behalf.

15. "NCIC" means the National Crime Information Center database maintained by the Federal Bureau of Investigation ("FBI").

16. "NCIC Hit(s)" means any result, match, flag, identification, notification, record, response, or other indication generated through an NCIC query.

17. "Policy" means any policy, procedure, practice, protocol, program, initiative, guidance, instruction, directive, criterion, standard, custom, course of conduct, decision-making framework, or rule, whether written, unwritten, formal, informal, operative, proposed, temporary, permanent, departmental, agency-wide, or otherwise.

18. "Refer," "Relate," "Regard," or "Concern" shall be construed to bring within the scope of the Topic all information that comprises, embodies, evidences, constitutes, describes, explicitly or implicitly refers to, was reviewed in conjunction with, or was generated as a result of the subject matter of the Topic, including, but not limited to, all information that reflects, memorializes, discusses, evaluates, considers, reviews, or reports, or in any way logically or factually connects with the subject matter described in the paragraph of the Topic.

19. "SCAI" or "Student Criminal Alien Initiative" means the initiative undertaken by DHS, ICE, and/or DOS beginning in or about March 2025 that involved querying international students through NCIC and taking subsequent immigration-related actions, including visa revocations and/or SEVIS terminations.

20. "SEVIS" means the Student and Exchange Visitor Information System and any successor database, system, platform, recordkeeping system, or repository used to maintain information regarding international students and exchange visitors.

21. "SEVIS Record" means any record, file, entry, profile, notation, status designation, data field, information, or metadata maintained in SEVIS regarding a student or exchange visitor.

22. "SEVIS Terminations," "Terminations," or "Termination of SEVIS Records" means any action, decision, notation, process, instruction, or mechanism that results in the termination, deactivation, cancellation, or closure of a SEVIS record.

23. "SEVP" means the Student and Exchange Visitor Program and all of its offices, personnel, employees, contractors, agents, and representatives.

24. "Visa Revocation" means any revocation, cancellation, invalidation, withdrawal, suspension, termination, rescission, deactivation, or declaration that a visa is no longer valid, effective, or usable, including any action taken pursuant to SCAI.

25. "You," "Your," "Yours," and "Defendant(s)" each means and refers to Defendant Department of State, inclusive of all its agents, as defined herein, collectively and individually.

26. The use of the singular form of any word includes the plural, and the use of the plural form of any word includes the singular.

27. Each gender of any word includes the other genders.

28. The use of any tense of any verb shall be considered to include within its meaning all of the tenses of the verb so used.

29. The use of any definition for the purposes of these Topics shall not be deemed to constitute an agreement or acknowledgement on the part of the Defendant that such definition is accurate, meaningful, or appropriate for any other purpose in this Litigation.

30. To the extent these Topics employ terms used in the Complaint, such use is without prejudice to the rights of Plaintiffs.

**TIME PERIOD**

Except where otherwise indicated, the relevant time period is from January 20, 2025, to the present.

**INSTRUCTIONS**

1. Designees shall be prepared to testify fully on the following Topics, after conducting a diligent and thorough investigation into all information within Your possession, custody, or control, and educating the designees with such information as needed. If Your designees cannot provide full testimony of any Topic, You should so advise us immediately, specifying the portion of the Topic the designees are unable to answer and providing any information You have regarding the unanswered portion.

2. In the event You refuse to fully respond to a Topic on the basis of a claim of attorney-client privilege, You shall at least respond to that portion of the Topic that is unobjectionable and specifically identify that portion of the Topic that is allegedly protected by the attorney-client privilege.

3. In the event that You object to any Topic on the ground that it is overbroad and/or unduly burdensome for any reason, respond to that Topic as narrowed to the least extent necessary, in Your judgment, to render it not overbroad/unduly burdensome and state specifically the extent to which You have narrowed that Topic for purposes of Your response and the factual basis for Your conclusion.

4. Your designees shall bring to this deposition all documents reviewed, relied upon, or consulted in preparation for this deposition.

## GENERAL OBJECTIONS

Defendant objects to the definitions and instructions to the extent they impose obligations beyond Rules 26 and 30, the Local Rules, or the Court's Order permitting limited discovery. Defendant objects to the definitions of "Refer," "Relate," "Regard," and "Concern" as overbroad to the extent they encompass information with only an indirect or tangential connection to a topic. Defendant also objects to the definitions of "Communication," "Document," "Policy," and "You" to the extent they seek privileged, protected, nonpublic, and/or information outside the scope of and irrelevant to the Action, or information outside Defendant's possession, custody, or control. Defendant further objects to the extent any topic seeks testimony regarding attorney-client communications, attorney work product, pre-decisional or deliberative material protected by the deliberative process privilege, law-enforcement-sensitive information, Privacy Act-protected information, or any other privileged or protected information. Defendant will designate its witness or witnesses to testify on behalf of DOS only as to non-privileged information reasonably available to it and within the scope of the Court's limited discovery order.

Defendants further object to the time-period which is from January 20, 2025 to April 30, 2025.

## TOPICS OF EXAMINATION

1. The conception, research, development, approval, implementation, and execution of SCAI, including, without limitation, the identification of all DOS personnel involved in such; DOS's process for Visa Revocation based on NCIC hits, including any steps, guidance, training, and internal communications related to Your implementation of SCAI.

**OBJECTIONS:** Defendant incorporates the General Objections. Defendant objects to this Topic as compound, overbroad, and disproportionate. The topic seeks testimony concerning

every stage of SCAI, identification of all DOS personnel involved in the SCAI, and DOS' NCIC evaluation process, including all guidance, training, and internal communications. Defendants further object to the extent it seeks nonpublic law-enforcement methods, operational procedures, or privileged deliberations. Defendants also object to the phrase "all DOS personnel involved" as that would include countless number of non-policymaking employees. As such, this would make the topic overbroad and disclosure would subject lower-level employees to potential harassment and embarrassment.

2. Your use of the NCIC database, including, without limitation, Your process of querying NCIC to identify individuals under SCAI and how NCIC Hits were generated by and/or shared with You.

**OBJECTIONS**: Defendant incorporates the General Objections. Defendant objects to this Topic as overbroad and unduly burdensome because it seeks testimony concerning DOS's use of NCIC generally, rather than information limited to SCAI and the matters at issue. Defendant further objects to the extent it seeks non-public NCIC query methods, access practices, search criteria, or law-enforcement-sensitive operational information.

3. Your Visa Revocation process, including, without limitation, Your process of reviewing students identified through NCIC queries and determination that NCIC Hits formed a valid basis for Visa Revocation, and any departure from prior DOS policy, practice, or guidance, including the Foreign Affairs Manual.

**OBJECTIONS:** Defendant incorporates the General Objections. Defendant DOS objects to this Topic as compound, overbroad, disproportionate, and vague because it seeks testimony concerning DOS's general Visa Revocation process, rather than information limited to the Visa Revocation process in SCAI and the matters at issue. Defendant further objects to the

extent it seeks non-public methods, practices, criteria, or law-enforcement-sensitive operational information tied to the Department's Visa Revocation process.

4. Your coordination with, and any direction to and/or from other governmental agencies, including DHS and DOGE, to create, implement, and execute SCAI, including, without limitation, any documents or communications shared between You and other government agencies, and any "initial assessment of action," "feeder data," "priorities for DOS action," and "Additional info" as reflected in the SOG Process Map. PresAll CAR 001.

**OBJECTIONS:** Defendant incorporates the General Objections. Defendant objects to this Topic as compound, overbroad, and disproportionate because it seeks all coordination with other agencies, all direction to or from those agencies, and all documents, communications, and discussions involving DOGE. Defendant further objects to the extent it seeks information outside DOS's possession, custody, or control, including information held solely by DHS or DOGE, and to the extent it seeks privileged interagency deliberations.

5. The "SOP – Process" to categorize and review cases in "Under Review – Do Not Revoke Yet" Status, produced at PresAll CAR 002–005, including, without limitation, any prior drafts of the foregoing or versions of such updated after April 14, 2025.

**OBJECTIONS:** Defendant incorporates the General Objections. Defendant objects to this Topic as vague, overbroad, disproportionate, and duplicative of Topic 3. Defendant further objects to the extent it seeks information protected by the deliberative process and/or law-enforcement privileges.

6. Your use of AI relating to NCIC Hits, Visa Revocation, and SCAI, including, without limitation, any prompts, data, or other input given to AI by You regarding such, and any outputs generated by such systems.

**OBJECTIONS:** Defendant incorporates the General Objections. Defendant objects to this Topic as vague, overbroad, and disproportionate. The Topic does not identify any particular AI system, tool, time period, or action at issue. Defendant further objects to the extent it seeks nonpublic technical, security-sensitive, operational, or law-enforcement-sensitive information, including prompts, inputs, outputs, or system configurations. Moreover, it is not relevant to the Causes of Action in the Amended Complaint.

7. Your characterization of SCAI, including, without limitation, the factual basis for any distinction DOS draws between a policy and a "law enforcement initiative."

**OBJECTIONS:** Defendant incorporates the General Objections. Defendant objects to this Topic as vague, overbroad, and disproportionate.

8. Your decision not to reinstate visas revoked in connection with SCAI, including, without limitation, the basis for that decision, when it was made, any person(s) involved in that decision, any documents or communications with DHS, the White House, or any other government agency regarding that decision, and whether You have considered or intend to consider reinstatement.

**OBJECTIONS:** Defendant incorporates the General Objections. Defendant objects to this Topic as vague, overbroad, disproportionate, and outside the scope of this Action. Furthermore, decisions to revoke visas under 8 U.S.C. s. 1201(i) are not subject to review by any Court, and this jurisdictional bar extends to "decisions," such as any exist, to reconsider any prior exercises of that authority. Further, Defendant objects on the basis of law enforcement privilege,

deliberative process privilege, presidential communication privilege and attorney-client privilege.

9. Your efforts to identify, collect, and produce documents constituting DOS's Administrative Record in this Action, including, without limitation, DOS's decision to supplement its administrative record, including, without limitation, any person(s) who made the decision to supplement the Administrative Record and the timing of that decision.

**OBJECTIONS:** Defendant incorporates the General Objections. Defendant objects to this Topic as vague, overbroad, and disproportionate because it seeks testimony that involves privileged deliberations, including attorney-client privileged information and/or attorney work product. Defendant further objects where this request seeks discovery into discovery something outside the scope of the Court's order.

10. The process, practices, procedures, and/or requirements that DOS follows to develop, implement, and enforce Policies

**OBJECTIONS:** Defendant incorporates the General Objections. Defendant objects to this Topic as vague, overbroad, and disproportionate because it seeks testimony concerning DOS-wide processes, practices, procedures, and requirements for developing, implementing, and enforcing all policies. The Topic is not limited to SCAI, Visa Revocations, the relevant time-period, or any specific DOS component. Defendant further objects to the extent it seeks privileged deliberations or nonpublic operational information.

# ATTACHMENT B

# DEFENDANTS' OBJECTIONS TO DHS DEPOSITION NOTICE

**IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| PRESIDENTS' ALLIANCE ON HIGHER EDUCATION AND IMMIGRATION; and ASSOCIATION OF INDEPENDENT COLLEGES AND UNIVERSITIES IN MASSACHUSETTS,<br>*Plaintiffs*, v.<br>MARKWAYNE MULLIN, in his official capacity as Secretary of Homeland Security; DAVID VENTURELLA, in his official capacity as Acting Director of U.S. Immigration and Customs Enforcement; the DEPARTMENT OF HOMELAND SECURITY; MARCO RUBIO, in his official capacity as Secretary of State; and the DEPARTMENT OF STATE,<br>*Defendants*. | Case No. 25-cv-11109-PBS |

**NOTICE OF RULE 30(B)(6) DEPOSITION**

PLEASE TAKE NOTICE that at a mutually agreeable time and location, Plaintiffs Presidents' Alliance on Higher Education and Association of Independent Colleges and Universities in Massachusetts, by and through their counsel, will take the deposition upon oral examination of Defendant Department of Homeland Security ("DHS"), by a person or persons designated by DHS, who consent(s) to testify on behalf of DHS, pursuant to Fed. R. Civ. P. 30(b)(6) and the Local Rules of the United States District Court for the District of Massachusetts, before a court reporter, notary public, or other person authorized by law to administer oaths. The oral examination will continue from day to day until completed. The deposition will be recorded by stenographic and audiovisual means.

The matters of the deposition, of which the person(s) so designated to testify shall have knowledge, are set forth in Schedule A of Plaintiffs' notice dated September 23, 2026.

Plaintiffs request that Defendant Department of Homeland Security identify in writing at least one week in advance of the deposition the name(s) of the representative(s) who will testify on its behalf and the Topic(s) on which each representative will testify.

**SCHEDULE A**

The instructions, rules of construction, and definitions set forth in Rules 26, 30, and 45 of the Federal Rules of Civil Procedure and in Rule 26.5 of the Local Rules of the United States

District Court for the District of Massachusetts are incorporated herein as if fully set forth.

## I. DEFINITIONS

Unless otherwise defined, all words and phrases herein shall be interpreted in their common, ordinary sense, as well as the meanings ascribed to them under the Federal Rules of Civil Procedure and the Local Rules of the United States District Court for the District of Massachusetts (Local Rule 26.5). Should You not understand the meaning of any term, it is requested that You immediately seek clarification through the undersigned. In addition, the following terms shall have the meanings set forth below whenever used in any Request for Production:

1. "Action" or "Litigation" means the above captioned civil action.

2. "Administrative Record" means the certified administrative record (including supplementation) produced by Defendant Department of State in this Action. *See* Pres All CAR 001–005; STATE Supplemental CAR 00001–00306.

3. The terms "and" and "or" are to be construed either disjunctively or conjunctively to acquire the broadest meaning possible, so as to bring within the scope of the Topic all information that might otherwise be construed to be outside its scope.

4. "Any," "each," and "all" shall be construed to mean both any and all.

5. "Broadcast Message" means the April 26, 2025 communication entitled "Policy Regarding Termination of Records" transmitted by ICE to SEVP personnel.

6. "Complaint" means the First Amended Complaint in the above captioned civil action, Dkt. 14.

7. "Communication" means any contact, oral or written, whereby information of any nature is transmitted or transferred by one or more persons and/or between two or more persons by means including, but not limited to, telephone conversations, letters, telegrams, email, text messages, social media posts, social media direct messages, other group or direct messages, written memoranda, face-to-face conversations, and persons seeing or hearing any information by any means and any document memorializing or referring to the contact.

8. "DOGE" means the Department of Government Efficiency and any office, component, personnel, contractors, detailees, representatives, or agents acting on its behalf.

9. "DHS" means the United States Department of Homeland Security.

10. "DOS" means the United States Department of State, together with all of its offices, bureaus, employees, officials, contractors, agents, and representatives.

11. "Document" or "Documents" is used in the broadest sense permissible under the applicable rules and orders and includes each and every written, recorded, or graphic matter of any kind, type, nature, or description that is or has been in Your possession, custody, or control, regardless of the medium on which they are produced, reproduced, or stored, including but not limited to, computer files, computer databases, computer printouts, correspondence, electronic mail, memoranda, tapes, stenographic or handwritten notes, written forms of any kind, drafts of Documents, exhibits, work papers, schedules, forms, audits, charts, plans, articles, specifications, diaries, letters, telegraphs, photographs, minutes, contracts, agreements, reports, surveys, data compilations of any kind, facsimiles, invoices, checks, statements, receipts, summaries, books, ledgers, and any recording or writing, as these terms are defined in Rule 1001 of the Federal Rules of Evidence. Any Document bearing marks, including initials, stamped initials, comments, or notations not a part of the original text or photographic reproduction thereof, is a separate Document.

12. "AI" means any software, system, model, application, tool or service that uses machine learning, large language models, neural networks, or similar computational methods to create, synthesize, summarize, predict, recommend, translate, analyze, modify, or otherwise produce content, information, outputs, or responses based in whole or in part on data, instructions, training materials, or other inputs. The foregoing includes, without limitation, systems capable of generating or assisting in the generation of text, documents, spreadsheets, emails, reports, images, audio, video, computer code, analysis, summaries, recommendations, rankings, or decisions.

13. The terms “including,” “includes,” and “include” shall be construed to mean those terms, in each case, without limitation. Under no circumstance should the use of “including” in any Topic be construed to limit the scope of the Topic.

14. “ICE” means U.S. Immigration and Customs Enforcement, including all offices, divisions, programs, employees, contractors, agents, and representatives acting on its behalf.

15. “Letterhead Memoranda” or “LHM” means the eleven memoranda from ICE to

DOS transmitting NCIC hit spreadsheets as produced by DOS in its Supplemental AR.

*See* STATE Supplemental CAR 00001, 000021, 00053, 00079, 00129, 00179, 00226, 00266, 00295, 00301.

16. “NCIC” means the National Crime Information Center database maintained by the

Federal Bureau of Investigation (“FBI”).

17. “NCIC Hit(s)” means any result, match, flag, identification, notification, record, response, or other indication generated through an NCIC query.

18. “Policy” means any policy, procedure, practice, protocol, program, initiative, guidance, instruction, directive, criterion, standard, custom, course of conduct, decision-making framework, or rule, whether written, unwritten, formal, informal, operative, proposed, temporary, permanent, departmental, agency-wide, or otherwise.

19. “Refer,” “Relate,” “Regard,” or “Concern” shall be construed to bring within the scope of the Topic all information that comprises, embodies, evidences, constitutes, describes, explicitly or implicitly refers to, was reviewed in conjunction with, or was generated as a result of the subject matter of the Topic, including, but not limited to,

all information that reflects, memorializes, discusses, evaluates, considers, reviews, reports, or in any way logically or factually connects with the subject matter described in the paragraph of the Topic.

20. "SCAI" or "Student Criminal Alien Initiative" means the initiative undertaken by DHS, ICE, and/or DOS beginning in or about March 2025 that involved querying international students through NCIC and taking subsequent immigration-related actions, including visa revocations and/or SEVIS terminations.

21. "SEVIS" means the Student and Exchange Visitor Information System and any successor database, system, platform, recordkeeping system, or repository used to maintain information regarding international students and exchange visitors.

22. "SEVIS Record" means any record, file, entry, profile, notation, status designation, data field, information, or metadata maintained in SEVIS regarding a student or exchange visitor.

23. "SEVIS Terminations," "Terminations," or "Termination of SEVIS Records" means any action, decision, notation, or instruction that results in the termination of a SEVIS record.

24. "SEVP" means the Student and Exchange Visitor Program and all of its offices, personnel, employees, contractors, agents, and representatives.

25. "Visa Revocation" means any revocation, cancellation, invalidation, withdrawal, suspension, termination, rescission, deactivation, or declaration that a visa is no longer valid, effective, or usable, including any action taken pursuant to SCAI.

26. "You," "Your," "Yours," and "Defendant(s)" each means and refers to Defendant Department of Homeland Security, inclusive of all its agents, as defined herein, collectively and individually.

27. The use of the singular form of any word includes the plural, and the use of the plural form of any word includes the singular.

28. Each gender of any word includes the other genders.

29. The use of any tense of any verb shall be considered to include within its meaning all of the tenses of the verb so used.

30. The use of any definition for the purposes of these Topics shall not be deemed to constitute an agreement or acknowledgement on the part of the Defendant that such definition is accurate, meaningful, or appropriate for any other purpose in this Litigation.

31. To the extent these Topics employ terms used in the Complaint, such use is without prejudice to the rights of Plaintiffs.

## II. TIME PERIOD

Except where otherwise indicated, the relevant time-period is from January 20, 2025, to present.

## III. INSTRUCTIONS

1. Designees shall be prepared to testify fully on the following Topics, after conducting a diligent and thorough investigation into all information within Your possession, custody, or control, and educating the designees with such information as needed. If Your designees cannot provide full testimony of any Topic, You should so advise us immediately, specifying the portion of the Topic the designees are unable to answer and providing any information You have regarding the unanswered portion.

2. In the event You refuse to fully respond to a Topic on the basis of a claim of attorney-client privilege, You shall at least respond to that portion of the Topic that is

unobjectionable and specifically identify that portion of the Topic that is allegedly protected by the attorney-client privilege.

3. In the event that You object to any Topic on the ground that it is overbroad and/or unduly burdensome for any reason, respond to that Topic as narrowed to the least extent necessary, in Your judgment, to render it not overbroad/unduly burdensome and state specifically the extent to which You have narrowed that Topic for purposes of Your response and the factual basis for Your conclusion.

4. Your designees shall bring to this deposition all documents reviewed, relied upon, or consulted in preparation for this deposition.

**GENERAL OBJECTIONS**

Defendant objects to the definitions and instructions to the extent they impose obligations beyond Rules 26 and 30, the Local Rules, or the Court's Order permitting limited discovery. Defendant objects to the definitions of "Refer," "Relate," "Regard," and "Concern" as overbroad to the extent they encompass information with only an indirect or tangential connection to a topic. Defendant also objects to the definitions of "Communication," "Document," "Policy," and "You" to the extent they seek privileged, protected, nonpublic, or irrelevant information, or information outside DHS's possession, custody, or control. Defendant further objects to the extent any topic seeks testimony regarding attorney-client communications, attorney work product, pre-decisional or deliberative material protected by the deliberative process privilege, law-enforcement-sensitive information, Privacy Act-protected information, or any other privileged or protected information. Defendant will designate witness or witnesses to testify on behalf of DHS only as to non-privileged information reasonably available to DHS and within the scope of the Court's limited discovery order.

Defendants further object to the time-period which is from January 20, 2025 to April 30, 2025.

## IV. TOPICS OF EXAMINATION

1. The conception, research, development, approval, implementation, and execution of SCAI, including, without limitation, the identification of all DHS personnel involved in such, and ICE's process for evaluating NCIC Hits of international students, including, without limitation, any steps, guidance, training, and internal communications related to Your implementation of SCAI.

**OBJECTIONS:** Defendant incorporates the General Objections. Defendant objects as compound, overbroad, and disproportionate. The topic seeks testimony concerning every stage of SCAI, identification of all personnel, and ICE's NCIC evaluation process, including all guidance, training, and internal communications. Defendant further objects to the extent it seeks nonpublic law-enforcement methods, operational procedures, or privileged deliberations. Defendants also object to the phrase "all DHS personnel involved" as that would include countless number of non-policymaking employees. As such, this would make the topic overbroad and disclosure would subject lower-level employees to potential harassment and embarrassment.

2. Your use of the NCIC database, including, without limitation, Your process of querying NCIC to identify individuals under SCAI, and how NCIC Hits were generated by and/or shared with You.

**OBJECTIONS**: Defendant incorporates the General Objections. Defendant objects as overbroad and unduly burdensome because it seeks testimony concerning DHS's use of NCIC generally, rather than information limited to SCAI and the matters at issue. Defendant further

objects to the extent it seeks nonpublic NCIC query methods, access practices, search criteria, or other law-enforcement-sensitive operational information.

3. Your coordination with, and any direction to and/or from other governmental agencies, including DOS and DOGE, to implement SCAI, including, without limitation, the creation, content, approval, timing, and transmission of SEVIS NCIC Lists Alpha through Kilo to DOS, *see* STATE Supplemental CAR 00002-00008, 00022-00029, 00039-00051, 00054-00075,00080-00124, 00130-00172, 00180-00217, 00227-00259, 00267-00290, 00296-00298, 0030200304, and corresponding Letterhead Memoranda, as produced by DOS in its Supplemental AR, and any documents, communications, or discussions between You and DOGE.

**OBJECTIONS:** Defendant incorporates the General Objections. Defendant objects as compound, overbroad, and disproportionate because it seeks all coordination with other agencies, all direction to or from those agencies, and all documents, communications, and discussions involving DOGE. Defendant further objects to the extent it seeks information outside DHS's possession, custody, or control, including information held solely by DOS or DOGE, and to the extent it seeks privileged interagency deliberations.

4. Your use of AI in developing and implementing SCAI, including, without limitation, any prompts, data, or other input given to AI by You as part of SCAI, and any outputs generated by such systems.

**OBJECTIONS:** Defendant incorporates the General Objections. Defendant objects as vague, overbroad, and disproportionate. The topic does not identify any particular AI system, tool, time-period, or action at issue. Defendant further objects to the extent it seeks nonpublic technical, security-sensitive, operational, or law-enforcement-sensitive information, including prompts, inputs, outputs, or system configurations. Defendant also objects to this request being

outside the scope of limited discovery and not relevant to the Causes of Action in the Amended Complaint for this APA case.

5. Your process for terminating students' SEVIS Records in connection with SCAI, including, without limitation, identification of any person(s) with authority to terminate SEVIS Records, the "feeder" data sent to DOS, DHS's "priorities for DOS action," any "Additional info" provided to DOS, as reflected in the SOG Process Map, and what review preceded Termination of a SEVIS Record. *See* PresAll CAR 001.

**OBJECTIONS:** Defendant incorporates the General Objections. Defendant objects as compound, overbroad, and disproportionate because it seeks testimony concerning the entire process for SEVIS terminations, personnel authority, communications with DOS, data transmitted to DOS, priorities, and all review preceding a termination. Defendant further objects to the extent it seeks nonpublic system, operational, or law-enforcement-sensitive information; personally identifiable information; or privileged deliberation.

6. Your basis for terminating students' SEVIS Records in connection with SCAI, including, without limitation, the statutory and regulatory provisions relied upon and the identity of any person(s) who reviewed and approved Your position, including how Termination of a student's SEVIS Record affects the student's F-1 nonimmigrant status.

**OBJECTIONS:** Defendant incorporates the General Objections. Defendant objects as overbroad and disproportionate because it seeks legal conclusions regarding statutory and regulatory authority, the legal effect of SEVIS termination on F-1 status, and the identity of all persons who reviewed or approved DHS's position. Defendant further objects to the extent it seeks legal advice, attorney-client communications, work product, or privileged deliberative material.

7. DHS's notification, or decision not to provide notification, to affected students and/or their designated school officials regarding SEVIS Terminations before or at the time of Termination,

including, without limitation, any discussions, considerations, documents, Policies, or internal communications about notification of SEVIS terminations, and identification of any person(s) involved.

**OBJECTIONS:** Defendant incorporates the General Objections. Defendant objects as compound, overbroad, and disproportionate because it seeks testimony concerning notification decisions, all related discussions and documents, all policies, and all involved personnel. Defendant further objects to the extent it seeks privileged deliberations, student-specific information, or information outside DHS's possession, custody, or control.

8. Your decision to reactivate SEVIS Records that had been terminated in connection with SCAI without reactivating F-1 visas, including, without limitation, any person(s) involved in that decision, when that decision was made, on what basis, the scope of reactivation, and documents generated during the decision-making process or as a result of the decision.

**OBJECTIONS:** Defendant incorporates the General Objections. Defendant objects as compound, overbroad, and disproportionate because it seeks testimony concerning the decision to reactivate records, all involved personnel, timing, basis, scope, and all documents generated during or resulting from the decision. Defendant further objects to the extent it seeks privileged deliberations, student-specific information, or nonpublic system information. Defendant further objects because this Interrogatory seeks information concerning DOS that may be outside the knowledge, possession, custody, or control of the responding Defendant.

9. The Broadcast Message, including, without limitation, the development, drafting, review, approval, dissemination, and implementation thereof.

**OBJECTIONS:** Defendant incorporates the General Objections. Defendant objects as compound and overbroad because it seeks testimony concerning the full development, drafting, review, approval, dissemination, and implementation of the Broadcast Message. Defendant

further objects to the extent it seeks drafts, redlines, pre-decisional communications, attorney-client privileged material or attorney work product, or other privileged deliberative material.

10. DHS's position as to whether SEVIS Records terminated under SCAI may be reterminated.

**OBJECTIONS:** Defendant incorporates the General Objections. Defendant objects as vague and calls for speculation because the phrase "may be reterminated" does not identify a particular student, decision, factual scenario, or time-period. Defendant further objects to the extent it seeks legal conclusions or privileged deliberations.

11. Any successor, related, or similar initiative to SCAI that DHS has considered or undertaken.

**OBJECTIONS:** Defendant incorporates the General Objections. Defendant objects as vague, overbroad, and disproportionate because "successor, related, or similar initiative" is undefined and could encompass unrelated agency activities. Defendant further objects to the extent it seeks information regarding prospective initiatives, privileged deliberations, or nonpublic operational planning.

12. The development, approval, and internal classification of SCAI, including how DHS categorizes SCAI within its organizational framework, the criteria DHS uses to distinguish among Policies, directives, guidance documents, and law enforcement initiatives, and how those criteria were applied to the SCAI.

**OBJECTIONS:** Defendant incorporates the General Objections. Defendant objects as vague, overbroad, and disproportionate because it seeks testimony regarding DHS's overall organizational classifications and criteria for distinguishing among policies, directives, guidance, and law-enforcement initiatives. Defendant further objects to the extent it seeks legal

conclusions, privileged deliberations, or internal agency classification processes unrelated to the matters at issue.

13. Your efforts to identify, collect, and produce documents constituting DHS's Administrative Record in this Action, including, without limitation, DHS's decision not to produce any documents as part of the Administrative Record, including, without limitation, any person(s) who made the decision not to produce any documents, and the timing of that decision.

**OBJECTIONS:** Defendant incorporates the General Objections. Defendant objects because the topic seeks discovery into discovery, including document-collection efforts, legal judgments about the Administrative Record, and decisions regarding production. Defendant further objects to the extent it seeks attorney-client communications, work product, deliberative material, or testimony concerning counsel's litigation strategy. Defendant also objects because DHS did not prepare, certify, or submit the DOS Administrative Record referenced by Plaintiffs.

14. The process, practices, procedures, and/or requirements that DHS follows to develop, implement, and enforce Policies.

**OBJECTIONS:** Defendant incorporates the General Objections. Defendant objects as vague, overbroad, unduly burdensome, and disproportionate because it seeks testimony concerning DHS-wide processes, practices, procedures, and requirements for developing, implementing, and enforcing all policies. The topic is not limited to SCAI, SEVIS, the relevant time-period, or any specific DHS component. Defendant further objects to the extent it seeks privileged deliberations or nonpublic operational information.

# ATTACHMENT C

# DEFENDANTS' OBJECTIONS TO PLAINTIFFS' INTERROGATORIES

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MASSACHUSETTS**

PRESIDENTS' ALLIANCE ON HIGHER EDUCATION and ASSOCIATION OF INDEPENDENT COLLEGES AND UNIVERSITIES IN MASSACHUSETTS,

*Plaintiffs,* v.

MARKWAYNE MULLIN, in his official capacity as Secretary of Homeland Security1; TODD LYONS, in his official capacity as Acting Director of U.S. Immigration and Customs Enforcement; the DEPARTMENT OF HOMELAND SECURITY; MARCO RUBIO, in his official capacity as Secretary as Secretary of State; and the DEPARTMENT OF STATE,

*Defendants.*

Case No. 25-cv-11109-PBS

**DEFENDANTS' OBJECTIONS TO**
**PLAINTIFFS' FIRST SET OF INTERROGATORIES**

Defendants provide these objections as an initial response and request the full thirty days to respond pursuant to the Federal Rules of Civil Procedure, and for the 30 days to start after the Court issues an order on discovery after the hearing on October 19, 2026.

Defendants submit the following objections to Plaintiffs' First Set of Interrogatories:

**STATEMENT REGARDING INSTRUCTIONS AND DEFINITIONS**

Defendants object to all instructions and definitions that purport to impose obligations beyond the Federal Rules of Civil Procedure and the Local Rules.

**STATEMENT REGARDING THE SCOPE OF DISCOVERY AUTHORIZED**

The Court authorized limited discovery for a limited period. Defendants' objections below, including but not limited to proportionality and undue burden objections, reflect its good-faith understanding of the Court's statements.

**GENERAL OBJECTIONS**

Defendants object to Plaintiffs' definitions and instructions to the extent they impose obligations beyond those required by the Federal Rules of Civil Procedure, the Local Rules, or the Court's Order permitting limited discovery. Defendants object to Plaintiffs' definition of "Refer," "Relate," "Regard," or "Concern" as overbroad and unduly burdensome to the extent it seeks information that only indirectly or tangentially relates to the subject matter of an Interrogatory. Defendants object to Plaintiffs' definitions of "Communication," "Document," "Policy," and "You," "Your," or "Defendants" to the extent they seek privileged, protected, irrelevant, nonpublic, or information outside the possession, custody, or control of the responding Defendant. Defendants object to the extent any Interrogatory is compound, contains multiple discrete subparts, seeks a complete factual narrative, seeks premature marshalling of all evidence, or improperly seeks documents and communications rather than information properly sought through an interrogatory. Defendants object to the extent any Interrogatory seeks information protected by the deliberative process privilege, attorney-client privilege, attorney work-product doctrine, law-enforcement privilege, Privacy Act, or any other applicable privilege or protection. Defendants further object to the extent any Interrogatory seeks nonpublic operational, system, security-sensitive, or law-enforcement-sensitive information, including information that could reveal nonpublic screening methods, NCIC-query procedures, system access, internal processes, or agency capabilities. Defendants respond only on behalf of the

responding Defendant and do not purport to answer on behalf of other Defendants, agencies, components, contractors, agents, or third parties.

## OBJECTIONS TO INTERROGATORIES

1. Describe in detail the conception, development, and authorization of SCAI, including, but not limited to, when it was initiated and the objectives underlying the initiative. *See* Dkt. No. 14 ¶¶ 31–32.

**OBJECTIONS:** Defendants incorporate the General Objections. Defendants object to this Interrogatory as compound because it seeks separate descriptions of the conception, development, authorization, initiation, and objectives of SCAI. Defendants further object as overbroad, unduly burdensome, and disproportionate to the limited discovery authorized by the Court because it seeks a detailed narrative of an initiative involving multiple agencies and components without identifying particular custodians, agency components, communications, or actions at issue. Defendants further object to the extent the Interrogatory seeks privileged internal deliberations, pre-decisional recommendations, draft materials, legal advice, or other protected information concerning the development or authorization of SCAI.

2. Identity all personnel who participated in, directed, approved, reviewed, recommended, implemented, administered, or oversaw SCAI, including title, agency affiliation, and responsibilities for each individual identified. *See* Dkt. No. 14 ¶¶ 31–32.

**OBJECTIONS:** Defendants incorporate the General Objections. Defendants object as overbroad, unduly burdensome, and disproportionate because the Interrogatory seeks identification of every person who “participated in,” “directed,” “approved,” “reviewed,”

"recommended," "implemented," "administered," or "oversaw" SCAI. These terms are undefined and could encompass personnel with only incidental, ministerial, administrative, technical, or temporary involvement. Defendants further object because the Interrogatory seeks a collective answer from multiple agencies and components with distinct roles, records systems, and personnel. Defendants further object to the extent it seeks employee identifying information that implicates privacy, safety, or law-enforcement concerns. Defendants also object to the phrase "all DHS personnel involved" as that would include countless number of non-policymaking employees. As such, this would make the topic overbroad and disclosure would subject lower-level employees to potential harassment and embarrassment.

3. Describe in detail all queries entered into NCIC to identify individuals under SCAI including, but not limited to, data sources used to create queries; how queries were performed and by whom; and what categories of Hits were returned (including arrests without charges, victims, or witnesses). See Dkt. No. 14 ¶¶ 32–33.

**OBJECTIONS:** Defendants incorporate the General Objections. Defendants object as compound because the Interrogatory seeks separate answers regarding all NCIC queries, data sources, how the queries were performed, the personnel who performed them, and every category of result returned. Defendants further object to the phrases "all queries," "data sources," and "categories of Hits" as vague, overbroad, and unduly burdensome because the request is not limited by date, custodian, system, student, or particular action at issue. Defendants further object to the extent the Interrogatory seeks nonpublic law-enforcement-sensitive information concerning NCIC query methods, data fields, databases, search criteria, access practices, or operational procedures. Defendants further object to the extent it seeks information about

employees with only incidental, ministerial, administrative, technical, processing, or temporary involvement, including because it may implicate privacy, safety, or law-enforcement concerns.

4. Describe any safeguards or error-checking procedures used by DHS to validate that an individual in the NCIC database was an accurate match for an international student studying in the United States, or to prevent other erroneous actions. *See* Dkt. No. 14 ¶¶ 31–33.

**OBJECTIONS:** Defendants incorporate the General Objections. Defendants object to the terms "safeguards," "error-checking procedures," "accurate match," and "other erroneous actions" as vague and ambiguous. Defendants further object as overbroad and disproportionate because the Interrogatory seeks all procedures used by DHS without limitation to a particular time-period, agency component, student, query, or action. Defendants also object to the extent the Interrogatory seeks nonpublic screening, verification, validation, or operational procedures. To the extent this Interrogatory is directed to DOS, Defendants further object because it seeks information concerning DHS that may be outside the knowledge, possession, custody, or control of the responding Defendant.

5. Describe all criteria and processes used by DHS to determine which NCIC Hits would be acted upon for purposes of further enforcement action, including but not limited to, SEVIS Record Termination or referral to DOS. *See* Dkt. No. 14 ¶¶ 32–33, 38.

**OBJECTIONS:** Defendants incorporate the General Objections. Defendants object as compound, overbroad, unduly burdensome, and disproportionate because the Interrogatory seeks all criteria and processes used for all NCIC Hits and all potential enforcement actions, including SEVIS actions and referrals to DOS. Defendants further object to the terms "acted upon" and "further enforcement action" as vague and ambiguous. Defendants also object to the extent the Interrogatory seeks nonpublic information concerning enforcement priorities, screening criteria,

referral practices, operational methods, or other law enforcement sensitive information. To the extent this Interrogatory is directed to DOS, Defendants further object because it seeks information concerning DHS that may be outside the knowledge, possession, custody, or control of the responding Defendant.

6. Describe the complete process used by DOS to review and revoke student visas based on NCIC Hits—including but not limited to—all steps, inputs, training, and internal communications beyond those reflected in DOS's Administrative Record, including any departure from prior Policy.

**OBJECTIONS:** Defendants incorporate the General Objections. Defendants object to this Interrogatory as compound, overbroad, unduly burdensome, and disproportionate to the limited discovery authorized by the Court's Order. The Interrogatory seeks a "complete process" and, in a single request, seeks information regarding all steps, inputs, training, internal communications, and any alleged departure from prior policy associated with DOS review and revocation of student visas based on NCIC Hits. Defendants further object that the phrase "beyond those reflected in DOS's Administrative Record" is vague and ambiguous because it does not identify which particular administrative record materials Plaintiffs contend are incomplete or what additional information is sought. Defendant also objects to the phrases "complete process," "inputs," and "departure from prior Policy" as vague and ambiguous. Defendants further object because the Interrogatory lacks reasonable temporal, custodial, student-specific, and subject-matter limitations. It seeks all internal communications and training materials concerning visa revocations without identifying particular visa decisions, students, custodians, or time periods. Defendants further object to the extent the Interrogatory seeks drafts, internal deliberations, analyses, recommendations, pre-decisional communications, legal advice, or other materials

protected by the deliberative process privilege, attorney-client privilege, attorney work-product doctrine, law-enforcement privilege, or any other applicable privilege or protection. To the extent this Interrogatory is directed to DHS or ICE, Defendant further objects because it seeks information concerning DOS's visa-review and visa-revocation processes, including DOS training and internal communications, that may be outside the knowledge, possession, custody, or control of the responding Defendant. Defendants further object to this interrogatory as decisions to revoke visas under 8 U.S.C. s. 1201(i) are not subject to review by this Court, and this jurisdictional bar extends to "decisions" to exercise that authority. Plaintiffs' remaining sole cause of action against Defendant U.S. Department of State claims the alleged "Revocation Policy" is arbitrary and capricious, and while Defendant DOS denies such a policy existed, any potential relief available to Plaintiffs under this cause of action would necessarily not include undoing visa revocation actions. Such relief would run afoul of 8 U.S.C. s. 1201(i)'s jurisdiction-stripping provision.

7. Describe in detail DOS's "initial assessment of action" step identified in its Process Map in the Administrative Record. *See* PresAll CAR 001.

**OBJECTIONS:** Defendants incorporate the General Objections. Defendants object to this Interrogatory to the extent it seeks information concerning the Department of State's internal visa-review process. ICE did not prepare, certify, or submit the Department of State Administrative Record referenced in the Interrogatory, and ICE cannot respond on behalf of the Department of State. Defendants further object to the terms "initial assessment of action" and "Process Map" as vague and ambiguous. Defendants also object to the extent the Interrogatory seeks internal deliberations, analyses, recommendations, or other privileged or protected information. Defendants further object to this interrogatory as decisions to revoke visas under 8

U.S.C. s. 1201(i) are not subject to review by this Court, and this jurisdictional bar extends to "decisions" to exercise that authority.

8. Describe all meetings between DOS and DHS in which DHS provided "priorities for DOS action," beyond those included in the Administrative Record, including the topics covered in those meetings, the date of those meetings, the medium of those meetings (i.e., telephone, videoconference, in-person), and who participated.

**OBJECTIONS:** Defendants incorporate the General Objections. Defendants object to this Interrogatory to the extent it seeks information concerning Department of State processes or meetings not within ICE's knowledge, possession, custody, or control. ICE did not prepare, certify, or submit the Department of State Administrative Record referenced in the Interrogatory, and ICE cannot respond on behalf of the Department of State. Defendants further object as compound, vague, overbroad, unduly burdensome, and disproportionate to the limited discovery authorized by the Court's Order. The Interrogatory seeks "all meetings" between DHS and DOS, as well as the topics, dates, format, and participants for each meeting, without reasonable limitations as to time, custodians, participants, or particular actions. The phrase "priorities for DOS action" is also vague and ambiguous. Defendants further object to the extent the Interrogatory seeks internal deliberations, analyses, recommendations, predecisional communications, attorney-client communications, attorney work product, or other privileged or protected information.

9. Describe the process reflected in the "SOP" for Handling Cases Under Review, *see* PresAll CAR 002–004, including, but not limited to, how analysts proposed Visa Revocation decisions and what criteria or reasoning were applied.

**OBJECTIONS:** Defendants incorporates the General Objections. Defendants object to this Interrogatory to the extent it seeks information concerning the Department of State's internal visa-review process. ICE did not prepare, certify, or submit the Department of State Administrative Record referenced in the Interrogatory, and ICE cannot respond on behalf of the Department of State. Defendants further object to the Interrogatory as vague, overbroad, and disproportionate to the limited discovery authorized by the Court's Order. The Interrogatory seeks a description of the "process" reflected in the SOP, including how analysts proposed visa-revocation decisions and what "criteria or reasoning" were applied, without identifying particular decisions, students, time periods, or custodians. Defendants further object to the extent the Interrogatory seeks internal deliberations, analyses, recommendations, draft materials, pre-decisional communications, legal advice, or other information protected by the deliberative process privilege, attorney-client privilege, attorney work-product doctrine, law-enforcement privilege, or any other applicable privilege or protection. Defendant further objects to this interrogatory as decisions to revoke visas under 8 U.S.C. s. 1201(i) are not subject to review by this Court, and this jurisdictional bar extends to "decisions" to exercise that authority.

10. Describe the decision-making process used by DHS officials to Terminate SEVIS Records, including all materials, Documents, procedures, guidance, Communications, training, and relied upon or considered by DHS in deciding to terminate SEVIS Records including any departure from prior Policy. *See* Dkt. No. 14 ¶¶ 39–41.

**OBJECTIONS:** Defendants incorporate the General Objections. Defendants object to this Interrogatory as compound, overbroad, unduly burdensome, and disproportionate to the limited discovery authorized by the Court's Order. The Interrogatory seeks the complete SEVIS termination decision-making process, as well as all related materials, documents, guidance, communications, training, and information considered by DHS. Defendants further object because the Interrogatory lacks reasonable limits as to time, custodians, students, termination decisions, or DHS components. The phrase "any departure from prior Policy" is also vague and ambiguous. Defendants further object to the extent the Interrogatory seeks privileged deliberative material, attorney-client communications, attorney work product, nonpublic SEVIS system or operational information, personally identifiable information, or other protected material. Subject to and without waiving these objections, ICE will provide non-privileged factual information within its knowledge, possession, custody, or control, if any, concerning SEVIS termination procedures relevant to the matters at issue. To the extent this Interrogatory is directed to DOS, Defendant further objects because it seeks information concerning DHS that may be outside the knowledge, possession, custody, or control of the responding Defendant.

11. State in detail all facts supporting DHS's contention that "there are no such policies as alleged by Plaintiffs", including, but not limited to, identification of any Documents, Communications, or decision-making processes that DHS contends reflect individualized or non-Policy-based actions. Dkt. No. 82 at 2.

**OBJECTIONS:** Defendants incorporate the General Objections. Defendants object to this Interrogatory to the extent it seeks "all facts" supporting Defendants' litigation position, including a premature marshalling of all evidence and counsel's application of law to fact. Defendants further object to Plaintiffs' characterization of Defendants' position and to the extent

the Interrogatory seeks attorney-client communications, attorney work product, deliberative material, or other privileged or protected information. Defendants also object to the extent the Interrogatory seeks identification of all documents and communications, rather than a discrete factual response, and lacks reasonable limits as to time, custodians, or particular actions. To the extent this Interrogatory is directed to DOS, Defendant further objects because it seeks information concerning DHS that may be outside the knowledge, possession, custody, or control of the responding Defendant. Finally, DOS objects where any answer here is already covered by its Administrative Record.

12. State in detail all facts supporting DOS's contention that "there are no such policies as alleged by Plaintiffs", including, but not limited to, identification of any Documents, Communications, or decision-making processes that DOS contends reflect individualized or non-Policy-based actions. Dkt. No. 82 at 2.

**OBJECTIONS:** Defendanst incorporate the General Objections. Defendants object to this Interrogatory to the extent it seeks "all facts" supporting Defendants' litigation position, including a premature marshalling of all evidence and counsel's application of law to fact. Defendants further object to Plaintiffs' characterization of Defendants' position and to the extent the Interrogatory seeks attorney-client communications, attorney work product, deliberative material, or other privileged or protected information. Defendants also object to the extent the Interrogatory seeks identification of all documents and Defendant communications, rather than a discrete factual response, and lacks reasonable limits as to time, custodians, or particular actions. To the extent this Interrogatory is directed to DHS, Defendant further objects because it seeks information concerning DOS that may be outside the knowledge, possession, custody, or control

of the responding Defendant. Finally, DOS objects where any answer here is already covered by its Administrative Record.

13. Describe the relationship and coordination between DOS Visa Revocations and DHS SEVIS Terminations. *See* Dkt. No. 14 ¶¶ 38–43; Dkt. No. 54 at 2–3.

**OBJECTIONS:** Defendants incorporate the General Objections. Defendants object to this Interrogatory as vague and overbroad. The terms "relationship" and "coordination" are not defined, and the Interrogatory does not identify a time-period, particular students, agency components, or specific actions at issue. Defendants further object to the extent the Interrogatory seeks privileged or protected information, including internal deliberations, pre-decisional communications, or attorney-client communications.

14. Describe the reasons DHS decided to reverse or suspend SEVIS Terminations connected to SCAI.

**OBJECTIONS:** Defendants incorporate the General Objections. Defendants object to the terms "reverse," "suspend," and "connected to SCAI" as vague and ambiguous. Defendants further object to the extent the Interrogatory seeks privileged or protected information, including internal deliberations, pre-decisional communications, legal advice, or attorney work product. To the extent this Interrogatory is directed to DOS, Defendant further objects because it seeks information concerning DHS that may be outside the knowledge, possession, custody, or control of the responding Defendant.

15. Describe in detail the development, drafting, approval, distribution, and implementation of the Broadcast Message, including, but not limited to, all individuals involved in drafting, reviewing, or approving the Broadcast Message; the process by which the Broadcast Message

was created and disseminated to SEVP personnel; whether the Broadcast Message was intended to establish, modify, codify, or reflect any Policy concerning SEVIS Terminations, including Terminations based on Visa Revocations; and how the Broadcast Message has been implemented and applied by DHS personnel. *See* Dkt. No. 14 ¶¶ 45–47; Dkt. No. 54 at 50–52.

**OBJECTIONS:** Defendants incorporate the General Objections. Defendants object as compound because this Interrogatory seeks multiple separate narratives regarding the development, drafting, approval, distribution, implementation, and application of the Broadcast Message. Defendants also object to the phrase "all individuals involved" as that would include countless number of non-policymaking employees. As such, this would make the topic overbroad and disclosure would subject lower-level employees to potential harassment and embarrassment. Defendant further objects to the extent it seeks a legal conclusion regarding whether the Broadcast Message established, modified, codified, or reflected a "Policy," as Plaintiffs define that term. Defendant also objects to the extent it seeks information regarding how the Broadcast Message was applied by DHS personnel generally, without limitation to ICE or SEVP, particular students, or specific termination decisions. To the extent this Interrogatory is directed to DOS, Defendant further objects because it seeks information concerning DHS that may be outside the knowledge, possession, custody, or control of the responding Defendant.

16. Describe how DOS determined that a result of criminal charges in the NCIC database formed a valid basis for a Visa Revocation.

**OBJECTIONS:** Defendants incorporate the General Objections. To the extent this response is made by DHS or ICE, Defendants object because the Interrogatory seeks information concerning DOS visa-revocation decisions. Defendants further object as vague, overbroad, and disproportionate because it does not identify particular visa-revocation decisions, students, time

periods, or custodians. Defendants also object to the extent the Interrogatory seeks privileged DOS deliberations, decision-making analyses, legal advice, or nonpublic agency procedures. Defendants further object to this interrogatory as decisions to revoke visas under 8 U.S.C. § 1201(i) are not subject to review by this Court, and this jurisdictional bar extends to "decisions" to exercise that authority.

17. Describe how DHS determined that a result of criminal charges in the NCIC database formed a valid basis for a SEVIS Record Termination.

**OBJECTIONS:** Defendants incorporate the General Objections. Defendants object as vague, overbroad, unduly burdensome, and disproportionate because the Interrogatory does not identify particular SEVIS terminations, students, time periods, or agency components. Defendants further object to the phrase "formed a valid basis" to the extent it seeks legal conclusions or application of legal standards to particular facts. Defendants also object to the extent the Interrogatory seeks nonpublic NCIC screening methods, criteria, verification procedures, operational practices, privileged deliberations, or other law-enforcement-sensitive information. To the extent this Interrogatory is directed to DOS, Defendant further objects because it seeks information concerning DHS that may be outside the knowledge, possession, custody, or control of the responding Defendant.

18. State whether the revocation of visas based on NCIC Hits remains in effect in any form and identify which agency maintains or enforces them.

**OBJECTIONS:** Defendants incorporate the General Objections. Defendants object because the Interrogatory seeks information concerning DOS visa-revocation actions. Defendants also object to the extent the Interrogatory seeks student-specific information, information protected by the Privacy Act, or information outside the responding Defendant's possession, custody, or

control. Defendant, DOS, further object to this interrogatory as decisions to revoke visas under 8 U.S.C. § 1201(i) are not subject to review by this Court, and this jurisdictional bar extends to "decisions" to exercise that authority.

19. State whether any SEVIS Record Terminations based on an NCIC Hit remains in effect in any form and identify which agency maintains or enforces them.

**OBJECTIONS:** Defendants incorporate the General Objections. Defendants also object to the extent the Interrogatory seeks student-specific information, information protected by the Privacy Act, or information outside the responding Defendant's possession, custody, or control. Defendants object to the phrases "remains in effect" and "in any form" as vague and ambiguous. Defendants further object as overbroad because it seeks information regarding any SEVIS termination based on an NCIC Hit without reasonable student-specific, temporal, or component-specific limitations. Defendants also object to the extent the Interrogatory seeks personally identifiable information, information protected by the Privacy Act, nonpublic system information, or information outside the responding Defendant's possession, custody, or control. To the extent this Interrogatory is directed to DOS, Defendant further objects because it seeks information concerning DHS that may be outside the knowledge, possession, custody, or control of the responding Defendant.

20. Describe the reasons DOS determined that it would not restore or reinstate the visas it revoked pursuant to SCAI, including any materials relied on or considered by DOS in coming to its determination.

**OBJECTIONS:** Defendants incorporate the General Objections. Defendants object because the Interrogatory seeks information concerning DOS decisions regarding visa restoration or reinstatement. Defendant further objects as overbroad, unduly burdensome, and disproportionate

because it seeks all reasons and all materials "relied on or considered" without identifying particular visa decisions, students, custodians, or a reasonable time period. Defendant also objects to the extent the Interrogatory seeks pre-decisional and deliberative materials protected by the deliberative process privilege, as well as legal advice, attorney-client communications, attorney work product, or information outside the responding Defendant's possession, custody, or control. Defendant further objects to this request as it seeks information related to decisions to revoke visas under 8 U.S.C. § 1201(i), which are not subject to review by this Court, and this jurisdictional bar extends to "decisions," such as any exist, to "restore" or "reconsider" any prior exercises of that authority. Plaintiffs' remaining sole cause of action against Defendant U.S. Department of State claims the alleged "Revocation Policy" is arbitrary and capricious, and while Defendant DOS denies such a policy existed, any potential relief available to Plaintiffs under this cause of action would necessarily not include undoing visa revocation actions. Such relief would run afoul of 8 U.S.C. s. 1201(i)'s jurisdiction-stripping provision.

# ATTACHMENT D

# DEFENDANTS' OBJECTIONS TO PLAINTIFFS' REQUESTS FOR PRODUCTION

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| PRESIDENTS' ALLIANCE ON HIGHER EDUCATION and ASSOCIATION OF INDEPENDENT COLLEGES AND UNIVERSITIES IN MASSACHUSETTS,<br><br>*Plaintiffs,* v.<br><br>MARKWAYNE MULLIN, in his official capacity as Secretary of Homeland Security1; TODD LYONS, in his official capacity as Acting Director of U.S. Immigration and Customs Enforcement; the DEPARTMENT OF HOMELAND SECURITY; MARCO RUBIO, in his official capacity as Secretary as Secretary of State; and the DEPARTMENT OF STATE,<br><br>*Defendants.* | Case No. 25-cv-11109-PBS |

**DEFENDANTS' OBJECTIONS TO PLAINTIFFS' FIRST REQUEST FOR THE PRODUCTION OF DOCUMENTS**

Defendants submit these objections as an initial response and request the full thirty days to respond pursuant to the Federal Rules of Civil Procedure, and for the 30 days to start after the Court issues an order on discovery after the hearing on October 19, 2026.

**STATEMENT REGARDING INSTRUCTIONS AND DEFINITIONS**

Defendants object to all instructions and definitions that purport to impose obligations beyond the Federal Rules of Civil Procedure and the Local Rules.

**OBJECTIONS THAT APPLY TO ALL REQUESTS FOR PRODUCTION**

Defendants object to the Requests for Production of Documents (RFPs) to the extent that they seek: (a) attorney work product, trial preparation materials, or communications that are

protected by the attorney-client privilege, (b) documents that are protected by the deliberative process privilege, the joint defense privilege, the common interest privilege, or the law enforcement privilege; (c) documents that, if produced, would violate the legitimate privacy interests and expectations of persons who are not party to this litigation, including non-party proposed class members; or (d) documents to which any other privilege applies.

Defendants object to the RFPs (and the definitions and instructions that accompany them) to the extent that they purport to impose obligations other than ones that are imposed by the Federal Rules of Civil Procedure, the Local Civil Rules of the District of Massachusetts, or an order of the Court.

Defendants object to the RFPs to the extent that they seek documents that are not relevant to any party's claim or defense. Defendants further object to the extent that the RFPs are disproportionate to the needs of the case, considering the importance of the issues at stake in the action, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit.

Defendants object to the RFPs to the extent that they require it to conduct an unduly burdensome and disproportionate search for documents. Defendants further object to the extent that the RFPs request documents that are publicly available, that are in the custody or control of Plaintiffs or Plaintiffs' counsel, that are readily accessible to Plaintiffs, or that Plaintiffs otherwise can obtain with minimal burden. *See* Fed. R. Civ. P. 26(b)(2)(C)(i). Defendants further object to the extent that the RFPs are not reasonably limited in time or scope.

Defendants object to the extent the request seeks communications protected by executive privilege, including the presidential communications privilege, as well as the deliberative process privilege and any other applicable privilege or protection related to executive communications.

Defendants object to the RFPs to the extent that they seek information or documents from non-party agencies and do not comply with such agencies' *Touhy* regulations. *U.S. ex rel. Touhy v. Ragen*, 340 U.S. 462 (1951). *See* 22 C.F.R. part 172; 28 C.F.R. §§ 16.21–.26; 30 C.F.R. part 516, app'x C; 32 C.F.R. part 1703.

Each and every response incorporates the above objections, regardless of whether a specific objection is reasserted with respect to a specific RFP. Defendants specifically reserve the right to assert additional responses and objections at a later time, in accordance with Federal Rule of Civil Procedure 26(e).

## OBJECTIONS TO DOCUMENT PRODUCTION REQUESTS

**1.** Produce all Documents and Communications concerning the conception, development, authorization, scope, and purpose of SCAI, including any directives, memoranda, emails, text messages, chat messages, or presentations reflecting why and how the initiative was undertaken.

**OBJECTION:** Defendants object to Plaintiffs' definitions of "Refer," "Relate," "Regard," and "Concern" as overbroad and unduly burdensome insofar as they seek all information that "in any way logically or factually connects with" the subject matter of the Request. That definition lacks a reasonable limiting principle and would sweep in documents and communications having only an attenuated or collateral connection to SCAI. Defendants further object to Plaintiffs' definitions of "Document," "Communication," and "Policy" to the extent they seek drafts, internal analyses, recommendations, informal discussions, unwritten

practices, or other materials beyond the scope of the limited discovery authorized by the Court. Defendants also object to Plaintiffs' definition of "You," "Your," and "Defendant(s)" to the extent it seeks documents from DHS, DOS, ICE, SEVP, and their respective offices, employees, contractors, agents, or representatives without regard to whether those materials are within the possession, custody, or control of the responding Defendant. Defendants object to this Request as vague, overbroad, unduly burdensome, and disproportionate to the limited discovery authorized by the Court's Order. The Request seeks "all Documents and Communications" concerning the "conception, development, authorization, scope, and purpose" of SCAI, including materials reflecting "why and how" the initiative was undertaken. The Request is not reasonably limited by time, custodian, or subject matter. Defendants further objects to the extent the Request seeks internal deliberations, analyses, recommendations, draft materials, and pre-decisional communications protected by the deliberative process privilege. Defendants also object to the extent the Request seeks documents protected by the attorney-client privilege, attorney work-product doctrine, law enforcement privilege, or any other applicable privilege or protection. Defendants also object to the extent the Request seeks documents not within the possession, custody, or control of the responding Defendant, including documents maintained solely by contractors, agents, other components, or third parties.

2. Produce all Documents sufficient to show how DHS and ICE implemented NCIC screening under SCAI, including: data sources used to identify individuals subject to screening; criteria for identifying NCIC Hits; categories of results obtained; and any filtering, verification, or validation steps applied prior to taking further action.

**OBJECTIONS:** Defendants object to this Request as vague, overbroad, unduly burdensome, and disproportionate to the limited discovery authorized by the Court's September 2026 Order. The Request seeks documents sufficient to show how DHS and ICE "implemented NCIC screening under SCAI," but does not define or reasonably limit the terms "implemented," "data sources," "criteria for identifying NCIC Hits," "categories of results," or "filtering, verification, or validation steps." The Request also lacks reasonable temporal, custodial, and subject-matter limitations. Defendant further objects to Plaintiffs' definitions of "Document," "Communication," "Policy," and "Refer," "Relate," "Regard," or "Concern" to the extent they seek drafts, informal discussions, internal analyses, recommendations, unwritten practices, or materials that only indirectly relate to the subject matter of the Request. Defendants further object to the extent the Request seeks internal deliberations, analyses, recommendations, draft materials, or pre-decisional communications protected by the deliberative process privilege. Defendants also object to the extent the Request seeks materials protected by the attorney-client privilege, attorney work-product doctrine, law-enforcement privilege, or any other applicable privilege or protection. Defendant further objects to the extent the Request seeks nonpublic law-enforcement-sensitive information, including information concerning screening methods, data sources, search criteria, verification processes, operational practices, or other procedures that could reveal nonpublic law-enforcement capabilities or practices. Defendant also objects to the extent the Request seeks documents not within the possession, custody, or control of the responding Defendant, including documents maintained solely by other agencies, components, contractors, agents, or third parties. Defendant also objects that the phrase "sufficient to show" is vague and ambiguous,3. Produce all Documents and Communications between or among DHS, ICE, and DOS concerning: SCAI; the NCIC queries; NCIC Hits; Visa

Revocations of students identified in the NCIC Hits; SEVIS decisions of students in the NCIC Hits; and any priorities for DOS action or reciprocal agency input.

**OBJECTIONS**: Defendants object to Plaintiffs' definitions of "Document," "Communication," "Policy," and "Refer," "Relate," "Regard," or "Concern" to the extent they seek drafts, informal discussions, internal analyses, recommendations, unwritten practices, or materials that only indirectly relate to the subject matter of the Request. Defendants further object to this Request as vague, overbroad, unduly burdensome, and disproportionate to the limited discovery authorized by the Court's Order. The Request seeks "all Documents and Communications" among DHS, ICE, and DOS concerning a broad range of subjects, including SCAI, NCIC queries and Hits, visa revocations, SEVIS decisions, agency priorities, and "reciprocal agency input." The Request is not reasonably limited by time, custodian, particular student, particular agency action, or subject matter. Defendants further object that the phrases "priorities for DOS action" and "reciprocal agency input" are vague and ambiguous. Defendants further object to the extent the Request seeks internal deliberations, analyses, recommendations, draft materials, or pre-decisional communications protected by the deliberative process privilege. Defendants also object to the extent the Request seeks documents protected by the attorney-client privilege, attorney work-product doctrine, law-enforcement privilege, or any other applicable privilege or protection. Defendant further objects to the extent the Request seeks nonpublic law enforcement sensitive information concerning NCIC queries, NCIC Hits, screening methods, operational practices, or agency coordination that could reveal nonpublic law-enforcement capabilities or practices. Defendants also object to the extent the Request seeks documents not within the possession, custody, or

control of the responding Defendant, including documents maintained solely by other components, contractors, agents, or third parties.

**4**. Produce all Documents and Communications not already included in the Administrative Record that related to DOS revocation of visas based on NCIC Hits, including but not limited to, materials demonstrating how DOS evaluated NCIC information; whether and how individualized review occurred; any departure from prior Policy, practice, or regulatory interpretation; and all materials referenced in, underlying, or related to: the "Department of State Revocations Process Map"; and the "SOP for Handling Cases Under Review." See PresAll CAR 001–005.

**OBJECTIONS:** Defendants object to this Request to the extent it assumes that all Defendants prepared, certified, or submitted the Administrative Record referenced in the Request. Defendants further object that the phrase "not already included in the Administrative Record" is vague and ambiguous as applied to ICE, which did not prepare or submit the Department of State Administrative Record identified by Plaintiffs. Defendants further object to this Request as vague, overbroad, unduly burdensome, and disproportionate to the limited discovery authorized by the Court's Order. The Request seeks "all Documents and Communications" relating to visa revocations based on NCIC Hits, including materials concerning how the Department of State evaluated NCIC information, whether individualized review occurred, and any departure from prior policy, practice, or regulatory interpretation. The Request is not reasonably limited by time, custodian, student, visa-revocation decision, or subject matter. Defendants further object that the phrases "individualized review," "departure from prior Policy, practice, or regulatory interpretation," "underlying," and "related to" are vague and ambiguous. Defendants further object to Plaintiffs' definitions of "Document," "Communication," "Policy," and "Refer," "Relate," "Regard," or "Concern" to the extent they seek drafts, informal discussions, internal analyses,

recommendations, unwritten practices, or materials that only indirectly relate to the subject matter of the Request. Defendants further object to the extent the Request seeks internal deliberations, analyses, recommendations, draft materials, or pre-decisional communications protected by the deliberative process privilege. Defendants also object to the extent the Request seeks documents protected by the attorney-client privilege, attorney work-product doctrine, law-enforcement privilege, or any other applicable privilege or protection. Defendants further object to the extent the Request seeks documents outside the possession, custody, or control of the responding Defendant, including documents maintained solely by the Department of State, other components, contractors, agents, or third parties.

5. Produce all drafts, prior versions, revisions, and redlined versions of the SOP referenced in the Administrative Record, *see* Pres All CAR 002–005, workflow, guidance, or process Documents relating to Visa Revocations under SCAI, including those predating April 14, 2025, and all materials reflecting consideration, modification, or approval of such Documents.

**OBJECTIONS:** Defendants, DHS and ICE, object to this Request to the extent it assumes that ICE prepared, maintained, or submitted the Administrative Record referenced in the Request. Defendant, Department of State, further objects that the Request seeks documents concerning visa revocations, which are actions undertaken by the Department of State, and therefore, may seek documents outside the possession, custody, or control of other responding Defendants. All Defendants further object to this Request as vague, overbroad, unduly burdensome, and disproportionate to the limited discovery authorized by the Court's Order. The Request seeks "all drafts, prior versions, revisions, and redlined versions" of a broad category of documents, including "workflow," "guidance," and "process Documents," without reasonable limitations as to custodians, subject matter, particular visa-revocation actions, or an end date.

The phrases "relating to Visa Revocations under SCAI" and "materials reflecting consideration, modification, or approval" are vague and overbroad. Defendants further object to the extent the Request seeks drafts, revisions, redlines, internal analyses, recommendations, or pre-decisional communications reflecting the consideration, development, modification, or approval of policies or procedures, to the extent such materials are protected by the deliberative process privilege. Defendant also objects to the extent the Request seeks materials protected by the attorney-client privilege, attorney work-product doctrine, law-enforcement privilege, or any other applicable privilege or protection. Defendants further object to Plaintiffs' definitions of "Document," "Communication," "Policy," and "Refer," "Relate," "Regard," or "Concern" to the extent they seek informal discussions, unwritten practices, or materials that only indirectly relate to the subject matter of the Request. Defendants also object to the extent the Request seeks documents not within the possession, custody, or control of the responding Defendant, including documents maintained solely by the Department of State, other components, contractors, agents, or third parties.

6. Produce all Documents and Communications sufficient to show how DHS and ICE implemented SEVIS Terminations related to SCAI, including: internal guidance and decision criteria; use of termination codes (including the "OTHER" category); system entries, logs, or audit trails; and any instructions provided to personnel implementing Terminations.

**OBJECTIONS:** Defendants object to this Request as vague, overbroad, unduly burdensome, and disproportionate to the limited discovery authorized by the Court's Order. The Request does not reasonably define or limit the terms "implemented," "internal guidance," "decision criteria," "system entries," "logs," "audit trails," or "instructions provided to personnel." The Request also lacks reasonable temporal, custodial, and subject-matter

limitations. Defendants further object to Plaintiffs' definitions of "Document," "Communication," "Policy," and "Refer," "Relate," "Regard," or "Concern" to the extent they seek drafts, informal discussions, internal analyses, recommendations, unwritten practices, or materials that only indirectly relate to the subject matter of the Request. Defendants further object to the extent the Request seeks internal deliberations, analyses, recommendations, draft materials, or pre-decisional communications protected by the deliberative process privilege. Defendants also object to the extent the Request seeks materials protected by the attorney-client privilege, attorney work-product doctrine, law enforcement privilege, or any other applicable privilege or protection. Defendants further object to the extent the Request seeks nonpublic system, operational, or security-sensitive information, including system entries, logs, audit trails, access information, or other materials that could reveal nonpublic agency practices or capabilities. Defendants also object to the extent the Request seeks personally identifiable information or information protected by the Privacy Act. Defendants also object to the extent the Request seeks documents not within the possession, custody, or control of the responding Defendant, including documents maintained solely by other components, contractors, agents, or third parties. Defendants further object to the phrase "sufficient to show" as vague and ambiguous. Defendants further object to the extent this request seeks documents related to SEVIS terminations, which are actions undertaken by DHS and ICE, and therefore may seek documents outside the possession, custody, and control of DOS.

7. Produce all Documents and Communications, including but not limited to drafts, that were directly or indirectly considered for Visa Revocations based on NCIC Hits, but were not included in any Administrative Record.

**OBJECTIONS:** Defendants object to this Request to the extent it assumes that ICE prepared, maintained, or submitted an Administrative Record concerning visa revocations. Defendants further object that the phrase "not included in any Administrative Record" is vague and ambiguous as applied to the responding Defendant. Defendants further object to this Request as vague, overbroad, unduly burdensome, and disproportionate to the limited discovery authorized by the Court's Order. The Request seeks "all Documents and Communications," including drafts, that were "directly or indirectly considered" for visa revocations based on NCIC Hits. The phrase "directly or indirectly considered" is vague and overbroad and would encompass documents and communications only tangentially related to visa revocations. The Request also lacks reasonable temporal, custodial, and subject-matter limitations. Defendants further object to the extent the Request seeks drafts, internal deliberations, analyses, recommendations, pre-decisional communications, or other materials protected by the deliberative process privilege. Defendants also object to the extent the Request seeks documents protected by the attorney-client privilege, attorney work product doctrine, law enforcement privilege, or any other applicable privilege or protection. Defendants further object to the extent the Request seeks documents maintained solely by the Department of State or otherwise outside the possession, custody, or control of the responding Defendant. Defendants further object to this request as decisions to revoke visas under 8 U.S.C. s. 1201(i) are not subject to review by this Court, and this jurisdictional bar extends to "decisions," such as any exist, to exercise that authority.

8. Produce all Documents and Communications that DHS directly or indirectly considered in the termination of SEVIS Records based on a NCIC Hit and/or a Visa Revocation, but were not included in any Administrative Record.

**OBJECTIONS:** Defendants object to this Request to the extent it assumes that DHS prepared, maintained, or submitted the Administrative Record referenced by Plaintiffs. Defendants further object that the phrase "not included in any Administrative Record" is vague and ambiguous, including because it does not identify the particular administrative record to which it refers. Defendants further object to this Request as vague, overbroad, unduly burdensome, and disproportionate to the limited discovery authorized by the Court's Order. The Request seeks "all Documents and Communications" that DHS "directly or indirectly considered" in connection with the termination of SEVIS Records based on an NCIC Hit and/or visa revocation. The phrase "directly or indirectly considered" is vague and overbroad and would encompass documents and communications that are only tangentially related to a SEVIS termination. The Request also lacks reasonable temporal, custodial, student-specific, and subject matter limitations. Defendants further object to Plaintiffs' definitions of "Document," "Communication," "Policy," and "Refer," "Relate," "Regard," or "Concern" to the extent they seek drafts, informal discussions, internal analyses, recommendations, unwritten practices, or materials that only indirectly relate to the subject matter of the Request. Defendants further object to the extent the Request seeks drafts, internal deliberations, analyses, recommendations, pre-decisional communications, or other materials protected by the deliberative process privilege. Defendants also object to the extent the Request seeks documents protected by the attorney-client privilege, attorney work product doctrine, law enforcement privilege, or any other applicable privileges or protection. Defendants further object to the extent the Request seeks nonpublic operational or system information, including SEVIS access information, system entries, audit trails, or other materials that could reveal nonpublic agency practices or capabilities. Defendants also object to the extent the Request seeks personally identifiable

information or information protected by the Privacy Act. Defendants also object to the extent the Request seeks documents not within the possession, custody, or control of the responding Defendant, including documents maintained solely by other components, contractors, agents, or third parties.

9. Produce all Documents and Communications concerning the development, drafting, approval, distribution, and implementation of the Broadcast Message, including, but not limited to: all drafts, revisions, and redlined versions of the Broadcast Message; all internal memoranda, emails, or Communications reflecting the purpose, meaning, or intended effect of the Broadcast Message; all materials reflecting consideration of whether the Broadcast Message would establish, modify, codify, or reflect any Policy concerning SEVIS Terminations, including Terminations based on Visa Revocations; all information directly or indirectly considered in developing the Broadcast Message; all guidance, instructions, or training materials provided to ICE or SEVP personnel regarding how to implement the Broadcast Message; all Documents reflecting how ICE or SEVP personnel were instructed to interpret or apply the Broadcast Message; and all Documents reflecting how the Broadcast Message was applied in practice, including examples of SEVIS Termination decisions made pursuant to it.

**OBJECTIONS:** Defendants object to this Request as vague, overbroad, unduly burdensome, and disproportionate to the limited discovery authorized by the Court's Order. The Request seeks "all Documents and Communications" concerning every stage of the Broadcast Message, including its development, drafting, approval, distribution, implementation, interpretation, and application in individual SEVIS termination decisions. The Request is not reasonably limited by time, custodian, subject matter, particular student, or particular termination decision. Defendants further object to Plaintiffs' definitions of "Document," "Communication,"

"Policy," and "Refer," "Relate," "Regard," or "Concern" to the extent they seek drafts, informal discussions, internal analyses, recommendations, unwritten practices, or materials that only indirectly relate to the Broadcast Message. Defendants further object to the extent the Request seeks drafts, revisions, redlined versions, internal memoranda, analyses, recommendations, or pre-decisional communications concerning the development, purpose, meaning, intended effect, approval, or implementation of the Broadcast Message, to the extent such materials are protected by the deliberative process privilege. Defendants also object to the extent the Request seeks materials protected by the attorney-client privilege, attorney work product doctrine, law enforcement privilege, or any other applicable privilege or protection. Defendants further object that the phrases "purpose," "meaning," "intended effect," "applied in practice," and "examples of SEVIS Termination decisions made pursuant to it" are vague and ambiguous. To the extent the Request seeks documents concerning the application of the Broadcast Message in individual cases, Defendants further object because the Request seeks potentially voluminous student specific records without identifying particular students, termination decisions, or a reasonable time-period. Defendants also object to the extent the Request seeks nonpublic operational or system information, including SEVIS system entries, audit trails, access information, or internal implementation procedures that could reveal nonpublic agency practices or capabilities. Defendants further object to the extent the Request seeks personally identifiable information or information protected by the Privacy Act. Defendants further object to the extent the Request seeks documents not within the possession, custody, or control of the responding Defendant, including documents maintained solely by other components, contractors, agents, or third parties.

10. Produce all Documents and Communications reflecting DOS's decision to not restore or reconsider visas revoked in connection with SCAI.

**OBJECTIONS:** Defendant objects to this Request to the extent it seeks documents maintained solely by the Department of State or otherwise outside the possession, custody, or control of the responding Defendant. Defendant further objects to this Request as vague, overbroad, unduly burdensome, and disproportionate to the limited discovery authorized by the Court's Order. The Request seeks "all Documents and Communications" reflecting DOS's decision not to restore or reconsider visas revoked in connection with SCAI, without identifying a particular decision, time-period, visa revocation, student, custodian, or other reasonable limitation. The phrases "not restore" and "reconsider" are vague and ambiguous. Defendant further objects to Plaintiffs' definitions of "Document," "Communication," and "Refer," "Relate," "Regard," or "Concern" to the extent they seek drafts, informal discussions, internal analyses, recommendations, unwritten practices, or materials that only indirectly relate to the subject matter of the Request. Defendant further objects to the extent the Request seeks internal deliberations, analyses, recommendations, draft materials, or pre-decisional communications protected by the deliberative process privilege. Defendant also objects to the extent the Request seeks materials protected by the attorney-client privilege, attorney work product doctrine, law enforcement privilege, or any other applicable privilege or protection. Defendant further objects to the extent the Request seeks documents containing personally identifiable information or information protected by the Privacy Act. Defendant further objects to this request as it seeks information related to decisions to revoke visas under 8 U.S.C. § 1201(i), which are not subject to review by this Court, and this jurisdictional bar extends to "decisions," such as any exist, to "restore" or "reconsider" any prior exercises of that authority. Plaintiffs' remaining sole cause of action against Defendant U.S. Department of State claims the alleged "Revocation Policy" is arbitrary and capricious, and while Defendant DOS denies such a policy existed, any potential

relief available to Plaintiffs under this cause of action would necessarily not include undoing visa revocation actions. Such relief would run afoul of 8 U.S.C. § 1201(i)'s jurisdiction-stripping provision.



SBU - LEGAL